1   Raymond M. DiGuiseppe
2   The DiGuiseppe Law Firm, P.C.
    4320 Southport-Supply Road, Suite 300
3   Southport, NC 28461
4   Tel.: 910-713-8804
    Email: law.rmd@gmail.com
5
6   Michael P. Sousa
    Law Offices of Michael P. Sousa, APC
7   3232 Governor Dr., Suite A
8   San Diego, CA 92122
    Tel.: 858-453-6122
9   Email: msousa@msousalaw.com
10
11  Attorneys for Plaintiffs

12
13              **UNITED STATES DISTRICT COURT**

14          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

15  LANA RAE RENNA, an individual;          Case No.: 20-cv-2190-DMS-DEB
    DANIELLE JAYMES, an individual;
16  HANNAH SPOUSTA, an individual;
    LAURA SCHWARTZ, an individual;          **FIRST AMENDED COMPLAINT**
17  MICHAEL SCHWARTZ, an individual;        **FOR INJUNCTIVE AND**
18  ROBERT MACOMBER, an individual;         **DECLARATORY RELIEF**
    CLINT FREEMAN, an individual;
19  RICHARD BAILEY, an individual;
20  JOHN KLIER, an individual; JUSTIN
    SMITH, an individual; JOHN
21  PHILLIPS, an individual; PWGG, L.P., a
22  California Limited Partnership;
    CHERYL PRINCE, an individual;
23  DARIN PRINCE, an individual; NORTH
24  COUNTY SHOOTING CENTER, INC.,
    a California Corporation; RYAN
25  PETERSON, an individual;
26  GUNFIGHTER TACTICAL, LLC, a
    California Limited Liability Company;
27
28

1

FIREARMS POLICY COALITION, INC.; SAN DIEGO COUNTY GUN OWNERS PAC; CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; and SECOND AMENDMENT FOUNDATION,

                      Plaintiffs,

      vs.

XAVIER BECERRA, in his official capacity as Attorney General of California; and LUIS LOPEZ, in his official capacity as Director of the Department of Justice Bureau of Firearms,

                      Defendants.

Plaintiffs Lana Rae Renna, Danielle Jaymes, Hannah Spousta, Laura Schwartz, Michael Schwartz, Robert Macomber, Clint Freeman, Richard Bailey, John Klier, Justin Smith, John Phillips, PWGG, L.P., Cheryl Prince, Darin Prince, North County Shooting Center, Inc., Ryan Peterson, Gunfighter Tactical, LLC, Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, Citizens Committee for the Right to Keep and Bear Arms, and Second Amendment Foundation (collectively "Plaintiffs")[1], by and through counsel of record, bring this

---

[1] Collectively, the individual, natural person plaintiffs are referred to as "Individual Plaintiffs," Plaintiffs PWGG, L.P, North County Shooting Center, Inc., and

complaint for injunctive and declaratory relief against the named Defendants, and allege as follows:

## INTRODUCTION

1.  This case, as in *Duncan v. Becerra*, S.D.Cal. no. 3:17-cv-01017- BEN-JLB and the closely related *Miller v. Becerra*, S.D.Cal. no. 3:19-cv-1537-BEN-JLB- and *Fouts v. Becerra*, S.D.Cal. no. 3:19-cv-01662-BEN-JLB, is a challenge to the State of California's ban on the sale and personal construction of constitutionally protected arms.

2.  "In *Heller*, the U.S. Supreme Court provided a simple Second Amendment test in crystal clear language. It is a test that anyone can understand. The right to keep and bear arms is a right enjoyed by law-abiding citizens to have arms that are not unusual in common use for lawful purposes like self-defense." *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1142 (S.D. Cal. 2019) (internal quotations omitted) (citing *District of Columbia v. Heller*, 554 U.S. 570, 624, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)).

3.  The State of California's "Unsafe Handgun Act" handgun ban, Cal. Penal Code §§ 31900, *et seq*. and 32000, *et seq*., handgun self-manufacturing ban

_____

Gunfighter Tactical, LLC are referred to as "Retailer Plaintiffs," and Plaintiffs Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, Citizens Committee for the Right to Keep and Bear Arms, and Second Amendment Foundation are referred to as "Institutional Plaintiffs."

statute at Penal Code § 29182(e)(2), and Defendants' regulations, policies, and practices enforcing the State's regulatory scheme (collectively hereinafter referred to as "California's Handgun Ban"), individually and collectively prevent adults who are not disqualified from exercising Second Amendment rights from purchasing new, and self-manufacturing, constitutionally protected handguns, and further prevent licensed retailers from selling such handguns to ordinary law-abiding adults, all while exempting politically-favored categories of persons—including those under the State's "Hollywood" exemption for those in the motion picture, television, and video production industry—in violation of the Second and Fourteenth Amendments to the United States Constitution.

4.  Plaintiffs acknowledge *Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), but that case, effectively applying rational basis, upheld a prior version of some of the laws challenged herein and was wrongly-decided. They therefore institute this good faith litigation to vindicate their rights, seek to have *Pena* overruled, and change the law as required to conform it to the Constitution's text, our Nation's history and tradition, and as required under the Supreme Court's binding *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) decisions.

**PARTIES**

5.      Plaintiff Lana Rae Renna is a natural person and a citizen of the State of California, residing in San Diego County, California.

6.      Plaintiff Danielle Jaymes is a natural person and a citizen of the State of California, residing in San Diego County, California.

7.      Plaintiff Hannah Spousta is a natural person and a citizen of the State of California, residing in San Diego County, California.

8.      Plaintiff Laura Schwartz ("L. Schwartz") is a natural person and a citizen of the State of California, residing in San Diego County, California.

9.      Plaintiff Michael Schwartz ("M. Schwartz") is a natural person and a citizen of the State of California, residing in San Diego County, California.

10.     Plaintiff Robert Macomber is a natural person and a citizen of the State of California, residing in San Diego County, California.

11.     Plaintiff Clint Freeman is a natural person and a citizen of the State of California, residing in San Diego County, California.

12.     Plaintiff Richard Bailey is a natural person and a citizen of the State of California, residing in Coronado, California.

