XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General
State Bar No. 267308
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6053
 Fax: (916) 324-8835
 E-mail: Gabrielle.Boutin@doj.ca.gov
*Attorneys for Defendants Attorney General Becerra and Director Luis Lopez, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **LANA RAE RENNA, et al.,**<br><br>                       Plaintiffs,<br><br>    v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California; and LUIS LOPEZ, in his official capacity as Director of the Department of Justice Bureau of Firearms,**<br><br>                       Defendants. | Case No. 3:20-cv-02190-DMS-DEB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date/Time:  To Be Set By Court<br>Dept:            13A<br>Judge:          Hon. Dana M. Sabraw<br>Trial Date:    None set<br>Action Filed: 11/10/2020 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................1
Argument.......................................................................................................1
    I.    The Roster Removal Provision is Nonjusticiable Because No Imminent, Non-Speculative Harm is Alleged......................................1
    II.   The Unsafe Handgun Act Does Not Violate the Second Amendment .........................................................................................3
        A.    The Unsafe Handgun Act Does Not Burden Conduct Protected by the Second Amendment..........................................3
        B.    Even if the Second Amendment Applied, the Unsafe Handgun Act Withstands Constitutional Scrutiny .....................6
            1.    The UHA Is Subject Only to Intermediate Scrutiny ........6
            2.    The UHA Satisfies Intermediate Scrutiny .......................7
    III.   The Unsafe Handgun Act Does Not Violate Equal Protection.............9
Conclusion...................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ................................................................................... *passim*

*Duncan v, Becerra*
    970 F.3d 1133 (9th Cir. 2020) ............................................................................. 5

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995) ............................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
    528 U.S. 167 (2000) ............................................................................................ 1

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015) ...................................................................... 6, 7, 8

*Green v. City of Tucson*
    340 F.3d 891 (9th Cir. 2003) ............................................................................. 10

*Jackson v. City & Cty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014) ........................................................................... 7, 8

*Mont. Shooting Sports Ass'n v. Holder*
    No. CV-09-147-DWM-JCL, 2010 WL 3926029 (D. Mont. Aug. 31, 2010) ................................................................................................................. 6

*Ohio Forestry Ass'n, Inc. v. Sierra Club*
    523 U.S. 726 (1998) ............................................................................................ 2

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*
    676 F.3d 829 (9th Cir. 2012) ............................................................................... 2

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018) ..................................................................... *passim*

*Rhode v. Becerra*
    445 F.Supp.3d 902 (2020) ................................................................................... 5

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Safer Chems., Healthy Fams. v. EPA*
   943 F.3d 397 (9th Cir. 2019) ......................................................................... 1, 9

*Silvester v. Harris*
   843 F.3d 816 (9th Cir. 2016) ......................................................................... 6, 8

*Teixera v. Cty. of Alameda*
   873 F.3d 670 (9th Cir. 2017) ......................................................................... 5, 6

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013) ........................................................................... 8

**STATUTES**

California Penal Code
   § 31910(b)(7) .............................................................................................. 1, 2, 9
   § 32110(h) ........................................................................................................ 10

# INTRODUCTION

In *Pena v. Lindley*, the Ninth Circuit recognized that while the Second Amendment protects individuals' right to "possess a lawful firearm in the home operable for the purpose of immediate self-defense," individuals have no "constitutional right to purchase a particular handgun."  898 F.3d 969, 973, 975 (9th Cir. 2018).  Accordingly, the Court rejected Second Amendment and equal protection challenges to California's Unsafe Handgun Act (UHA), which merely requires that certain new handgun models sold in California include three safety features, each of which the Ninth Circuit upheld in *Pena*.  The UHA also currently permits the sale of approximately 800 handgun models.  It therefore does not inhibit Plaintiff's ability to keep and bear arms for self-defense in the home, even if there are other handgun models that Plaintiffs would prefer.  The Court should grant Defendants' motion and dismiss Plaintiffs' Complaint.

# ARGUMENT

## I. THE ROSTER REMOVAL PROVISION IS NONJUSTICIABLE BECAUSE NO IMMINENT, NON-SPECULATIVE HARM IS ALLEGED

Plaintiffs' challenges to the roster removal provisions should be dismissed as nonjusticiable, because Plaintiffs have alleged no injury that is "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019).

