UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANA RAE RENNA, et al.,<br><br>                          Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California; and LUIS LOPEZ, in his official capacity as Director of the Department of Justice Bureau of Firearms,<br><br>                          Defendants. | Case No.:  20-cv-2190-DMS-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

This case comes before the Court on Defendants Xavier Becerra and Luis Lopez's motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs filed a response in opposition, and Defendants filed a reply. For the following reasons, the motion is granted in part and denied in part.

## I.

## BACKGROUND

California's Unsafe Handgun Act ("UHA") regulates the sale of firearms by maintaining a roster of handguns which have been determined to be "not unsafe" and therefore may be sold in the state. This lawsuit challenges numerous provisions of the

UHA, particularly those relating to the roster, as violating the Second Amendment to the United States Constitution.

Under California Penal Code § 32000(a)(1), a person in California "who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends an unsafe handgun shall be punished by imprisonment in a county jail not exceeding one year." There are several exemptions to this rule, including law enforcement, private party transfers, and intrafamilial transfers. *See id.* §§ 32000(b); 32110.

The UHA defines an "unsafe handgun" in California Penal Code § 31910 and requires handguns to have various features in order to be deemed not unsafe. Currently, semiautomatic pistols are required to have a chamber load indicator ("CLI"), magazine detachment mechanism ("MDM"), and microstamping technology. *See* Cal. Penal Code § 31910(b)(4)–(6).

The UHA effectively presumes all handguns are unsafe unless otherwise determined by the California Department of Justice ("CDOJ"), and charges CDOJ with maintaining a roster of handguns determined to be "not unsafe" ("the roster"). Pursuant to California Penal Code § 32015(a), CDOJ "shall compile, publish, and thereafter maintain a roster listing all of the handguns that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this part." Currently, the roster "grandfathers" handgun models on the roster which do not meet the current safety requirements, meaning those handgun models may still be sold in California. However, for a new model to be added, it must meet the criteria set forth in § 31910 as discussed above.

Once a handgun is added to the roster, it is valid for one year, after which the manufacturer may renew the listing by paying an annual fee. Cal. Code of Regs. § 4070; *see id.* § 4071. A handgun model may be removed from the roster for any of the following reasons: (1) if the annual fee is not paid; (2) if the handgun model sold after certification is

modified from the model submitted for testing; or (3) if the handgun is deemed unsafe based upon further testing. *Id.* § 4070(c).

During the 2019–2020 legislative session, the California legislature enacted Assembly Bill 2847 ("AB 2847"), which added provisions for the removal of handguns from the roster. (FAC ¶ 53.) Specifically, AB 2847 requires that for each new handgun added to the roster, CDOJ must remove and deem unsafe three grandfathered handguns which do not meet current requirements for inclusion on the roster (the "three-for-one provision"). (*Id.*)

AB 2847 went into effect on January 1, 2021. (*Id.* ¶ 55); Cal. Penal Code § 31910(b)(4). California Penal Code § 31910(b)(7) now provides: "The Department of Justice shall, for each semiautomatic pistol newly added to the roster pursuant to Section 32015, remove from the roster exactly three semiautomatic pistols lacking one or more of the applicable features [CLI, MDM, and microstamping] . . . and added to the roster before July 1, 2022." It further provides that "each semiautomatic pistol removed from the roster pursuant to this subdivision shall be considered an unsafe handgun," and that the Attorney General shall remove semiautomatic pistols from the roster in reverse order of the date they were added, continuing until the only handguns on the roster are those which have each of the three applicable features. *Id.*

Plaintiffs are individuals, firearm retailers, and organizations who allege the UHA's roster scheme prevents individuals from exercising their Second Amendment rights to purchase or manufacture handguns that are in common use and prevents licensed retailers from selling such handguns to law-abiding adults. (FAC ¶¶ 3, 40, 41; *see* ¶¶ 83–165.) Specifically, Plaintiffs allege the roster of handguns available for sale is a "small fraction of the total number of handgun makes and models commercially available throughout the vast majority of the United States, all of which are constitutionally protected arms" (FAC ¶ 48), and that the roster continues to grow smaller. Plaintiffs allege that at the end of 2013, there were 1,273 makes and models of approved handguns on the roster, and since then,

that number has shrunk significantly. (*Id.* ¶ 49.) As of November 8, 2020, there were 830 handguns on the roster, and as of January 4, 2021, there were 779. (*Id.* ¶¶ 50–51.)

