ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General
State Bar No. 267308
　1300 I Street, Suite 125
　P.O. Box 944255
　Sacramento, CA 94244-2550
　Telephone:  (916) 210-6053
　Fax:  (916) 324-8835
　E-mail:  Gabrielle.Boutin@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Blake Graham, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **LANA RAE RENNA et al.,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California; and BLAKE GRAHAM[1], in his official capacity as Acting Director of the Department of Justice Bureau of Firearms,**<br><br>　　　　　　　　　　Defendants. | 3:20-cv-02190-DMS-DEB<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date:　　　October 7, 2022<br>Time:　　　1:30 p.m.<br>Dept:　　　13A<br>Judge:　　　The Honorable Dana M. Sabraw<br>Trial Date:　None set<br>Action Filed: 11/10/2020 |

---

[1] Blake Graham is hereby substituted for former Bureau of Firearms Director Luis Lopez.  See Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................1
Background....................................................................................................2
    I.    Assembly Bill 1621 .......................................................................2
    II.   Procedural Background.................................................................4
Legal Standards .............................................................................................5
Argument........................................................................................................5
    I.    By Stipulation, Plaintiffs Will Shortly Dismiss Their Senate Bill 1327 Claims...................................................................................5
    II.   Plaintiffs Are Not Entitled to Injunctive Relief Related to Assembly Bill 1621's Prohibition of CNC Milling Machines .............6
        A.   Plaintiffs Have Failed to Show They Are Likely to Succeed on the Merits of Their Second Amendment Challenge..........................................................................6
            1.    The Supreme Court's Decision in *Bruen*.........................6
            2.    The CNC Milling Machine Prohibition Does Not Regulate Conduct Protected by the Plain Text of the Second Amendment ......................................................8
            3.    Plaintiffs Have Not Demonstrated that AB 1621 Is Not Consistent with Historical Tradition.......................11
        B.   Plaintiffs Have Not Established They Would Be Irreparably Harmed Absent Injunctive Relief..........................13
        C.   The Balance of the Equities and Public Interest Weigh Strongly Against Injunctive Relief.........................................13
Conclusion....................................................................................................14

i

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvarez v. Larose*
    445 F. Supp. 3d 861 (S.D. Cal. 2020) ................................................................5

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017) .........................................................................10

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) .............................................................................5

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ............................................................................... 7, 8, 10

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014) ...........................................................................5

*Ezell v. City of Chicago*
    651 F.3d 684 (7th Cir. 2011) .............................................................................9

*Heller v. District of Columbia*
    670 F.3d 1244 (D.C. Cir. 2011) .......................................................................12

*Jackson v. City & Cnty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014) ........................................................................9, 10

*Jones v. Bonta*
    34 F.4th 704 (9th Cir. 2022) ............................................................................10

*Maryland v. King*
    133 S. Ct. 1 (2012) ...........................................................................................14

*McDonald v. City of Chicago*
    561 U.S. 742 (2010) ....................................................................................8, 10

*New York State Rifle & Pistol Association, Inc. v. Bruen*
    __ U.S. __, 142 S.Ct. 2111 (2022) ..........................................................*passim*

*Nken v. Holder*
    556 U.S. 418 (2009) .........................................................................................14

ii

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ............................................................................... 5, 12, 13

**STATUTES**

Assembly Bill 1621 ........................................................................ 1, 2, 3, 4, 6, 14

California Penal Code
    § 29180 ................................................................................................... 10
    § 29185 ................................................................................................... 3, 4

**CONSTITUTIONAL PROVISIONS**

Second Amendment ................................................................................. *passim*

Fourteenth Amendment .................................................................................. 12

**OTHER AUTHORITIES**

Declaration of Zachary Schrag, *Miller v. Becerra*, No. 3:19-cv-1537-
    BEN-JLB (S.D. Cal. Aug. 29, 2022), ECF No. 129-1 ............................ 12

https://ghostgunner.net/ (last viewed September 23, 2022) .............................. 3

https://ghostgunner.net/product/ghost-gunner-3-deposit/ (last viewed
    September 23, 2022.) ................................................................................ 9

https://www.thomasnet.com/articles/custom-manufacturing-
    fabricating/understanding-cnc-milling/ (last viewed September 23,
    2022) ......................................................................................................... 3

iii

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

## INTRODUCTION

Plaintiffs are not entitled to extraordinary injunctive relief barring enforcement of the attorneys' fees shifting provision of Senate Bill (SB) 1327 or the provision of Assembly Bill (AB) 1621 prohibiting certain machinery—known as computer numerical control (CNC) milling machines—used to manufacture "ghost guns," unserialized and untraceable firearms typically self-assembled at home.