13.     Plaintiff John Klier is a natural person and a citizen of the State of California, residing in San Diego County, California.

14.     Plaintiff Justin Smith is a natural person and a citizen of the State of California, residing in San Diego County, California.

15.     Plaintiff John Phillips is a natural person and a citizen of the State of California, residing in San Diego County, California.

16.     Plaintiff PWGG, L.P. ("PWG"), a California limited partnership doing business as "Poway Weapons & Gear" and "PWG Range," is a licensed firearms retailer, shooting range, and training facility in the City of Poway, within San Diego County, California.

17.     Plaintiff Cheryl Prince ("C. Prince") is a natural person and a citizen of the State of California, residing in San Diego County, California.

18.     Plaintiff Darin Prince ("D. Prince") is a natural person and a citizen of the State of California, residing in San Diego County, California.

19.     Plaintiff North County Shooting Center, Inc. ("NCSC"), a California corporation, is a licensed firearms retailer, shooting range, and training facility in the City of San Marcos, within San Diego County, California.

20.     Plaintiff Ryan Peterson is a natural person and a citizen of the State of California, residing in San Diego County, California.

21.     Plaintiff Gunfighter Tactical, LLC ("Gunfighter Tactical"), a California limited liability corporation doing business as "Gunfighter Tactical," is a licensed firearms retailer in the City of San Diego within San Diego County, California.

22.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in California. The purposes of FPC include defending and promoting the People's rights, especially First and Second Amendment rights, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members in the State of California, including in San Diego County. FPC represents its members and supporters—including individual gun owners and other law-abiding persons who wish to purchase new and/or self-manufacture handguns they cannot under California's Handgun Ban, licensed California firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

23.     Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a local political organization whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, California, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and

protect the right to keep and bear arms in California. The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, SDCGO sues on its own behalf and on behalf of its members and supporters.

24.     Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("CCRKBA") is a nonprofit organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. CCRKBA is dedicated to promoting the benefits of the right to bear arms. CCRKBA has members and supporters nationwide, including thousands of members in California and in the County of San Diego, California. CCRKBA brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

25.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in California and in the County of San Diego, California. SAF brings this action on behalf of itself, its members, supporters

who possess all the indicia of membership, and similarly situated members of the public.

26.     Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity. Under Article 5, § 13 of the California Constitution, Attorney General Becerra is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." Defendant Becerra is the head of the California Department of Justice ("DOJ"). Defendant Becerra's DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, transfer, possession, manufacture, and ownership of firearms. The Attorney General and DOJ maintain an office in San Diego, California.

27.     Defendant Luis Lopez is the Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Lopez reports to Attorney General Becerra, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations, and policies regarding firearm and ammunition sales, possession, transfers, as well as the manufacture of firearms. Defendant Lopez is sued in his official capacity.

**JURISDICTION AND VENUE**

28.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances,

regulations, customs, and usages of the State of California, of the rights, privileges, or immunities secured by the United States Constitution.

29.    Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought. Further, the venue rules of this State specifically would permit this action to be filed in San Diego, since the Attorney General and California Department of Justice maintain an office within this District; Cal. Code of Civ. Pro. § 401(1).

## STATEMENT OF FACTS

### *California's Regulatory Scheme and Handgun Ban*

30.    In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers, like Retailer Plaintiffs, in face-to-face transactions, or face serious criminal penalties.

31.    Because of an onerous and burdensome regulatory scheme designed to deny and chill the exercise of fundamental, individual rights, people in California cannot exercise their Second Amendment right to keep and bear arms without going in person to retailers that must comply with the State's regulatory scheme on pain of criminal liability—a misdemeanor at a minimum, Cal. Pen. Code, § 19.4 (providing that, unless otherwise specified, a violation of a criminal statute constitutes a misdemeanor)—as well as loss of their licenses to do business.

32.   "Where neither party to [a] [firearm] transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050)." Penal Code § 27545.

33.   A license to transact in firearms "is subject to forfeiture for a breach of any of the prohibitions and requirements of [Article 2, Penal Code §§ 26800 – 26915]" (with some exceptions that do not apply in the instant matter). Penal Code § 26800.

34.   Penal Code § 28220(a) states: "Upon submission of firearm purchaser information, the Department of Justice shall examine its records, as well as those records that it is authorized to request from the State Department of State Hospitals pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm."[2]

---

[2]   The DOJ's multi-step, acronym-heavy background check process for firearms is reviewed in detail in *Silvester v. Harris*, 41 F.Supp.3d 927, 947–952 (E.D. Cal. 2014).

35.     Defendants' Department of Justice participates in the National Instant Criminal Background Check System (NICS). Penal Code § 28220(a).

36.     A "Certificate of Eligibility" ("COE") "means a certificate which states that the Department has checked its records and the records available to the Department in the National Instant Criminal Background Check System and determined that the applicant is not prohibited from acquiring or possessing firearms pursuant to Penal Code sections 18205, 29800, 29805, 29815 through 29825, and 29900, or Welfare and Institutions Code sections 8100 and 8103, or Title 18, sections 921 and 922 of the United States Code, or Title 27, Part 478.32 of the Code of Federal Regulations at the time the check was performed and which ensures that a person who handles, sells, delivers, or has under his or her custody or control any ammunition, is eligible to do so pursuant to Penal Code section 30347." 11 CCR § 4031(d). *See also* Penal Code § 26710 and 11 CCR § 4030, *et seq*.

37.     "The initial COE application process includes a firearms eligibility criminal background check and issuance of a certificate, which is valid for one year. Thereafter, the COE must be renewed annually. A COE can be revoked, at anytime, if the COE holder becomes prohibited from owning/possessing firearms and ammunition." *See* Defendants' website at https://oag.ca.gov/firearms/cert-eligibility.

38.     On information and belief, a COE issued by Defendants' Department of Justice Bureau of Firearms places the certificate holder in their "Rap Back" file, which would notify them immediately should the certificate holder be arrested or otherwise prohibited from purchasing or possessing firearms.

39.     Defendants' California Department of Justice compiles, publishes, and maintains "a roster listing all of the handguns that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this part," Cal. Penal Code § 32015 (the "Roster" or "Roster of Certified Handguns").