Plaintiffs' only alleged injury resulting from the roster is that the number of handguns on the roster will eventually become unacceptably small.  Compl., ¶ 56. This conclusion is hypothetical and speculative.  Plaintiffs offer no supporting facts regarding when or how this is likely to happen.  Moreover, it is simply not possible that the number of handguns on the roster will "shrink into oblivion," as Plaintiffs allege. *See id.*, ¶ 56.  This is so for at least three reasons.  First, the removal provision—section 31910(b)(7)—applies only to "semiautomatic pistols."  It does

1 not apply to revolvers or any other types of handguns.  Second, the provision
2 applies only when a semiautomatic pistol is "newly added" to the roster.
3 § 31910(b)(7).  Thus, if a handgun is subject to removal under § 31910(b)(7), that
4 occurs only after some other new handgun has been *added* to the roster.  Third, the
5 removal provision does not apply to these newly added handguns, which will
6 necessarily contain the relevant safety features.  § 31910(b)(7). In other words, once
7 a handgun with those three features is added to roster, it is not subject to removal
8 under section 31910(b)(7).

9     For similar reasons, Plaintiffs' challenge should be dismissed as prudentially
10 unripe.  Prudential ripeness requires the Court "to first consider the fitness of the
11 issues for judicial review, followed by the hardship to the parties of withholding
12 court consideration."  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676
13 F.3d 829, 837 (9th Cir. 2012).  Plaintiff's challenge to section 31910(b)(7) is not fit
14 for review because, as discussed above, Plaintiffs cannot meaningfully allege that
15 the number of handguns on the roster will, as Plaintiffs essentially allege, shrink to
16 zero.  If for some reason that drastic development does occur, it may qualify as
17 "further factual development" that amounts to a concrete dispute.  But there is no
18 such dispute now.  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737
19 (1998).  Moreover, Plaintiffs would experience no hardship if the courts delay
20 consideration of the constitutionality of the roster removal provision.  The
21 allegations of the Complaint indicate that Plaintiffs remain able to purchase and
22 possess firearms as a general matter.
23     Plaintiffs argue that, under the terms of the roster removal provision, it is a
24 certainty that each time a handgun model is added to the roster, three grandfathered
25 models will be removed.  Opp. at 23.  They assert that this alone constitutes an
26 "actual or imminent injury."  *Id.* at 24.  Plaintiffs do not even attempt to speculate
27 how many times this will occur.  They therefore appear to suggest that the addition
28 of even one new model—and the corresponding removal of three other models—

would cause them injury. In other words, Plaintiffs suggest that the diminution of the roster from even 779 to 777 models, for example, would cause them concrete harm. *See also* Opp. at 22. In other words, Plaintiffs appear to argue that they have a constitutional right to purchase those handguns that are numbers 779 and 778 on the roster. But the Ninth Circuit has already rejected this argument, expressly holding in *Pena* that purchasers do not have a "constitutional right to purchase a particular handgun." *Pena*, 898 F.3d at 973.

Plaintiff have failed to show that the roster removal provision will cause them any actual, non-speculative injuries. Their constitutional challenges to the provision should be dismissed on the grounds that Plaintiffs lack standing and the challenges lack both constitutional and prudential ripeness.

## II. THE UNSAFE HANDGUN ACT DOES NOT VIOLATE THE SECOND AMENDMENT

The two-step Second Amendment inquiry "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." Here, the UHA does not burden protected conduct, because the Second Amendment does not confer a right to purchase any handgun of one's choice. Even if it did, however, the UHA would survive intermediate scrutiny because, as the Ninth Circuit recognized in *Pena*, there is a reasonable fit between its provisions and the important public interests of promoting public safety and reducing crime.

### A. The Unsafe Handgun Act Does Not Burden Conduct Protected by the Second Amendment

The UHA does not burden conduct protected by the Second Amendment. As the Ninth Circuit expressly stated in *Pena*, the Second Amendment does not provide a "constitutional right to purchase a particular handgun." *Pena*, 898 F.3d at 973. Rather, it protects individuals' right to "possess a 'lawful firearm in the home operable for the purpose of immediate self-defense.'" *Id.* at 975 (quoting *District of*

3

*Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Thus, in *Heller*, the Second Amendment protected against a law that "totally bann[ed] handgun possession in the home." *Heller*, 554 U.S. at 628. The Court explained however, that, "the right secured by the Second Amendment . . . [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 627. It then provided an expressly non-exhaustive list of "presumptively lawful regulatory measures," that the Constitution leaves for combating the problem of firearm violence in the United States. *Id.* at 627; *id.* at 627 n.26, 636. These include "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626.