Based on these allegations, Plaintiffs filed the instant action in this Court on November 10, 2020. (ECF No. 1.) On January 4, 2021, Plaintiffs filed the FAC, alleging two claims under 42 U.S.C. § 1983—one for deprivation of their Second Amendment rights, as secured by the Fourteenth Amendment, and one for violation of the Fourteenth Amendment right to equal protection of the laws. (ECF No. 10.) Defendants now move to dismiss the FAC. (ECF No. 12.)

## II.
## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.3d 1115, 1121 (9th Cir. 1992) (citation omitted). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.
## DISCUSSION

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be

infringed." U.S. CONST. amend. II. "As interpreted in recent years by the Supreme Court, the Second Amendment protects 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 676–77 (9th Cir. 2017) (en banc) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)); *see also McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) ("[O]ur central holding in *Heller* [was] that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").

Plaintiffs frame their challenge broadly, alleging the UHA and Defendants' "regulations, policies, and practices enforcing the State's regulatory scheme" are unconstitutional. However, the thrust of Plaintiffs' challenge is (1) the UHA's roster and its limitations on the sale and transfer of handguns in California—including its requirements for safety features and the provisions by which handguns are removed from the roster—violate their Second Amendment rights, and (2) the "Hollywood exception" provided for in Cal. Penal Code § 32110(h) violates their rights to equal protection of the laws.[1]

Before determining whether Plaintiffs have successfully stated a claim for infringement of their Second Amendment rights, the Court addresses two threshold issues raised by Defendants: first, whether Plaintiffs' claims are foreclosed by the Ninth Circuit's holding in *Pena v. Lindley*, 898 F.3d 969, 978 (9th Cir. 2018), and second, whether Plaintiffs have standing to bring this challenge.

**A. *Pena v. Lindley***

In *Pena v. Lindley*, the Ninth Circuit held constitutional the requirement that a semiautomatic handgun have three features—CLI, MDM, and microstamping—in order to be deemed "not unsafe" under the UHA. 898 F.3d at 980–86. *Pena* further rejected an

---

[1] The "Hollywood exception" provides that the UHA's prohibitions shall not apply to the "sale, loan, or transfer of any semiautomatic pistol that is to be used solely as a prop during the course of a motion picture, television, or video production" by an authorized participant or producer of such event. Cal. Penal Code § 32110(h).

equal protection challenge to the so-called "Hollywood exception" functionally identical to the one raised by Plaintiffs here. *Id.* at 986–87.

To the extent Plaintiffs challenge those provisions as unconstitutional here, their arguments are foreclosed by *Pena* and therefore rejected. Although Plaintiffs contend *Pena* was wrongly decided, it constitutes binding precedent on this Court. Defendants' motion to dismiss Count Two, Plaintiff's equal protection claim, is accordingly granted. *See id.* at 986–87.

However, *Pena* did not address the issue of the removal of handguns from the roster, and the enactment of AB 2847 postdates *Pena*. Plaintiffs' challenge on these grounds is thus not barred by *Pena*.

**B. Standing**

Defendants contend Plaintiffs lack Article III standing to challenge the constitutionality of the three-for-one provision of AB 2847, arguing Plaintiffs allege only a future injury based on speculation about the number of handguns that may be removed from the roster.