With respect to SB 1327, the parties have conferred since Plaintiffs filed their motion. The parties have agreed to enter into a written stipulation obviating any alleged need for an injunction. Declaration of Gabrielle Boutin (Boutin Decl.) at ¶¶ 2-3. Under that stipulation, in return for Plaintiffs' dismissal of all claims challenging the fee-shifting provision of SB 1327, Defendants will not seek attorneys' fees or costs from Plaintiffs or their attorneys pursuant to that provision in connection with this action. Boutin Decl. at ¶¶ 2-3 and Exh. A. The parties are currently preparing the stipulation and will file it as soon as practicable and before the hearing on this motion. *Id.* at ¶ 4. As a result of the stipulation and Plaintiffs' agreement to dismiss their SB 1327 claims, they are expected to withdraw their request for injunctive relief with respect to SB 1327.

This Court should deny Plaintiffs' motion with respect to their Second Amendment challenge to AB 1621's prohibition of certain CNC milling machines. The California Legislature passed AB 1621 to address a massive proliferation of ghost guns that has contributed to a surge in gun deaths, particularly among young people in vulnerable communities. A.B. 1621, § 1(a)(2)–(4).

Plaintiffs have not and cannot show that their challenge to AB 1621 is likely to succeed on the merits. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, __ U.S. __, 142 S.Ct. 2111 (2022), the Supreme Court set forth a new analytical framework for Second Amendment claims. A court must initially assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at 2126—in other words, whether the regulation at issue prevents any "People"

1

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

from "keep[ing]" or "bear[ing]" "Arms." Only if the Second Amendment's plain text applies must a court then determine whether the law is nevertheless "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2133.

Here, the *Bruen* analysis ends at the initial textual examination because the Second Amendment's plain text does not cover AB 1621's prohibition of CNC milling machines. Such devices are not "bear[able]" and are not "Arms"—they are 42-pound mechanical boxes that connect to laptop computers and operate to turn gun parts into operable firearms. Nor does AB 1621's prohibition of CNC milling machines impede Plaintiffs' ability to "keep" or "bear" any lawful arms. AB 1621 therefore does not implicate Plaintiffs' Second Amendment rights under *Bruen*. And if the Court were to determine that AB 1621 does implicate the text of the Second Amendment, the historical analysis that *Bruen* contemplates would require time for Defendants to develop the record to establish that AB 1621 is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2133.

Regardless, relief is not warranted because Plaintiffs have failed to establish the remaining requirements of injunctive relief; they cannot show irreparable harm absent an injunction or that the balance of equities and public interest weigh in their favor.

For these reasons, explained further below, the Court should deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

## BACKGROUND

**I.   ASSEMBLY BILL 1621**

On June 30, 2022, the Governor signed Assembly Bill 1621, amending several sections of the California Penal Code concerning the manufacture, sale, and possession of precursor gun parts known as ghost guns. A.B. 1621 at § 1, 2021-2022 Reg. Sess. (Cal. 2022). Among other things, AB 1621 prohibits any persons in the State of California, other than federally-licensed firearms manufacturers or

2

importers, from using, possessing, selling, or transferring a CNC milling machine that has a sole or primary purpose of manufacturing firearms. *Id.* at § 25; Cal. Pen. Code § 29185.  CNC milling machines can be used in a variety of contexts and are complex machines which employ computerized controls to rotate cutting and milling tools to progressively remove material from unfinished wood, metal, glass, or plastic to produce a customizable product.[2]  However, when sold in conjunction with precursor gun parts or for the primary purpose of manufacturing firearms, CNC milling machines sold by gun manufacturers allow individuals with "[n]o prior skill…" to "finish[] unserialized rifles and pistols in the comfort and privacy of home."[3]

In passing AB 1621, the Legislature recognized that the massive proliferation of unserialized firearms known as "ghost guns" and materials to complete them have led to an increase in gun deaths in California, particularly among young people in vulnerable communities. *Id.* at § 1(a)(2)-(4). Ghost guns have become "a leading source of crime guns, including firearms built by people such as minors who cannot legally possess or acquire firearms in our state, as well as individuals seeking to conceal their involvement in firearm trafficking and other crimes." *Id.* at § 1(a)(5). The manufacture and sale of unregulated and unserialized firearms has furthermore "caused enormous harm and suffering, hampered the ability of law enforcement to trace crime guns and investigate firearm trafficking and other crimes, and dangerously undermined the effectiveness of laws and protections critical to the health, safety, and well-being of Californians." *Id.* at § 1(a). AB 1621, including the CNC milling machine prohibition, was therefore enacted to ensure that "firearm precursor parts may only be sold if they are regulated under

---

[2] See, e.g., https://www.thomasnet.com/articles/custom-manufacturing-fabricating/understanding-cnc-milling/ (last viewed September 23, 2022).