40.     Additional information on the Roster of Certified Handguns can be found in Defendants' regulations at California Code of Regulations, title 11, section 4070. California's Handgun Ban, Cal. Penal Code §§ 31900, *et seq.* and 32000, *et seq.*, and Defendants' regulations, policies, and practices enforcing the State's "Unsafe Handgun Act" and self-manufacturing ban regulatory scheme, individually and collectively prevent individuals, like and including Plaintiffs, Plaintiffs' members and supporters, and others similarly situated to them, who are not prohibited from possessing or acquiring firearms, from purchasing handguns that are categorically in common use for self-defense and other lawful purposes, and thus violate the Second and Fourteenth Amendments to the United States Constitution.

41.     The Handgun Ban further prevents all such individuals from manufacturing handguns in common use for self-defense and other lawful purposes. Penal Code § 32000 provides, "[a] person in [California] who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends an unsafe handgun shall be punished by imprisonment in a county jail not exceeding one year."

42.     Defendants' Roster of Handguns Certified for Sale is available on Defendants' website at https://oag.ca.gov/firearms/certified-handguns/search. On that web page, in a section captioned "IMPORTANT INFORMATION" (Figure 1, below), Defendants state that "Aftermarket changes or modifications made to certain single shot pistols (i.e. changing upper receivers, connecting gas tubes) may be considered manufacturing these pistols into assault weapons. See California Penal Code section 30515, subdivision (a)(1), for a list of assault weapon characteristics. The purchaser could be in violation of Penal Code section 30600, prohibiting the manufacture of assault weapons, and Penal Code section 30605(a), prohibiting the possession of unregistered assault weapons."

**[Figure 1]**

| IMPORTANT INFORMATION: |
|---|
| • All handguns listed are approved with or without night sights.<br>• Aftermarket changes or modifications made to certain single shot pistols (i.e. changing upper receivers, connecting gas tubes) may be considered manufacturing these pistols into assault weapons. See California Penal Code section 30515, subdivision (a)(1), for a list of assault weapon characteristics. The purchaser could be in violation of Penal Code section 30600, prohibiting the manufacture of assault weapons, and Penal Code section 30605(a), prohibiting the possession of unregistered assault weapons.<br>• Alterations of a single shot pistol (i.e. changing upper receivers, connecting gas tubes) may also be considered manufacturing an unsafe handgun. See California Penal Code sections 31900-31910 for the definition of unsafe handguns and 32000(a) for more information on illegal acts involving unsafe handguns. |

43.     Defendants' website also states that: "Alterations of a single shot pistol (i.e. changing upper receivers, connecting gas tubes) may also be considered manufacturing an unsafe handgun. *See* California Penal Code sections 31900-31910 for the definition of unsafe handguns and 32000(a) for more information on illegal acts involving unsafe handguns." *Id*.

44.     Defendants' have also published a document titled "Legal Requirements for Self-made Firearms," available online at https://oag.ca.gov/system/files/attachments/press-docs/consumer-alert.pdf, which states in pertinent part that: "If you intend to manufacture or assemble your own

15

firearm—including through the use of 3D printing—you must ensure that the firearm is legal to possess or manufacture in California."

45.   Defendants' "Legal Requirements for Self-made Firearms" publication further states that: "Additionally, California law generally prohibits the manufacture of unsafe handguns. A self-manufactured handgun must meet certain design features under state law. A self-manufactured semiautomatic handgun, even if temporarily altered for single-shot firing, must include safety and security features, including: The firearm must incorporate a manually-operated safety device. The firearm must meet California's drop safety requirements. The firearm must be able to imprint certain identifying information on two locations on each cartridge case when fired." (Bullets and line breaks omitted.)

46.   Under Penal Code § 29180, *et seq.*, the State of California's statutes regulating the personal construction of home-built firearms, "manufacturing" or "assembling" a firearm "means to fabricate or construct a firearm, or to fit together the component parts of a firearm to construct a firearm."

47.   While Penal Code § 29182 generally provides that law-abiding individuals in California may apply to Defendants' and their Department of Justice permission to personally build their own otherwise-lawful firearms (*see* Penal Code § 29182(e)(1)), and the Department "shall grant applications in the form of serial numbers pursuant to Section 23910 to[] persons who wish to manufacture or

assemble firearms pursuant to subdivision (b) of Section 29180," Penal Code § 29182(a)(1), the regulatory scheme "does not authorize a person, on or after July 1, 2018, to manufacture or assemble an unsafe handgun, as defined in Section 31910." Penal Code § 29182(e)(2).

48.    On information and belief, Defendants' Roster of Certified Handguns available for sale to law-abiding citizens not exempt from California's Handgun Ban is a small fraction of the total number of handgun makes and models commercially available throughout the vast majority of the United States, all of which are constitutionally protected arms.

49.    On information and belief, at the end of 2013, there were 1,273 makes and models of approved handguns, including 883 semiautomatics, on Defendants' Roster. Since then, the Defendants' Roster has continued to shrink because of the Defendants' enforcement of California's Handgun Ban.

50.    Indeed, as of November 8, 2020, there were "830 handguns found"— *total*, of all makes, models, and permutations—on Defendants' Roster.

51.    And now, as of January 4, 2021, there are only "779 handguns found"— *total*, of all makes, models, and permutations—on Defendants' Roster Ban.

52.    Moreover, of those handguns, on information and belief, "about one-third of the Roster's total listings are comprised of makes and models that do not offer consumers substantive and material choices in the physical attributes, function,

or performance of a handgun relative to another listing (*i.e.*, a base model)," because many of the approved handguns are merely the same handgun make and model as another approved model with cosmetic difference(s). *See*, *e.g.*, *California's Handgun Roster: How big is it, really?*, online at https://www.firearmspolicy.org/california-handgun-roster (showing the results of a detailed analysis of the Roster as of January 30, 2019).