The UHA is a law "imposing conditions and qualifications on the commercial sale of arms," and therefore not within the scope of the Second Amendment. The law merely regulates the safety features of certain handguns manufactured and commercially sold in California. As the Ninth Circuit emphasized in *Pena*, unlike in *Heller*, the UHA "does not restrict *possession* of handguns in the home or elsewhere." *Pena*, 898 F.3d at 977 (emphasis in original). It also allows Plaintiffs to purchase in California an unlimited number of the 805 handguns currently on the roster.[1] The UHA therefore does not limit Plaintiffs' "inherent right to self-defense," *Heller*, 554 U.S. at 628.

Plaintiffs argue that the UHA burdens conduct protected under the Second Amendment because the Act implicates firearms that are in "common use." Opp. at 5. On this point, Plaintiffs rely heavily on a Ninth Circuit panel opinion that—since the filing of Plaintiffs' opposition—has been vacated, with the Ninth Circuit agreeing to rehear the case en banc. For the few months that it was operative, the relevant panel opinion acknowledged only that "common use" of a firearm is

---

[1] Plaintiffs assert this in their opposition brief as the current number of roster handguns. Opp. at 7. Notably, this number is *higher* that the number of handgun models that Plaintiffs alleged were on the roster when they filed their complaint in January 2021 (779). Compl. at 17.

*necessary* in order to establish Second Amendment protection—it did not establish that common use alone is *sufficient* for the protection. *See Duncan v. Becerra*, 970 F.3d 1133, 1145-51 (9th Cir. 2020), *vacated and en banc review granted*, 2021 WL 728825 (9th Cir. Feb. 25, 2021). In any event, the panel opinion having been vacated in its entirety, this Court need not consider *Duncan* at all.

The district court decision in *Rhode* also does not establish that the "common use" factor is dispositive of Second Amendment burden question. Indeed, there, the court stated that a regulation falls outside the Second Amendment if it is "one of the presumptively lawful regulatory measures identified in *Heller*." *Rhode v. Becerra*, 445 F.Supp.3d 902, 931 (quoting *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014)). As stated above, the UHA is one of those regulatory measures.

Plaintiffs argue that not all "laws imposing conditions and qualifications on the commercial sale of arms" should be considered outside the scope of the Second Amendment. Opp. at 8-9. They argue that the Second Amendment should apply to any such regulation if the law creates anything more than a "de minimis effect" on the core right to keep and bear arms, citing only the dissenting opinion in *Pena*. Opp. at 9. However, in *Teixera v. Cty. of Alameda*, the Ninth Circuit considered the scope of the *Heller* exception for regulations of firearms sales and determined that the exception applies at least where the right to possess firearms is "not significantly impaired." 873 F.3d 670, 688 (9th Cir. 2017) (en banc). The UHA does not significantly impair Plaintiffs' Second Amendment rights. *Pena*, 898 F.3d at 978 ("being unable to purchase a subset of semiautomatic weapons, without more, does not significantly burden the right to self-defense in the home"); *see also* section II(B)(1), *infra*.

Finally, Plaintiffs argue that the Second Amendment applies to the UHA because regulations of handgun manufacturers are not "presumptively lawful" under *Heller*. However, the *Heller* exceptions "does not purport to be exhaustive."

5

*Heller*, 554 U.S. at 627, n.26.  Indeed, "*Heller* said nothing about extending Second Amendment protection to firearm manufacturers or dealers." *Teixeira*, 873 F.3d at 690 n.24 (quoting *Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010).  "Consistent with Heller, a number of lower courts have previously determined or assumed that there is no Second Amendment right to be a firearm manufacturer or dealer." *Mont. Shooting Sports Ass'n*, 2010 WL 3926029, at *21 n.17 (quotation omitted) (collecting cases); *see also Pena*, 898 F.3d at 986 ("The microstamping restrictions on commercial *manufacture* and sale implicate the rights of gun owners far less than laws directly punishing the possession of handguns" (emphasis added)).

### B. Even if the Second Amendment Applied, the Unsafe Handgun Act Withstands Constitutional Scrutiny

#### 1. The UHA Is Subject Only to Intermediate Scrutiny

As the Ninth Circuit determined in *Pena*, the UHA is subject only to intermediate scrutiny, assuming the Second Amendment even applies.  Strict scrutiny applies only when a law "implicates the core of the Second Amendment right and severely burdens that right." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016).  If both requirements are not met, intermediate scrutiny applies. *Fyock v. Sunnyvale*, 779 F.3d 991, 998-99 (9th Cir. 2015); *see also Pena*, 898 F.3d at 977. There is "near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Silvester*, 843 F.3d at 823.