In order to establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "These requirements overlap significantly with constitutional ripeness, which requires that a case present issues that are definite and concrete, not hypothetical or abstract." *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) (internal citation and quotation marks omitted). Where, as here, a court sees no distinction between injury and fact and constitutional ripeness, it may "proceed . . . under the same rubric to determine whether both requirements are satisfied." *Id.*

Plaintiffs assert injury based on the certain removal of three grandfathered handguns for each new handgun added to the roster, alleging the UHA "forces and requires" the roster of handguns available for sale to "shrink into oblivion." (FAC ¶ 56.) Defendants contend the alleged injury is speculative because Plaintiffs offer no supporting facts regarding when or how the number of handguns on the roster will become unacceptably small. Defendants further argue it is not possible that the number of handguns on the roster will shrink into oblivion, because AB 2847 does not apply to revolvers and removal will only occur after a new handgun has been added.

However, the FAC specifically alleges the number of handguns on the roster is growing smaller. Over 400 handguns were removed from the roster between the end of 2013 and November 8, 2020. (FAC ¶¶ 49, 50.) As of November 8, 2020, there were 830 handguns on the roster, and as of January 4, 2021, there were 779. (*Id.* ¶¶ 50–51.) Moreover, as the FAC alleges, all handguns on the roster—including revolvers and newly added handguns—are subject to removal for various reasons, such as failure to pay fees or minor changes to the model. (*Id.* ¶¶ 56–57); *see* Cal. Code of Regs. § 4070(c). The mandatory language of AB 2847, which took effect January 1, 2021, provides CDOJ "shall . . . remove from the roster exactly three semiautomatic pistols," and "each semiautomatic pistol removed from the roster pursuant to this subdivision shall be considered an unsafe handgun." Cal. Penal Code § 31910(b)(7). Plaintiffs have thus sufficiently alleged the roster is growing smaller and that it will continue to do so with the operation of AB 2847.

"[A] plaintiff possesses Article III standing to bring a pre-enforcement challenge to a state statute which regulates the exercise of a federal constitutional right and threatens a criminal penalty." *Miller v. Becerra*, 488 F. Supp. 3d 949, 953 (S.D. Cal. 2020) (finding plaintiffs had standing to challenge state statutes regulating "assault weapons") (citing cases). Such challenges can proceed "only when the plaintiff faces a realistic danger of sustaining a direct injury as a result of the law's operation or enforcement." *Id.* (citing *Skyline Wesleyan Church*, 968 F.3d at 747 (internal quotation marks omitted). Here, Plaintiffs face a realistic danger of sustaining injury as a result of AB 2847's operation

because the three-for-one provision of § 31910(b)(7), in combination with the other provisions of the UHA which are already causing the roster to shrink, impacts their Second Amendment acquisition rights, as discussed below. At this stage of litigation, the Court therefore finds Plaintiffs have sufficiently alleged facts to establish standing and ripeness.

**C. Second Amendment Inquiry**

Having concluded that Plaintiffs' challenge to the roster's removal provisions survives the above threshold questions, the Court proceeds to the question of whether Plaintiffs have sufficiently stated a claim for violation of their Second Amendment rights.

A Second Amendment challenge requires the Court to conduct a two-step inquiry. First, it assesses "whether the challenged law burdens conduct protected by the Second Amendment." *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 960 (9th Cir. 2014). If the law burdens protected conduct, the Court must "apply an appropriate level of scrutiny" to determine whether it is constitutional. *Id.* As a preliminary matter, the Court notes it cannot consider *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020), *vacated*, 988 F.3d 1209 (9th Cir. 2021), on which Plaintiffs rely extensively, in its determination of the issues here, because on February 25, 2021, the Ninth Circuit vacated the opinion and ordered the case be reheard en banc.[2]

1. Plaintiffs Sufficiently Plead the UHA Burdens Protected Conduct

"Whether a challenged law burdens conduct protected by the Second Amendment depends on 'the historical understanding of the scope of the right,' including 'whether the challenged law falls within a well-defined and narrowly limited category of prohibitions that have been historically unprotected.' " *Pena*, 898 F.3d at 975 (quoting *Jackson*, 746 F.3d at 960). If the ordinance "imposes no burden on conduct falling within the scope of the Second Amendment's guarantee," then the Court's inquiry is complete, "as a law that burdens conduct that falls outside the Second Amendment's scope . . . passes constitutional

---

[2] Rehearing en banc is currently scheduled for the week of June 21, 2021.

muster." *Teixeira*, 873 F.3d at 682 (citing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (internal quotation marks omitted).