[3] https://ghostgunner.net/ (last viewed September 23, 2022).

3

federal law to the same extent as completed frames and receivers . . . ." *Id.* at § 1(a)(9).

AB 1621 contains an urgency clause stating that it "shall go into immediate effect." *Id.* at § 41. Other than federally-licensed firearm manufacturers or importers, individuals who owned or possessed CNC milling machines with the sole or primary purpose of manufacturing firearms were given 90 days from the enactment of AB 1621 to legally sell, remove, transfer, or surrender their machines. Cal. Pen. Code § 29185(d)(3).

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this action in late 2020. ECF No. 1 (Complaint). The initial complaint challenged only California's Unsafe Handgun Act (UHA) and then, following the court's order on Defendants' motion to dismiss, only the UHA's provision requiring the California Department of Justice to remove three handgun models from its roster of handguns certified for sale whenever a new model is added. *Id.*; ECF No. 17 (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss).

On June 23, 2022, the Supreme Court issued its opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, __ U.S. __, 142 S.Ct. 2111 (2022), altering the legal landscape by establishing a new framework for analyzing Second Amendment claims. On July 19, 2022, the parties entered a stipulation, which the court adopted, to vacate the scheduling order and provide Plaintiffs until August 22 to file an amended complaint. ECF Nos. 45 (Joint Motion), 46 (Order). Plaintiffs filed their Second Amended Complaint (SAC) on August 22, 2022. ECF No. 49. The SAC substantially expanded the scope of this action by adding numerous claims, including ones challenging SB 1327 and AB 1621. *See id.*

On September 8, 2022, Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction, noticing the motion for hearing on October 7, 2022. ECF No. 53, 53-1. Plaintiffs provided no advance notice to

4

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

Defendants that they would be filing the motion. The motion is not accompanied by any declarations or any other type of admissible evidence. *See* ECF No. 53, 53-1.

## LEGAL STANDARDS

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Alvarez v. Larose*, 445 F. Supp. 3d 861, 865 (S.D. Cal. 2020) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government is a party, these last two factors," balance of the equities and public interest, "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Analysis of the first factor (i.e., likelihood of success on the merits) is a "threshold inquiry," and thus if a movant fails to establish that factor, the court "need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

## ARGUMENT

### I. BY STIPULATION, PLAINTIFFS WILL SHORTLY DISMISS THEIR SENATE BILL 1327 CLAIMS

Plaintiffs are expected to dismiss their claims related to SB 1327's fee-shifting provision and withdraw their related request for injunctive relief. Since Plaintiffs filed their motion, the parties have conferred. Boutin Decl. at ¶¶ 2-3 and Exh. A. They have agreed to enter into a written stipulation providing that, in return for Plaintiffs' dismissal of all claims challenging SB 1327, Defendants agree to not seek attorneys' fees or costs from Plaintiffs or their attorneys pursuant to SB 1327's fee-shifting provision in connection with this action. *Id.* at ¶¶ 2-3 and Exh. A. The parties are currently preparing a written stipulation to finalize the details of this

5

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

agreement and will file it as soon as practicable and before the hearing on the instant motion. *Id.* at ¶ 4.

As a result, Plaintiffs may pursue this action without risk of attorneys' fees liability under SB 1327.

## II. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF RELATED TO ASSEMBLY BILL 1621'S PROHIBITION OF CNC MILLING MACHINES

### A. Plaintiffs Have Failed to Show They Are Likely to Succeed on the Merits of Their Second Amendment Challenge

Plaintiffs are not likely to prevail on the merits because no Second Amendment rights are implicated by AB 1621's regulation of CNC milling machines.