53.    Since the State's handgun Roster regulatory scheme last faced a legal challenge, the State of California's legislature recently enacted an expansive amendment to California's Handgun Ban in Assembly Bill No. 2847 (2019 – 2020 Reg. Sess.) ("AB 2847") that makes it even more onerous, *inter alia*, by *expressly requiring* the Defendants' Department of Justice to remove three firearms from the Roster that are not compliant with its current requirements for every single new firearm added to the roster.[3]

54.    AB 2847 further provides an exemption from the typical rulemaking process for "emergency regulations pursuant to the Administrative Procedure Act

---

[3] *See also* Alexei Koseff, "Bullet-tracing bill by [California Assembly-member] David Chiu aims to force issue on gunmakers," San Francisco Chronicle (March 16, 2020), at https://www.sfchronicle.com/politics/article/Assemblyman-Chiu-pushes-firearms-industry-to-15132278.php, and Alexei Koseff, "[California Governor] Newsom signs bill that compels gunmakers to adopt bullet-tracing technology," San Francisco Chronicle (Sept. 29, 2020), at https://www.sfchronicle.com/politics/article/Newsom-signs-bill-that-compels-gunmakers-to-adopt-15607657.php.

(Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code) to implement this act." AB 2847, Sec. 3(a).

55.   AB 2847 took effect on January 1, 2021, and the "[e]mergency regulations adopted pursuant to this section shall be effective … until July 1, 2022, or until the adoption of regulations by the Attorney General through the regular rulemaking process, whichever comes first." AB 2847, Sec. 3(b).

56.   California's Handgun Ban, as it stands today, not only forces and requires the Defendants' Roster to continue to shrink into oblivion, but, on information and belief, even minor changes to manufacturing processes, materials, and suppliers will cause a previously-certified handgun to be removed from the Roster by Defendants under the State's laws and Defendants' policies and enforcement practices.

57.   Worse, certified handgun models are removed from the Roster by Defendants if the manufacturer does not pay an annual fee to maintain the model on the Defendants' Roster. Penal Code § 32015(b)(2). On information and belief, due to California's Handgun Ban, just as hundreds of handgun makes and models have already been removed from Defendants' Roster, more handgun makes and models will "drop off" the Roster as manufacturers choose to update their products—as well as their materials, processes, and supply chains—to make them more competitive in the broader civilian market throughout the United States and/or refusing to continue

to pay California's extortive annual renewal fees, making them ineligible to renew on the Roster, further reducing the availability of constitutionally protected arms that individual adults not disqualified from exercising Second Amendment rights have a fundamental right to acquire and possess.

58.     Handguns that have passed California's tests and were certified by Defendants do not become "unsafe" because the manufacturer does not pay an annual fee.

59.     Handguns that do not have one or all of the "safety" devices as required under California's Handgun Ban are in common use for lawful purposes throughout the United States.

60.     Handguns that do not have chamber load indicators are in common use for lawful purposes throughout the United States.

61.     Handguns that do not have magazine disconnect mechanisms are in common use for lawful purposes throughout the United States.

62.     Handguns that do not have "microstamping" technology are in common use for lawful purposes throughout the United States.

63.     Any of the attributes, systems, and "safety" devices required under California's Handgun Ban can fail or be altered or removed by a handgun's possessor.

64.     The attributes, systems, and "safety" devices required under California's Handgun Ban are not sufficient to guarantee a handgun's safe use.

65.     The attributes, systems, and "safety" devices required under California's Handgun Ban cannot replace safe and responsible gun handling.

66.     Microstamping technology is not a safety device.

67.     Microstamping technology has not been shown to viably support any law enforcement purpose.

68.     On information and belief, as of November 8, 2020, there were no commercially available semiautomatic handguns manufactured in the United States that have the microstamping technology required under California's Handgun Ban.

69.     On information and belief, as of January 4, 2021, there are no commercially available semiautomatic handguns manufactured in the United States that have the microstamping technology required under California's Handgun Ban.

70.     On information and belief, as of November 8, 2020, there were no commercially available semiautomatic handguns manufactured in the United States that met all of the requirements under California's Handgun Ban.

71.     On information and belief, as of January 4, 2021, there are still no commercially available semiautomatic handguns manufactured in the United States that meet all of the requirements under California's Handgun Ban.

72.     Sturm, Ruger & Co., Inc. ("Ruger") is "one of the nation's leading manufacturers of rugged, reliable firearms for the commercial sporting market. With products made in America, Ruger offers consumers almost 800 variations of more than 40 product lines. For more than 70 years, Ruger has been a model of corporate and community responsibility." Ruger states on its website at https://ruger.com/service/faqs.html (in the "FAQS" section under the drop-down menu for "California Residents"):

> Q.     Why are Ruger® pistols that used to be available in California no longer on the Roster?
>
> [Answer] Pistols that appeared on the California Roster of Handguns Certified for Sale ("Roster") were tested and approved pursuant to the regulations in effect at that time. However, the California Department of Justice (CADOJ) requires us to submit firearms for re-testing if we make any change to the design, however small. If we change the weight, dimensions, or materials of a part, then that is a change that CADOJ says requires re-testing. As part of Ruger's program of continuous improvement, we routinely make changes and enhancements to our products. Any firearm that is re-tested must now incorporate microstamping technology (described in another FAQ). As this is not feasible, we cannot resubmit any pistols after we have made a change, and the pistol is dropped from the Roster by operation of law.
>
> Q.     Why are there so few Ruger® pistols offered on the roster in California?
>
> [Answer] We at Ruger are committed to our customers in California. The problem is the microstamping requirement (described in another FAQ) in California. Because the California microstamping law is impossible to comply

22

with, no new Ruger® pistols (or any other manufacturer's, for that matter) have been added to the California Roster of Handguns Certified for Sale since the law became effective in 2013.

Q.    What is microstamping?

[Answer] Microstamping is a patented process that micro-laser engraves the firearm's make, model and serial number on the tip of the gun's firing pin so that, in theory, it imprints the information on discharged cartridge cases. California's law requires that any pistol added to the roster includes microstamping technology that imprints this information in two locations on discharged cartridge cases. The technology does not work. An independent, peer-reviewed study published in the professional scholarly journal for forensic firearms examiners proved that the concept of microstamping is unreliable and does not function as the patent holder claims. It can be easily defeated in mere seconds using common household tools. Criminals could also simply switch the engraved firing pin to a readily available unmarked spare part, thereby circumventing the process. To date, no firearms have been made by any manufacturer that utilizes this unproven technology. Please note that we continue to work with the National Shooting Sports Foundation (NSSF) to support their efforts to overturn the California microstamping law.