Neither of the strict scrutiny requirements are met here.  First, the UHA does not implicate the core of the Second Amendment because it does not concern anyone's possession and use of firearms generally, much less in the home. *See Heller*, 554 U.S. at 635 (core of Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home").  The UHA regulates only the manufacture and sale of certain handguns.

Second, as this Court already determined in *Pena*, even if the UHA burdened any Second Amendment right, it is not a severe burden. *Pena*, 898 F.3d at 978-79 ("being unable to purchase a subset of semiautomatic weapons, without more, does not significantly burden the right to self-defense in the home"); *see also Jackson*, 746 F.3d at at 964 (no severe burden where, unlike in *Heller*, law did not "substantially prevent law-abiding citizens from using firearms to defend themselves in the home"). Unlike in *Heller*, the UHA does not ban the possession of any handguns or the possession (or purchase) of "an entire class" of arms. *Heller*, 554 U.S. at 629. The UHA simply requires firearms sold and manufactured in California to include three safety features. Further, "[a]ny burden on the right is lessened by the UHA's exceptions" to the safety feature requirements, including those "grandfathered on the roster," and transferred through private transactions. *Pena*, 898 F.3d at 979.

### 2. The UHA Satisfies Intermediate Scrutiny

As the Ninth Circuit properly concluded in *Pena*, the UHA satisfies intermediate scrutiny. *Pena*, 898 F.3d at 979. Intermediate scrutiny requires (1) a significant, substantial, or important government objective, and (2) a reasonable fit between the challenged law and the asserted objective. *Id.* The law need not be the "least restrictive means" of achieving the interest. *Fyock*, 779 F.3d at 1000.

The Ninth Circuit properly determined in *Pena* that the three challenged safety provisions—the chamber load indicator, magazine disconnect mechanism, and microstamping—satisfy both requirements of intermediate scrutiny. *Pena*, 898 F.3d at 979; *id.* 979-986.

For the first requirement of an important government objective, the court determined that the state's interests in public safety and crime prevention were "undoubtedly adequate." *Id.* at 980, 981-82. In particular, the laws' objectives are to prevent accidental shootings from loaded guns and to aid law enforcement's investigations of shootings. *Id.* at 979-986. The importance of these objectives has

not diminished since *Pena*, and Plaintiffs do not appear to argue otherwise here. *See also Jackson*, 746 F.3d 965-66 ("reducing the number of gun-related injuries and deaths" is significant government interest).

For the second intermediate scrutiny requirement, the Ninth Circuit determined in *Pena* that there is a "reasonable fit" between the government's identified interests and the three challenged safety requirements. Courts have often characterized this requirement whether the law and the government objective are "substantially related." *See e.g.*, *Silvester*, 843 F.3d at 827; *Jackson*, 746 F.3d at 966; *United States v. Chovan*, 735 F.3d 1127, 1140-41 (9th Cir. 2013). "When reviewing the reasonable fit between the government's stated objective and the regulation at issue, the court may consider 'the legislative history of the enactment as well as studies in the record or cited in pertinent case law'" *Fyock*, 779 F.3d at 1000 (quoting *Jackson*, 746 F.3d at 966) *Chovan*, 735 F.3d at 1140; *Silvester*, 843 F.3d at 827-28.

In *Pena*, the legislative history, studies, and case law supported the Ninth Circuit's determination of reasonable fit. *See Pena*, 898 F.3d at 980-86. They demonstrated to the court that chamber load indicators and magazine disconnect mechanisms reasonably promote safety by helping to prevent the accidental discharge of firearms. *Id.* at 980 ("The legislative history cites studies confirming this common-sense conclusion"). The Court also determined, in a lengthy discussion, that legislative history, studies, and case law support the conclusion that the microstamping requirement is a reasonable fit. *Id.* at 981-86. For each of the safety features, the Court considered the plaintiffs' rebuttal argument and evidence, but found it unpersuasive. *Id.* at 980-86. Thus, under the "reasonable fit" standard, the Ninth Circuit's conclusions in *Pena* govern here.