Defendants argue the UHA is presumptively lawful as a regulation on the commercial sale of arms and does not prohibit the possession or use of firearms in any fashion. In *Heller*, the Supreme Court included "laws imposing conditions and qualifications on the commercial sale of arms" in a list of "presumptively lawful regulatory measures" consistent with the Second Amendment. 554 U.S. at 626–27; *see Teixeira*, 873 F.3d at 683 ("Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons.").

In *Pena*, the majority declined to "defin[e] the parameters of the Second Amendment's individual right in the context of commercial sales," assuming without deciding that the UHA burdens conduct protected by the Second Amendment. 898 F.3d at 976. Judge Bybee, concurring in part and dissenting in part, analyzed the meaning of "presumptively lawful" and concluded that a law imposing conditions on the sale of firearms "carries a presumption of lawfulness," but "it must be a presumption that is subject to rebuttal." *Id.* at 1006 (Bybee, J., concurring in part and dissenting in part). The Court agrees. "The Supreme Court in *Heller* could not have meant that anything that *could* be *characterized* as a condition and qualification on the commercial sale of firearms is immune from more searching Second Amendment scrutiny." *Pena*, 898 F.3d at 1007 (emphasis in original); *see Marzzarella*, 614 F.3d at 92 n.8 ("[A] court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable . . . .").

The Court thus adopts Judge Bybee's analysis, which follows the approach taken by the D.C. Circuit in *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244 (D.C. Cir. 2011). Under this approach, a longstanding regulation of commercial sales of arms is

presumptively lawful, but a plaintiff may " 'rebut this presumption by showing the regulation does have more than a de minimis effect upon his [Second Amendment] right.' " *Pena*, 898 F.3d at 1010 (quoting *Heller II*, 670 F.3d at 1253). This "places little burden on the government to show that its regulations are longstanding," while "giv[ing] the plaintiff an opportunity to show that the regulations substantially infringe Second Amendment rights." *Id.* (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). The closer the regulations get to the "core" of the Second Amendment, the less willing a court should be to deem them presumptively lawful. *Id.* "Where the presumption is rebutted, the government would have to defend its regulation under an appropriate level of scrutiny." *Id.*

Accordingly, the Court considers whether Plaintiffs have made an adequate showing to rebut the presumption. It concludes Plaintiffs have sufficiently pled the UHA substantially impacts their Second Amendment rights and thus burdens conduct protected by the Amendment.

The Ninth Circuit has recognized that "the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Teixeira*, 873 F.3d at 677. Such rights include an individual's ability to acquire firearms. The court in *Teixeira* explained: "As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Id.* at 677–78 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).

*Teixeira* declined to define "the precise scope of any such acquisition right under the Second Amendment." *Id.* at 678. Nevertheless, the Ninth Circuit discussed how regulatory measures, such as restrictions on the sale of firearms, may impact the acquisition right. It cited to an 1871 Tennessee Supreme Court case, which observed that "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." *Id.* at 679 (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871)); see also *Ill.*

*Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) (emphasis in original) ("[T]he right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to *acquire* a firearm, although that acquisition right is far from absolute . . . ."). The court further noted that the Third Circuit has "rightly observed that in contemporary society, permitting an overall ban on gun sales 'would be untenable under *Heller*,' because a total prohibition would severely limit the ability of citizens to *acquire* firearms." *Teixeira*, 873 F.3d at 688 (emphasis in original) (quoting *Marzzarella*, 614 F.3d at 92 n.8).