#### 1. The Supreme Court's Decision in *Bruen*

In *Bruen*, as explained above, the Supreme Court announced a new framework for analyzing Second Amendment claims. In lieu of the "two-step test" that this Court and most other federal courts of appeals had adopted for resolving those claims, *Bruen* held that courts must apply a standard "rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. The Court also provided important guidance about how that test should be applied. *See id.* at 2131-34. In rejecting the two-step framework, the Supreme Court directed courts to scrutinize Second Amendment claims by applying a "methodology centered on constitutional text and history." *Id.* at 2128-29. Under the new approach, courts must initially assess whether the "Second Amendment's plain text covers" the regulated conduct. *Id.* at 2129. If the answer is no, there is no violation of the Second Amendment. If the answer is yes, the government can still justify its regulation—and overcome a constitutional challenge—by showing that the challenged law is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

In some cases, *Bruen* provides that this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal

6

problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132. Governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." *Id.* at 2333 (citation and emphasis omitted). And while the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it did identify "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

While *Bruen* announced a new rubric for analyzing Second Amendment claims, it also made clear that governments may continue to adopt reasonable gun safety regulations. The Court recognized that the Second Amendment is not a "regulatory straightjacket." *Id.* at 2133. Nor is it a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes." *Id.* at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Id.* at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636). And he emphasized that that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws "forbidding the carrying of firearms in sensitive places," laws "imposing conditions and qualifications on the commercial sale of arms," and laws prohibiting the keeping and carrying of

"dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[4]

### 2. The CNC Milling Machine Prohibition Does Not Regulate Conduct Protected by the Plain Text of the Second Amendment

Under the new approach laid out in *Bruen*, courts must first assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at 2126—in other words, whether the regulation at issue prevents any "People" from "keep[ing]" or "bear[ing]" "Arms." The "People" who have the right to keep and bear arms are "law-abiding, adult citizens." *See Bruen*, 142 S. Ct. at 2134. Defendants have no reason to dispute that an individual who seeks to own a CNC milling machine with the sole or primary purpose of manufacturing firearms would be part of "the People." But Plaintiffs have not and cannot satisfy their burden of showing that AB 1621 prevents anyone from keeping or bearing arms of any sort.

Indeed, AB 1621's CNC milling machine prohibition imposes *no* burden on the right to keep and bear arms because the plain text of the Second Amendment does not address the ownership of CNC milling machines at all. Stated differently, the Second Amendment's plain text does not "cover[]" the possession, sale, or manufacture of machines that are neither "bearable," nor "arms" within the meaning of the Second Amendment. *See Bruen*, 142 S. Ct. at 2126; *see also id.* at 2132 ("...the Second Amendment extends, prima facie, to all bearable arms..."). Plaintiffs have not presented any evidence that suggests that a CNC machine is bearable or is an arm. On the contrary, it cannot reasonably be disputed that the product Plaintiffs do not want to relinquish is a 42-pound mechanical box that

---

[4] *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *accord McDonald*, 561 U.S. at 785 (the Second Amendment "by no means eliminates" state and local governments' "ability to devise solutions to social problems that suit local needs and values").

8

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

connects to a laptop computer and operates by cutting and shaping gun parts so that they can be assembled into operable firearms.[5] It is plainly not intended to be bearable, nor could someone "wear, bear, or carry [the CNC milling machine] . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Bruen*, 142. S. Ct. at 2134 (citing *Heller*, 554 U.S. at 584). Similarly, the CNC milling machine is not an "Arm" within the meaning of the Second Amendment, because the machine itself is not designed be used in an offensive or defensive action in case of conflict with another person. *Id.* Nor does the prohibition on possessing the "make it impossible to use firearms for their core purpose." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (challenge to city's ban on sales of certain ammunition); *cf. Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (challenge to city ordinance mandating firing range training for gun ownership while prohibiting firing ranges within the city).

Plaintiffs nevertheless argue that the CNC milling machine prohibition implicates the right of people to manufacture their own arms. Mot. at 21-22. But Plaintiffs produce no authority that the right to manufacture one's own arms is encompassed by the plain text of the Second Amendment, which says nothing about "self-manufacture or assembly" of one's own firearms. *Id.*; *see also* U.S. Const. amend. II. There is simply no textual support or authority for Plaintiffs' position that the plain meaning of the right to "keep and bear arms" under the Second Amendment also includes the right to own any machine or machine part that could conceivably be used to manufacture a firearm. Even if there were such a constitutionally protected right—and there is not—AB 1621 does not prohibit the

---

[5] https://ghostgunner.net/product/ghost-gunner-3-deposit/ (last viewed September 23, 2022.)

self-assembly of firearms. Individuals may still lawfully purchase and assemble *serialized* gun parts. *See, e.g.*, Cal. Pen. Code § 29180.