73.    California law requires that handgun purchasers successfully complete a test, pay a fee, and acquire a valid FSC before they purchase and take possession of any firearm, including handguns. Penal Code § 31610, *et seq*. *See also* 11 CCR § 4250, *et seq*., and Defendants' website at https://oag.ca.gov/firearms/fscfaqs.

74.    Defendants' publicly available Firearms Safety Certificate ("FSC") Study Guide, a document published by the Office of the Attorney General and

California Department of Justice Bureau of Firearms, Defendants' Spanish-language version of the FSC Study Guide, and Defendants' FSC "MANUAL for California Firearms Dealers and DOJ Certified Instructors" are available on Defendants' website at https://oag.ca.gov/firearms/fsc.

75.    In their publicly available FSC Study Guide, Defendants state, in red type: "REMEMBER: Ignorance and carelessness can result in firearm accidents. Basic gun safety rules must be applied ALL OF THE TIME." (Color and capitalization in original.)

76.    In the Defendants' publicly available FSC Study Guide, in the first section of Chapter 1 captioned "THE SIX BASIC GUN SAFETY RULES," the Guide states: "There are six basic gun safety rules for gun owners to understand and practice at all times: 1. Treat all guns as if they are loaded. 2. Keep the gun pointed in the safest possible direction. 3. Keep your finger off the trigger until you are ready to shoot. 4. Know your target, its surroundings, and beyond. 5. Know how to properly operate your gun. 6. Store your gun safely and securely to prevent unauthorized use. Guns and ammunition should be stored separately." (Line breaks removed.)

77.    Under common rules of firearm safety, and within the knowledge required for the State's FSC and safe handling demonstration, is the fundamental rule that all firearms must always be treated as though they are loaded.

78.    It is irresponsible and unsafe to rely on "safety" devices required under California's Handgun Ban.

79.    Additionally, Defendants' require firearm purchasers, the retailer, and the DOJ Certified Instructor licensed and permitted to proctor the test, to conduct, successfully pass, and certify in a "Safe Handling Affidavit" (online at https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/hscaff.pdf) signed under penalty of perjury, that the purchaser or transferee "performed the safe handling demonstration as required in California Penal Code sections 26850, 26853, 26856, 26859, or 26860, as applicable, with the firearm (or one of the same make and model) referenced" on the Dealer's Record of Sale (DROS) number associated with the purchase or transfer.

80.    As an adequate and less restrictive measure, the State's interest in handgun safety could be advanced by producing, providing, and encouraging education, training, and public outreach on firearm safety, storage, and use.

81.    As an adequate and less restrictive measure, the State's interest in handgun safety could be advanced by providing firearm locking and/or storage devices.

82.    Notwithstanding California's Handgun Ban's general prohibition against ordinary law-abiding citizens acquiring new, constitutionally protected handguns from licensed dealers, Defendants' ban has consistently exempted all

motion picture, television, and video producers, individuals participating in entertainment events, actors, and all employees and agents of any entity involved the production of such entertainment, Pen. Code, § 32110(h), without any demonstrated or other conceivably legitimate basis for favoring this subset of individuals and entities over the millions of ordinary law-abiding citizens seeking to exercise their fundamental, individual right to keep and bear the same arms.

### *How California's Handgun Ban Impacts The Plaintiffs*

83.    Plaintiff Renna is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

84.    Plaintiff Renna is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

85.    Plaintiff Renna has a damaged tendon in her right thumb that impacts her ability to apply physical force.

86.    The Smith & Wesson M&P® 380 SHIELD™ EZ® is specifically designed for those with limited hand strength. On the website for the Smith & Wesson M&P® 380 SHIELD™ EZ®, online at https://www.smith-wesson.com/firearms/mp-380-shield-ez-0, it states that the firearm is "Built for personal protection and every-day carry, the M&P380 Shield EZ is chambered in 380 Auto and is designed to be easy to use, featuring an easy-to-rack slide, easy-to-

load magazine, and easy-to-clean design. Built for personal and home protection, the innovative M&P380 Shield EZ pistol is the latest addition to the M&P M2.0 family and provides an easy-to-use protection option for both first-time shooters and experienced handgunners alike." The Smith & Wesson M&P® 380 SHIELD™ EZ® that Plaintiff Renna wishes to purchase is a constitutionally protected handgun that is in common use for self-defense and other lawful purposes and widely sold and possessed outside of California.

87.     But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Renna would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Smith & Wesson M&P® 380 SHIELD™ EZ®, for self-defense and other lawful purposes.

88.     Plaintiff Spousta is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

89.     Plaintiff Spousta possesses a valid COE issued by the Defendants' Department of Justice Bureau of Firearms.

90.     Plaintiff Spousta is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

91.    But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Spousta would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Springfield Armory Hellcat, Sig 365, CZ Scorpion, HK SP5, and/or Sig MPX for self-defense and other lawful purposes.

92.    Plaintiff Jaymes is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

93.    Plaintiff Jaymes possesses a valid COE issued by the Defendants' Department of Justice Bureau of Firearms.

94.    Plaintiff Jaymes is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF. But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Jaymes would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Sig 365, G43X, Glock 19 Gen5, Sig P320, and/or Nighthawk Lady Hawk for self-defense and other lawful purposes.

95.    But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Jaymes would self-manufacture for her own possession and lawful

use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

96.    Plaintiff L. Schwartz is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

97.    Plaintiff L. Schwartz holds an active license to carry a concealed weapon ("CCW") issued by her county sheriff, after proving "good cause" and "good moral character" to her licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

98.    Plaintiff L. Schwartz is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

99.    But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff L. Schwartz would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Glock 19 Gen5 and/or

Springfield Armory Hellcat, which are constitutionally protected handguns in common use for self-defense and lawful purposes.