Plaintiffs argue that the fit here is not reasonable because the roster excludes many handguns that are "distributed by highly reputable manufacturers widely known and respected for consistently producing high quality, safe firearms." Opp.

at 16. However, even if some off-roster handguns possess other safety features, the purpose and effect of the UHA's required safety features is to make handguns saf*er*, by requiring certain features as determined by Legislature, not Plaintiffs or manufacturers. *See Pena*, 898 F.3d at 980-86. And, like in *Pena*, Plaintiffs here do not allege that the safety features themselves "clearly thwart, rather than advance, California's goal of saving lives by preventing accidental discharges." *Id.* at 980.

The UHA safety features also reasonably promote safety even if, as Plaintiffs allege, some off-roster handgun models include features that may increase safety only for particular individuals. Opp. at 17. The Second Amendment generally protects an individual's right to possess a firearm in the home for self-defense. *Heller*, 554 U.S. at 635. It does not confer on each individual a right to possess the "safest" handgun based on their individual characteristics. Plaintiffs notably have not alleged that the UHA prevents any of them from possessing (or even purchasing) a handgun that he or she can operate for self-defense.

Finally, the new roster removal provision in section 31910(b)(7) also reasonably fits the purpose of public safety. By including handgun models on the roster that existed before the challenged safety requirements were enacted, the roster grandfathers in non-complying models. By removing these grandfathered models from the roster when new models are added that do include all mandatory safety features, section 31910(b)(7) facilitates a gradual transition over time towards full compliance. Although Plaintiffs argue that the removal of even one handgun from the roster violates their Second Amendment rights, Opp. at 22, again, individuals have no "constitutional right to purchase a particular handgun." *Pena*, 898 F.3d at 973.

### III.   THE UNSAFE HANDGUN ACT DOES NOT VIOLATE EQUAL PROTECTION

Plaintiff's equal protection claim challenging the UHA's exception for handguns used solely as props in film productions also fails as a matter of law.

9

"The first step in equal protection analysis is to identify the [defendant's] classification of groups." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187 (9th Cir. 1995). Here, section 32110(h) does not trigger equal protection review at all because the statute does not distinguish between different groups of potential manufacturers or purchasers. The exception applies only to the sale of a handgun "that is to be used" solely in a film. § 32110(h). Thus, the exception is available equally to all people, including Plaintiffs, for such use.

Even if 32110(h) did trigger equal protection review, which it does not, it would withstand such review, as already decided in *Pena*. *See Pena*, 898 F.3d at 987. There, the court appropriately applied rational basis scrutiny because section 32110(h) does not discriminate against a protected group or infringe on a fundamental right. *Pena*, 989 F.3d at 988. Plaintiffs here assert that the court in *Pena* should have applied heightened scrutiny, arguing that section 32110(h) infringes on Plaintiffs' Second Amendment rights. Opp. at 24-25. However, heightened scrutiny in equal protection review is appropriate only when a statute "substantially burdens" fundamental rights. *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003). The challenged UHA provisions "do not substantially burden" the core Second Amendment right to possess firearms for self-defense in the home. *Pena*, 898 F.3d 978; *see also* section II(B)(1), *supra*. Rational basis review was therefore proper in *Pena*. And, the exception in section 32110(h) is rational because firearms used in film protection "are not intended to be used for live fire," or as offensive or defensive weapons, and therefore do not pose the same threat to public safety. *Pena*, 898 F.3d at 989.

## CONCLUSION

For the reasons above and in Defendants' motion, Defendants respectfully ask the Court to grant their motion to dismiss Plaintiffs' Complaint.

| | | |
|---|---|---|
| Dated: March 1, 2021 | | Respectfully Submitted,<br><br>XAVIER BECERRA<br>Attorney General of California<br>ANTHONY R. HAKL<br>Supervising Deputy Attorney General<br><br><br>*/s/ Gabrielle D. Boutin*<br>GABRIELLE D. BOUTIN<br>Deputy Attorney General<br>*Attorneys for Defendants Attorney General Becerra and Director Luis Lopez, in their official capacities* |

SA2020304764
34858941.docx

11

# CERTIFICATE OF SERVICE

| Case Name: | **Renna, Lana Rae, et al. v. Xavier Becerra, et al.** | No. | **20-cv-2190** |

I hereby certify that on <u>March 1, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 1, 2021</u>, at Sacramento, California.

| Ritta Mashriqi | /s/*Ritta Mashriqi* |
|---|---|
| Declarant | Signature |

SA2020304764
34866688.docx