Plaintiffs allege the UHA's roster imposes a significant burden on their Second Amendment rights. Specifically, the FAC alleges the number of handguns available for purchase on the roster continues to decline and ultimately will "shrink into oblivion" as handguns are removed from the roster, including by AB 2847's three-for-one provision. (FAC ¶ 56.) Taking Plaintiffs' allegations as true, this limits the ability of law-abiding citizens to acquire firearms, which is critical to ensuring the Second Amendment right to keep arms.

Defendants contend there is "no constitutional right to purchase a particular handgun," *Pena*, 898 F.3d at 973, and that the UHA does not significantly impair Plaintiffs' rights because Plaintiffs can still purchase any of the handguns currently listed on the roster for the purpose of self-defense in the home.[3] It is true that currently, Plaintiffs may still

---

[3] Defendants argue a regulation is presumptively lawful where the right to possess firearms is "not significantly impaired," citing *Teixeira v. County of Alameda*, 873 F.3d at 688. In *Teixeira*, the Ninth Circuit rejected Plaintiff's claim that retail establishments have an independent, freestanding right to sell firearms under the Second Amendment unconnected to the rights of citizens to possess firearms, and noted the case presented "a situation in which the right of citizens to acquire and keep arms was not significantly impaired, yet commercial retailers were claiming an independent right to engage in sales." *Id.* at 682–83, 686–888. *Teixeira* did not hold that "significant impairment" is the test to determine whether a regulation is presumptively lawful under *Heller*, and in any event, the Court finds the *Teixeira* court's statement does not conflict with the analysis it adopts today, under which a plaintiff may rebut the presumption of lawfulness by showing a regulation

purchase handguns for self-defense. Nevertheless, because Plaintiffs have alleged the number of handguns available for purchase on the roster has steadily declined and will continue to decline, Plaintiffs sufficiently demonstrate the UHA burdens protected conduct by substantially infringing Plaintiffs' ability to acquire firearms for self-defense. This acquisition right is protected as an "ancillary right[] necessary to the realization of the core right to possess a firearm for self-defense." *Teixeira*, 873 F.3d at 677. Moreover, the regulations at issue are not longstanding. AB 2847's three-for-one provision is precisely the opposite, having gone into effect on January 1, 2021. (FAC ¶ 55.) The current roster began on January 1, 2001. *See* Cal. Penal Code § 32015(a) ("On and after January 1, 2001, [CDOJ] shall compile, publish, and therefore maintain a roster . . . .").

Accordingly, the Court finds Plaintiffs have rebutted the presumption of lawfulness accorded to the regulation of firearm sales, and have sufficiently alleged the UHA implicates Plaintiffs' Second Amendment rights at the first step of the analysis.

2. <u>Plaintiffs Sufficiently Allege the UHA Violates Their Second Amendment Rights</u>

The Court thus moves to the second step of the analysis—assessing whether Plaintiffs state a plausible claim under the appropriate level of scrutiny.

"Which level of scrutiny to apply depends on 'how close the law comes to the core of the Second Amendment right' and 'the severity of the law's burden on the right.' " *Pena*, 898 F.3d at 977 (quoting *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)). Strict scrutiny is applied if the law "implicates the core of the Second Amendment right and severely burdens that right." *Id.* (citation omitted). Intermediate scrutiny is appropriate if the law "does not implicate the core Second Amendment right *or* does not place a substantial burden on that right." *Id.* (citation omitted).

The Ninth Circuit previously concluded in *Pena* "the UHA does not effect a substantial burden" and thus "intermediate scrutiny is adequate to protect the claimed

---

has "more than a de minimis effect" on and "substantially infringe[s]" her Second Amendment rights. *Pena*, 898 F.3d at 1010 (citing *Heller II*, 670 F.3d at 1253).