The conclusion that Plaintiffs' challenge fails as a textual matter is consistent with both the Court's Second Amendment precedents and the way the Court analyzes other constitutional rights. *Heller* and *McDonald* invalidated unusually "severe" restrictions that "totally ban[ned] handgun possession in the home." *Heller*, 554 U.S. at 628-629; *see also McDonald v. City of Chicago*, 561 U.S. 742, 750-751 (2010). Those laws "amount[ed] to a destruction of the Second Amendment right" to "keep" firearms for "the core lawful purpose of self-defense" by "law-abiding, responsible citizens." *Jackson*, 746 F.3d at 961 (quoting *Heller*, 554 U.S. at 629, 635). Similarly, the "proper cause" requirement challenged in *Bruen* made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," 142 S. Ct. at 2156 (Alito, J., concurring), and therefore effectively "nullif[ied] half of the Second Amendment's operative protections"— *i.e.*, the right to "bear" arms, *id.* at 2135. Unlike the law challenged in *Bruen*, which effectively operated as a prior restraint on the ability of most law-abiding citizens to "bear" "arms" outside the home, AB 1621 does nothing of the sort. Rather, the challenged law concerns only the possession or sale of machines that can be used to self-manufacture certain unserialized arms. And like other regulations which have been upheld, AB 1621 does not prevent someone from owning, bearing, or even purchasing serialized precursor gun parts for home manufacture. *See Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (a $19 fee on firearms transfers does not "ha[ve] any impact on the plaintiffs' actual ability to obtain and possess a firearm"); *see also Jones v. Bonta*, 34 F.4th 704, 724 (9th Cir. 2022), *vacated and remanded*, 2022 WL 4090407 (9th Cir. Sept. 7, 2022) (requiring that young adults ages 18-20 secure a hunting license before they can acquire some firearms from dealers "does not impose a significant burden on the Second Amendment right to keep and bear arms").

AB 1621 does not prevent law-abiding citizens from keeping or bearing arms of any sort. Accordingly, under *Bruen*, the burden does not shift to the government to support the regulations with a historical analysis and Plaintiffs' Second Amendment challenge fails at the threshold stage of the inquiry.

### 3. Plaintiffs Have Not Demonstrated that AB 1621 Is Not Consistent with Historical Tradition

Even if the Court were to conclude that the text of the Second Amendment applies to the ownership of CNC milling machines with the sole or primary purpose of manufacturing firearms, Defendants can still defend AB 1621 by showing that it is "consistent with the Nation's historical tradition of firearm regulation"—specifically that the law imposes a "comparable burden on the right of armed self-defense" to the relevant historical analogues and is "comparably justified." *Bruen*, 142 S. Ct. at 2133. But as *Bruen* itself acknowledged, that historical inquiry can be complex and difficult. *Id.* at 2134. If this Court determines that historical tradition is relevant in this case, Defendants should be given the opportunity to compile historical evidence in a way that is consistent with the Supreme Court's guidance in *Bruen*. For their part, Plaintiffs' have presented no admissible evidence on the historical question.

If the Court were inclined to address the historical issue, it should not do so based on a Plaintiffs' very limited submission prepared in the context of expedited briefing. For example, on the historical question Defendants would need to show that AB 1621 is "relevantly similar" to the pertinent historical analogue by demonstrating that it imposes a "comparable burden on the right of armed self-defense" to that historical predecessor and is "comparably justified." *Bruen*, 142 S. Ct. at 2133. That analysis requires the "more nuanced approach" required for laws targeting "unprecedented societal concerns or dramatic technological changes." *Id.* at 2132. Indeed, as *Bruen* recognizes, "'applying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins.'" *Id.* at

11

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

2134 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).  In addition, *Bruen* left open other questions, including "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791.  *Id.* at 2138; *see also id.* at 2162-2163 (Barrett, J., concurring) (highlighting "two methodological points that the Court does not resolve," including the "manner and circumstances in which post-ratification practice may bear on the original meaning of the Constitution").