100. Plaintiff M. Schwartz is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

101. Plaintiff M. Schwartz holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165 and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

102. Plaintiff M. Schwartz is the Executive Director of Plaintiff San Diego County Gun Owners PAC.

103. Plaintiff M. Schwartz is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

104. But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff M. Schwartz would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Glock 19 Gen5 and/or

Springfield Armory Hellcat, which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

105.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff M. Schwartz would self-manufacture for his own possession and lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

106.   Plaintiff Macomber is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

107.   Plaintiff Macomber holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165 and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

108.   Plaintiff Macomber is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

109.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Macomber would self-manufacture for his own possession and

lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

110.   Plaintiff Freeman is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

111.   Plaintiff Freeman is a firearms instructor.

112.   Plaintiff Freeman is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

113.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Freeman would self-manufacture for his own possession and lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

114.   Plaintiff Bailey is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

115.   Plaintiff Bailey is the elected Mayor of Coronado, California.

116.   Plaintiff Bailey is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

117.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Bailey would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Glock 19 Gen5, which is a constitutionally protected handgun in common use for self-defense and other lawful purposes.

118.   Plaintiff Klier is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

119.   Plaintiff Klier is a veteran of the Navy, having been disabled and honorably discharged after serving in Iraq as a "Seabee" member of the United States Naval Construction Battalions.

120.   Plaintiff Klier is a trained firearms instructor who owns and operates Active Shooter Defense School ("ASDS"), which "employs the best instructors in the industry," with "former [Navy] SEALs, Rangers, engineers, SWAT officers, combatives instructors and current top performing competitive shooters on staff to ensure students master each technique being taught." ASDS's "mission is to provide

the most up to date tactical weapons training available to the public, law enforcement and military."[4]

121.   Plaintiff Klier is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

122.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Klier would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Glock 19 Gen5, which is a constitutionally protected handgun in common use for self-defense and other lawful purposes.

123.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Klier would self-manufacture for his own possession and lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

124.   Plaintiff Justin Smith is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

---

[4] *See* "Meet our Team" on ASDS's website, online at https://asdschool.com/asds-instructors.

125.   Plaintiff Smith is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

126.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Smith would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a CZ P10, Walther Q5 SF, and/or Glock 19 Gen4 and/or Gen5, which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

127.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Smith would self-manufacture for his own possession and lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

128.   Plaintiff Phillips is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

129.   Plaintiff Phillips possesses a current COE issued by the Defendants' Department of Justice Bureau of Firearms.

130.   Plaintiff Phillips is the President of Plaintiff PWG, a proprietor of the business, and the individual licensee associated with the dealership and range facility, including by and through the Defendants and their Bureau of Firearms.

131.   Plaintiff Phillips holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

132.   Plaintiff Phillips is a trained firearms instructor.

133.   Plaintiff Phillips is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

134.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Phillips would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Sig Sauer P365, Sig Sauer P320 M17, Glock 17 Gen5 MOS, Fabrique National Herstal 509, and/or Fabrique National Herstal  FNX-9, which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

135.   Plaintiff PWG is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

136.   Plaintiffs Phillips and PWG are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

137.   Many customers and prospective customers of Plaintiffs Phillips and PWG are interested in, have, and continue to seek to purchase constitutionally protected handguns not currently on or eligible under the statutes to be added to Defendants' Roster.

138.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiffs Phillips and PWG would make available for sale to their customers all of the constitutionally protected new handguns on the market that are available outside of California but not currently on or eligible under the statutes to be added to Defendants' Roster, and sell and transfer them to their adult customers who are not disqualified from exercising Second Amendment rights.

139.   Plaintiff C. Prince is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

140.   Plaintiff C. Prince holds an active license to carry a concealed weapon ("CCW") issued by her county sheriff, after proving "good cause" and "good moral character" to her licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

141.   Plaintiff C. Prince is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

142.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff C. Prince would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Sig Sauer P365, which is a constitutionally protected handgun in common use for self-defense and other lawful purposes.

143.   Plaintiff D. Prince is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

144.   Plaintiff D. Prince possesses a current COE issued by the Defendants' Department of Justice Bureau of Firearms.

145.   Plaintiff D. Prince is an owner and manager of Plaintiff NCSC, the proprietor of the business, and the individual licensee associated with the dealership, including by and through the Defendants and their Bureau of Firearms.

146.   Plaintiff D. Prince holds an active license to carry a CCW issued by his county sheriff under Penal Code § 26150, *et seq*., after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions.

147.   Plaintiff D. Prince is a member of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

148.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff D. Prince would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Sig Sauer P320 AXG Scorpion, which is a constitutionally protected handgun in common use for self-defense and other lawful purposes.

149.   Plaintiff NCSC is a federally and state-licensed firearms retailer in San Marcos, California.

150.   Plaintiff NCSC is a member of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

151.   Plaintiffs D. Prince and NCSC are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

152.   Many customers and prospective customers of Plaintiffs D. Prince and NCSC are interested in, have, and continue to seek to purchase constitutionally protected handguns not currently on or eligible under the statutes to be added to Defendants' Roster.

153.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiffs D. Prince and NCSC would make available for sale to their customers all of the constitutionally protected new handguns on the market that are available outside of California but not currently on or eligible under the statutes to be added to Defendants' Roster, and sell and transfer them to their adult customers who are not disqualified from exercising Second Amendment rights.

154.   Plaintiff Peterson is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm.

155.   Plaintiff Peterson possesses a current COE issued by the Defendants' Department of Justice Bureau of Firearms.

156.   Plaintiff Peterson is the proprietor of and an individual licensee associated with Plaintiff Gunfighter Tactical.

157.   Plaintiff Peterson is a DOJ Certified Instructor.

158.   Plaintiff Peterson is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

159.   Ironically, Plaintiff Peterson, who owns and operates a gun store (Plaintiff Gunfighter Tactical), is highly trained in the safe handling of firearms, is a DOJ Certified Instructor, and sells handguns not on the Defendants' Roster to those who can lawfully purchase them, keeps for lawful purposes including self-defense a Fabrique Nationale 509 Tactical handgun while physically inside Gunfighter Tactical, but cannot transfer that same firearm to himself—or any other law-abiding citizen not exempt from California's Handgun Ban—for self-defense in his home.