Second Amendment rights at issue here." *Id.* at 978–79. Particularly, it noted that "any burden on the right is lessened by the UHA's exceptions, which allow for the purchase of firearms that do not have the CLI, MDM, and microstamping features," citing the ability of individuals to purchase handguns lacking those features which are grandfathered on the roster, and the ability to purchase off-roster handguns in private transactions. *Id.* at 977. Plaintiffs contend a higher level of scrutiny is required here, relying heavily on the vacated opinion in *Duncan.*

The Court need not decide whether strict or intermediate scrutiny is necessary, because even assuming intermediate scrutiny—the less stringent standard of review—applies here, Plaintiffs sufficiently plead a claim for violation of their Second Amendment rights.

"Intermediate scrutiny requires (1) a significant, substantial, or important government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective." *Pena*, 898 F.3d at 979 (citing *Jackson*, 746 F.3d at 965)). "The government must show that the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, but not necessarily that the chosen regulation is the "least restrictive means" of achieving the government's interest." *Id.* (internal quotation marks omitted) (citing *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015)).

Defendants argue AB 2847's three-for-one provision satisfies intermediate scrutiny because it furthers public safety. Specifically, Defendants contend that by removing grandfathered models when new models complying with the applicable features are added, the three-for-one provision "facilitates a transition over time toward full compliance" with statutorily required features.

It is well established that public safety is a substantial government interest. *Pena*, 898 F.3d at 981–82. However, the Court is not persuaded there is a "reasonable fit" between the state's asserted objective and the three-for-one provision. Defendants offer no justification for why the statute requires the removal of three handguns for each new

handgun added, instead of, for instance, a proportional one-to-one. Moreover, considering the roster's already diminishing numbers, the three-for-one provision imposes an even greater restriction on the pool of handguns available for sale in California. As Judge Bybee noted in *Pena*, the *only* handguns currently commercially sold in California are those grandfathered from the recent MDM, CLI, and microstamping provisions. 898 F.3d at 989. These handguns are already subject to removal from the roster for nonpayment of fees or minor changes to a model's materials or design, and Plaintiffs allege grandfathered handguns have been steadily dropping off the roster, even before AB 2847's enactment, as a result. In this respect, the roster is already transitioning toward the compliance that Defendants claim as their objective. As Plaintiffs allege, application of the three-for-one provision will accelerate this trend further, rendering the number of handguns available for purchase unacceptably small. In light of this, the Court finds Defendants have not met their burden to show the imposition of the three-to-one provision is a reasonable fit for their stated objective.

At this stage of the proceedings, the Court "is not asked to, and does not, decide whether the [challenged provision] is constitutional. Rather, the question is whether Plaintiff's complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Peruta v. Cty. of San Diego*, 678 F. Supp. 2d 1046, 1056 (S.D. Cal. 2010) (denying motion to dismiss cause of action for violation of Second Amendment) (quoting *Twombly,* 550 U.S. at 570). Taking Plaintiffs' allegations as true, Plaintiffs have sufficiently alleged the UHA, particularly AB 2847's three-to-one provision, violates their Second Amendment rights and thus state a plausible claim upon which relief can be granted. Defendants' motion to dismiss Count One is accordingly denied.

**D. Leave to Amend**

Generally, when a court dismisses for failure to state a claim under Rule 12(b)(6), leave to amend is granted "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citation

omitted). Here, to the extent Plaintiffs' claims are dismissed, it is because they are foreclosed by binding Ninth Circuit precedent in *Pena*, as discussed above. Accordingly, the Court finds the deficiencies in Plaintiff's claims cannot possibly be cured by the allegation of other facts and denies leave to amend.

## IV.
## CONCLUSION AND ORDER

For the reasons set out above, the Court ORDERS as follows:

1. To the extent Plaintiffs' first cause of action challenges the three UHA provisions upheld in *Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), Defendants' motion to dismiss is GRANTED.
2. Defendants' motion to dismiss is DENIED in all other respects as to Count One of the FAC.
3. Defendants' motion to dismiss is GRANTED as to Count Two of the FAC.
4. To the extent Defendants' motion is granted, dismissal is without leave to amend.

**IT IS SO ORDERED**.

Dated: April 23, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court