Compiling such a historical record is no easy task.  It must be undertaken by trained historians through painstaking efforts just to identify the sources available to them in order to answer a particular historical inquiry.  *See* Declaration of Zachary Schrag, *Miller v. Becerra*, No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022), ECF No. 129-1 at 2-5.  Even identifying which sources are available does not necessarily mean that those sources are available to be accessed, read, and analyzed.  *Id.* at 5-10.  Once those sources are accessed, the process of putting together findings is also incredibly time consuming, comprising potentially hundreds or even thousands of hours depending on the inquiry.  *Id.* at 10-12.

Defendants have had two weeks to prepare this opposition brief.  Requiring Defendants to provide the kind of historical record expected under *Bruen* in the context of expedited briefing is an unreasonable burden.  Accordingly, if the Court were to conclude that Plaintiffs' claims implicate the text of the Second Amendment (or defer ruling on that question)—and conclude that Plaintiffs have satisfied the other *Winter* factors—the Court should provide the parties with additional time to conduct the research and briefing necessary to perform the historical analysis called for by *Bruen*, before the Court then issues its decision on this motion.

12

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

### B. Plaintiffs Have Not Established They Would Be Irreparably Harmed Absent Injunctive Relief

Plaintiffs have also failed to meet their burden to show that they are likely to suffer irreparable harm absent an injunction. *See Winter*, 555 U.S. at 22. Plaintiffs assert that, absent an injunction, AB 1621's prohibition on CNC milling machines will irreparably harm Plaintiffs by violating their Second Amendment rights. *See* Mot. at 23. However, as explained above, AB 1621 does not violate Plaintiffs' Second Amendment rights, so no such harm will occur.

Nor have Plaintiffs identified any harm independent of the alleged constitutional violation. And, the harm from having to relinquish a CNC milling machine is not irreparable, because it is possible to obtain a replacement machine if the prohibition is ultimately deemed unconstitutional.

Underscoring Plaintiffs' failure to establish any actual harm is the lack of any declaration—from an attorney, plaintiff, or fact or expert witness—in support of the instant motion.[6] This failure is not justified by urgency. AB 1621 was enacted and took effect on June 30, 2022, nearly three months ago. Plaintiffs therefore had more than enough time to marshal declarations. They could have, at minimum, submitted their own declarations testifying to how they would be harmed by the challenged laws.

Plaintiffs therefore have failed to show they are likely to suffer any irreparable harm.

### C. The Balance of the Equities and Public Interest Weigh Strongly Against Injunctive Relief

Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. The balance of

---

[6] Plaintiff's brief does cite a handful of articles that were not provided to the Court or Defendants and most of which are not readily accessible. *See* Mot. at 21, 22. Not only are these articles hearsay, but Plaintiffs have provided no evidence, such as expert testimony, to assist the court's determination of how much weight they should be given.

13

hardships and the public interest factors merge when the government is a party.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, those factors weigh strongly against injunctive relief.

As explained above, Plaintiffs will not be harmed by the Court's denial of injunctive relief because AB 1621 does not violate their Second Amendment rights. Moreover, the practical burden of the challenged provision on Plaintiffs' ability to keep, obtain and use firearms for self-defense is small.  AB 1621 does not prevent anyone from purchasing serialized gun parts and assembling those parts at home. The law also does not prevent anyone from purchasing a gun rather than assembling one.  In other words, Plaintiffs will still have plenty of avenues, other than CNC milling machines, to obtain firearms for self-defense while this litigation proceeds.

On the other hand, any injunction against the State's enforcement of AB 1621 would gravely contravene the public interest.  AB 1621's prohibition on CNC milling machines is a key tool for addressing the recent "massive increase[] in the number of unserialized self-assembled ghost guns" in California that has contributed to "a surge in gun deaths."  A.B. 1621 § 1(a)(2), (4).  Unserialized ghost guns have "hampered the ability of law enforcement to trace crime guns and investigate firearm trafficking and other crimes." *Id.* § 1(a).  An injunction preventing California from restricting the ownership, sale, and possession of CNC milling machines would undermine the State's vital public safety effort to crack down on the proliferation of unserialized ghost guns.  Indeed, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quotation and citation omitted).  In short, the equities and public interest strongly disfavor an injunction.

## CONCLUSION

For the reasons above, Defendants respectfully ask the Court to deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

14

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)

Dated: September 23, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/s/ Gabrielle D. Boutin*
GABRIELLE D. BOUTIN
Deputy Attorney General
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Blake Graham, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*

15

Defendants' Opposition to Mtn. For TRO and Prelim. Injunction (3:20-cv-02190-DMS-DEB)