160.   But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Peterson would purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the statutes to be added to Defendants' Roster, including but not limited to a Fabrique National Herstal 509 Tactical, Sig Sauer P220 Legion (10mm), Staccato 2011, Glock 19 Gen5, Glock 17 Gen5 MOS, and a Wilson Combat Elite CQB 1911 (9mm), which

are constitutionally protected handguns in common use for self-defense and other lawful purposes.

161. But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiff Peterson would self-manufacture for his own possession and lawful use semiautomatic handguns that are constitutionally protected but not on Defendants' Roster or eligible to be self-manufactured under California's Handgun Ban.

162. Plaintiff Gunfighter Tactical is a member of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

163. Plaintiffs Peterson and Gunfighter Tactical are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

164. Many customers and prospective customers of Plaintiffs Peterson and Gunfighter Tactical are interested in, have, and continue to seek to purchase constitutionally protected handguns not currently on or eligible under the statutes to be added to Defendants' Roster.

165. But for California's Handgun Ban and Defendants' active enforcement thereof, Plaintiffs Peterson and Gunfighter Tactical would make available for sale to their customers all of the constitutionally protected new handguns on the market that

are available outside of California but not currently on or eligible under the statutes to be added to Defendants' Roster, and sell and transfer them to their adult customers who are not disqualified from exercising Second Amendment rights.

### *The Constitutional Rights at Stake*

166.   The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

167.   The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

168.   The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring).

169.   Individuals in California have a right to keep and bear arms, including but not limited to, buying, selling, transferring, self-manufacturing or assembling, transporting, carrying, and practicing safety and proficiency with, firearms,

ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

170.   Millions of handguns of the category banned for sale to the State's citizens under California's Handgun Ban regime are commonly possessed and used for self-defense and other lawful purposes in the vast majority of states.

171.   Moreover, the handgun designs and platforms concomitantly banned from personal manufacture and/or assembly by the State's citizen under California's Handgun Ban regime are commonly possessed and used for self-defense and other lawful purposes in the vast majority of states.

172.   The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests"—including the State's in California's Handgun Ban—"the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

173.   The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780.

174.   "This decision is a freedom calculus decided long ago by Colonists who cherished individual freedom more than the subservient security of a British ruler.

44

The freedom they fought for was not free of cost then, and it is not free now." *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1186 (S.D. Cal. 2019).

175.   "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634.

176.   The fundamental, individual right to keep and bear firearms includes the right to acquire and manufacture common, modern handguns in common use for lawful purposes—indeed, arms that are lawfully sold and possessed throughout the United States—such as those the California Handgun Ban prevents common law-abiding citizens from purchasing at a licensed retailer or manufacturing themselves.

177.   "Just as the First Amendment protects modern forms of communications, … and the Fourth Amendment applies to modern forms of search, … the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia et al. v. Heller*, 554 U.S. 570, 582 (2008) (internal citations omitted).

178.   California's Handgun Ban prevents law-abiding citizens, like and including Plaintiffs, Plaintiffs' members and supporters, and similarly situated

members of the public, from acquiring and possessing for lawful purposes "instruments that constitute bearable arms" protected under the Second Amendment.

179.   The many exceptions to California's Handgun Ban, found in Penal Code §§ 32100, *et seq.*, undermine any purported interests in the State's unconstitutional regulatory scheme.

180.   Defendants' "Hollywood exemption" and numerous other exceptions to California's Handgun Ban—*see*, *e.g.*, Cal. Penal Code. § 32110—further undermine the validity of any interested claimed by the Defendants, especially given the ban's burden and impact upon millions of ordinary law-abiding citizens whose rights are certainly not less important than those of "an authorized participant" of an entertainment production or event, or "authorized employee or agent of the entity producing that production or event." Indeed, those not subject to California's Handgun Ban under the Defendants' "Hollywood exemption," for example, are not required to be any more or differently trained than the average law-abiding citizen.

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

181.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

182.   There is an actual and present controversy between the parties.

183.    The Second Amendment protects "the right of the people to keep and bear Arms."

184.    The Supreme Court has explained that the Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

185.    "The very enumeration of the [Second Amendment] right takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

186.    The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. 742, 780, and it cannot "be singled out for special—and specially unfavorable—treatment." *Id.* at 778–79.

187.    The State's interests certainly cannot and do not take priority over the Constitution's text enshrinement of a fundamental right that "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller,* 554 U.S. 570 at 635.

188.    As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and

liabilities of many similarly situated California residents and firearm retailers who are subject to the laws, regulations, policies, practices, and customs in question.

189.   Considerations of necessity, convenience, and justice justify relief to Plaintiffs in a representative capacity.

190.   Defendants are individually and collectively responsible for the formulation, issuance, implementation, and/or enforcement of the laws, regulations, policies, practices, and customs at issue in this case.

191.   Defendants have enforced and will continue to enforce California's Handgun Ban laws, regulations, policies, practices, and customs against Individual Plaintiffs, Retailer Plaintiffs and their customers, Institutional Plaintiffs' members and supporters, and similarly situated persons.

192.   Defendants' enforcement of their unconstitutional laws, regulations, policies, practices, and customs has prevented and continues to prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and other similarly situated adults from purchasing new constitutionally protected handguns in violation of their rights protected under the Second and Fourteenth Amendments to the United States Constitution.

193.   Defendants' enforcement of their unconstitutional laws, regulations, policies, practices, and customs has prevented and continues to prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and

supporters, and other similarly situated adults from self-manufacturing new constitutionally protected handguns, in violation of their rights protected under the Second and Fourteenth Amendments to the United States Constitution.

194. Defendants' laws, regulations, policies, practices, customs, and ongoing enforcement against Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and other similarly situated adults prevent all law-abiding people from lawfully self-manufacturing virtually all handguns, including semiautomatic handguns without microstamping technology, on pain of criminal sanction.

195. Individual Plaintiffs, Retailer Plaintiffs and their customers, and Institutional Plaintiffs' members and supporters reasonably fear that Defendants will enforce their laws, regulations, policies, practices, and customs, including associated criminal laws and civil penalties, against them should they violate California's Handgun Ban.

196. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

197. Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the State of California not disqualified from exercising their fundamental, individual right to keep and bear

arms, including Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and all similarly situated individuals, through Defendants' enforcement and implementation of California's Handgun Ban, which has denied, and will continue to infringe upon and prevent by criminal sanction, the exercise of the fundamental right to keep and bear arms unless and until redressed through the relief Plaintiffs seek herein.

198.   For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## COUNT TWO
### DEPRIVATION OF CIVIL RIGHTS
### RIGHT TO EQUAL PROTECTION
### U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

199.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

200.   There is an actual and present controversy between the parties.

201.   The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person the equal protection of the laws.

202.   Among other exemptions, Cal. Penal Code § 32110 enumerates eleven (11) different exceptions to California's Handgun Ban.

203.   Indeed, Cal. Penal Code § 32110(h) completely exempts from California's Handgun Ban "[t]he sale, loan, or transfer of any semiautomatic pistol

that is to be used solely as a prop during the course of a motion picture, television, or video production by an authorized participant therein in the course of making that production or event or by an authorized employee or agent of the entity producing that production or event."

204.   The State of California, through many elected members of the Legislature and governors, has a history of catering to its privileged and politically powerful friends in Hollywood by exempting them from gun control laws that would otherwise apply to them. *See*, *e.g.*, "The 'Hollywood' Gun Control Loophole," online at https://www.firearmspolicy.org/the-hollywood-gun-control-loophole (describing more than a dozen such exemptions).

205.   California's Handgun Ban, and its exception that applies to participants in entertainment events, such as, but not limited to, actors and actresses, and other studio employees and contractors, provides just such an example.

206.   The Cal. Penal Code § 32110(h) exception to the Handgun Ban cannot survive scrutiny under any standard of review. There is no rational basis to allow a Hollywood actor, temporarily or otherwise, to take possession of and use an off-Roster handgun, merely by virtue of his or her status as a contractor or employee of a movie or television production studio, while denying the same to millions of law-abiding California citizens who have a fundamental, individual right to keep and bear modern, off-Roster handguns for self-defense.

207.   Because California's Handgun Ban implicates the Second Amendment rights of law-abiding people, this Court must apply heightened scrutiny in its review of the ban's unequal application to law-abiding adults, such as Individual Plaintiffs, the members and supporters of Institutional Plaintiffs, and the customers of Retailer Plaintiffs, who are in all relevant ways similarly situated to those who are exempted from Defendants' enforcement of California's Handgun Ban.

208.   Defendants' policies that they seek to enforce are discriminatory, favoring through exemption a selected group of politically favored citizens while against the great majority of law-abiding California citizens who have a need, demonstrable utility for, and a constitutional right to acquire and use all legal firearms, including handguns excluded from the Defendants' handgun Roster, for self-defense and other lawful purposes.

209.   42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

210.   Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the State of California not disqualified from exercising their fundamental, individual right to keep and bear arms, including Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and all similarly situated individuals, through

Defendants' enforcement and implementation of California's Handgun Ban, which has denied, and will continue to infringe upon and prevent by criminal sanction, the exercise of the fundamental right to keep and bear arms through the ban's prohibition against the sale and transfer of off-Roster handguns to some individuals while allowing others, including but not limited to "an authorized participant [of an entertainment production or event] in the course of making that production or event or by an authorized employee or agent of the entity producing that production or event," in violation of the right to equal protection of the laws, and are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

211.   For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.     A declaratory judgment that Cal. Penal Code §§ 31900, *et seq*. and 32000, *et seq*., Defendants' regulations issued pursuant thereto, and Defendants' related enforcement policies, practices, and customs, individually and collectively prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and ordinary citizens not disqualified from exercising Second Amendment rights from purchasing new, constitutionally protected

handguns in violation of their right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution;

2.     A declaratory judgment that Cal. Penal Code §§ 31900, *et seq*., 32000, *et seq*., and 29182(e)(2), Defendants' regulations issued pursuant thereto, and Defendants' related enforcement policies, practices, and customs, individually and collectively prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and ordinary citizens not disqualified from exercising Second Amendment rights from self-manufacturing new, constitutionally protected handguns in violation of their right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution;

3.     A declaratory judgment that Cal. Penal Code §§ 31900, *et seq*. and 32000, *et seq*., Defendants' regulations issued pursuant thereto, and Defendants' related enforcement policies, practices, and customs, individually and collectively prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and ordinary citizens not disqualified from exercising Second Amendment rights from purchasing new, constitutionally protected handguns that are not on Defendants' Roster while establishing exemptions for statutorily-created classes of individuals arbitrarily favored by the State of California in violation of the right to equal protection of the laws guaranteed under the Fourteenth Amendment to the United States Constitution;

4.     A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who have notice of the injunction, from enforcing Cal. Penal Code §§ 31900, *et seq*. and 32000, *et seq*., Defendants' regulations issued pursuant thereto, and Defendants' related enforcement policies, practices, that individually and collectively prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and ordinary citizens not disqualified from exercising Second Amendment rights from purchasing new, constitutionally protected handguns that are not on Defendants' Roster;

5.     A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who have notice of the injunction, from enforcing Cal. Penal Code §§ 31900, *et seq*., 32000, *et seq*., and 29182(e)(2), Defendants' regulations issued pursuant thereto, and Defendants' related enforcement policies, practices, that individually and collectively prevent Individual Plaintiffs, Retailer Plaintiffs' customers, Institutional Plaintiffs' members and supporters, and ordinary citizens not disqualified from exercising Second Amendment rights from self-manufacturing new, constitutionally protected handguns that are not on Defendants' Roster;

6.      A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who have notice of the injunction, from enforcing exemptions to California's Handgun Ban for statutorily-created classes of individuals arbitrarily favored by the State of California in violation of the right to equal protection of the laws guaranteed under the Fourteenth Amendment to the United States Constitution;

7.      All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and,

8.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted this 4th day of January 2021.

/s/*Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
Attorney for Plaintiffs