Raymond M. DiGuiseppe
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com

Michael P. Sousa
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
P: 858-453-6122
E: msousa@msousalaw.com

William A. Sack
FIREARMS POLICY COALITION
426 Campbell Avenue
Havertown, PA 19083
P: 916-596-3492
E: Wsack@fpclaw.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lana Rae Renna; Danielle Jaymes; Laura Schwartz; Michael Schwartz; John Klier; Justin Smith; John Phillips; Cheryl Prince; Darin Prince; Ryan Peterson; PWGG, L.P.; North County Shooting Center, Inc.; Gunfighter Tactical, LLC; Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens Committee for the Right to Keep and Bear Arms; and Second Amendment Foundation,<br>                    Plaintiffs,<br>vs.<br><br>Robert Bonta, Attorney General of California; and Blake Graham,[1] Director of the California Department of Justice Bureau of Firearms,<br>                    Defendants. | Case No.: 20-cv-2190-DMS-DEB<br><br>**THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

---

[1]   Blake Graham is substituted for Luis Lopez. *See* Fed. R. Civ. P. 25(d).

Plaintiffs Lana Rae Renna, Danielle Jaymes, Laura Schwartz, Michael Schwartz, John Klier, Justin Smith, John Phillips, Cheryl Prince, Darin Prince, and Ryan Peterson (collectively the "Individual Plaintiffs"), PWGG, L.P., North County Shooting Center, Inc., and Gunfighter Tactical, LLC, (collectively, the "Retailer Plaintiffs"), Firearms Policy Coalition, Inc., San Diego County Gun Owners PAC, Citizens Committee for the Right to Keep and Bear Arms, and Second Amendment Foundation (collectively the "Institutional Plaintiffs") (altogether collectively "Plaintiffs"), by and through counsel of record, bring this complaint for injunctive and declaratory relief against Individual Defendants California Attorney General Robert Bonta and California Department of Justice Bureau of Firearms Director Blake Graham (collectively "Defendants"), and allege as follows:

## INTRODUCTION

1.     The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. Plaintiffs, and all similarly situated members of Institutional Plaintiffs, who are all eligible to exercise their Second Amendment rights, wish to keep and bear constitutionally protected arms for self-defense and other lawful purposes.

2.     But because of Defendants' enforcement of the laws, regulations, policies, practices, and customs underlying the State of California's ban on the purchase (Cal. Penal Code §§ 31900, *et seq.* and 32000, *et seq.*)[2] of common and constitutionally protected handguns that the State deems presumptively "unsafe" and thus illegal for commercial sale under its "roster" of "Handguns Certified for Sale" ("Handgun Roster"), Plaintiffs, and all similarly situated members of Institutional Plaintiffs, cannot purchase new constitutionally protected arms without suffering criminal liability (the "Handgun Ban"), in violation of the Second and Fourteenth

_____

[2] All Penal Code references are to the California Penal Code except where otherwise indicated.

Amendments to the United States Constitution.

3.     In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, the United States Supreme Court expressly rejected all interest balancing and the Ninth Circuit's prior "two-step" approach in the context of Second Amendment claims.

4.     Indeed, "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S. Ct. at 2127. Ultimately, "*Heller* … demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

5.     *Bruen* did not create a new test but instead applied the very test the Court established in *Heller* in 2008. "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.*, at 2131.

6.     "*Heller*'s methodology centered on constitutional text and history. Whether it came to defining the character of the right (individual or militia dependent), suggesting the outer limits of the right, or assessing the constitutionality of a particular regulation, *Heller* relied on text and history. It did not invoke any means-end test such as strict or intermediate scrutiny." *Id.* at 2128-29.

7.     The plain text of the Second Amendment covers the conduct Plaintiffs, and all similarly situated members of Institutional Plaintiffs, wish to engage in ("keep and bear arms") and the arms they wish to keep and bear. *Id.* at 2132 ("the Second Amendment extends, prima facie, to all instruments that constitute bearable arms").

8.     Since the conduct is covered by the Second Amendment's plain text, the government must justify its regulations as consistent with this Nation's tradition of firearm regulation.

9.     "When the Second Amendment's plain text covers an individual's

1  conduct, the Constitution presumptively protects that conduct. To justify its

2  regulation, the government . . . must demonstrate that the regulation is consistent

3  with this Nation's tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

4    10.  *Heller* has already established the relevant contours of the tradition:

5  Bearable arms that are presumptively protected by the Second Amendment cannot

6  be banned unless they are both dangerous *and* unusual. *District of Columbia v.*

7  *Heller*, 554 U.S. 570, 627 (2008).

8    11.  And the Second Amendment's "reference to 'arms' does not apply

9  'only [to] those arms in existence in the 18th century.' " *Bruen*, 142 S. Ct. at 2132

10  (quoting *Heller*, 554 U.S. at 582). "Just as the First Amendment protects modern

11  forms of communications, and the Fourth Amendment applies to modern forms of

12  search, the Second Amendment extends, prima facie, to all instruments that

13  constitute bearable arms, even those that were not in existence at the time of the

14  founding." *Id*. (citations omitted).

15    12.  "Semiautomatic weapons," such as those proscribed under the Handgun

16  Ban, "traditionally have been widely accepted as lawful possessions." *Staples v.*

17  *United States*, 511 U.S. 600, 612 (1994)).

18    13.  And "[w]hatever the likelihood that handguns were considered

19  dangerous and unusual during the colonial period, they are indisputably in common

20  use for self-defense today. They are, in fact, the quintessential self-defense weapon."

21  *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 629) (cleaned up).

22    14.  "Thus, even though the Second Amendment's definition of 'arms' is

23  fixed according to its historical understanding, that general definition covers modern

24  instruments that facilitate armed self-defense." *Id*. (citing *Caetano v. Massachusetts*,

25  577 U.S. 411, 411-412 (2016) (*per curiam*), concerning stun guns).

26    15.  In *Bruen*, the Supreme Court made clear that the Ninth Circuit's former

27  two-step approach and interest-balancing applied in *Peña v. Lindley*, 898 F.3d 969

28  (9th Cir. 2018), which previously upheld a prior version of some of the laws

1  challenged herein, are inapplicable and improper in Second Amendment cases.

2  16.   In this case, the analysis is straightforward: Plaintiffs, and all similarly

3  situated members of Institutional Plaintiffs, are not prohibited from exercising their

4  right to keep and bear arms. The Second Amendment's text covers the conduct

5  Plaintiffs, and all similarly situated members of Institutional Plaintiffs, wish to

6  engage in and the arms they wish to acquire and possess. The arms that Plaintiffs,

7  and all similarly situated members of Institutional Plaintiffs, wish to acquire but that

8  the State seeks to ban are not dangerous and unusual today and are in fact in common

9  use for lawful purposes. There is no analogous history supportive of the State's ban.

10  Under the Supreme Court's precedents, the constitutionally relevant history, and the

11  proper analysis, Plaintiffs, and all similarly situated members of Institutional

12  Plaintiffs, must prevail.

### PARTIES

### Individual Plaintiffs

*Plaintiff Renna*

16  17.   Plaintiff Lana Rae Renna is a natural person and a citizen of the State

17  of California, residing in San Diego County, California. Plaintiff Renna is not

18  disqualified from exercising Second Amendment rights nor prohibited under state or

19  federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff

20  Renna is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

21  18.   Plaintiff Renna has a damaged tendon in her right thumb that impacts

22  her ability to apply physical force. The Smith & Wesson M&P® 380 SHIELD™

23  EZ® is specifically designed for those with limited hand strength. On the website

24  for the Smith & Wesson M&P® 380 SHIELD™ EZ®, online at https://www.smith-

25  wesson.com/firearms/mp-380-shield-ez-0, it states that the firearm is "Built for

26  personal protection and every-day carry, the M&P380 Shield EZ is chambered in

27  380 Auto and is designed to be easy to use, featuring an easy-to-rack slide, easy-to-

28  load magazine, and easy-to-clean design. Built for personal and home protection, the

innovative M&P380 Shield EZ pistol is the latest addition to the M&P M2.0 family and provides an easy-to-use protection option for both first-time shooters and experienced handgunners alike." The Smith & Wesson M&P® 380 SHIELD™ EZ® that Plaintiff Renna wishes to purchase is a constitutionally protected handgun that is in common use for self-defense and other lawful purposes and widely sold and possessed outside of California.

19.  But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiff Renna would, for self-defense and other lawful purposes, purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, including but not limited to a Smith & Wesson M&P® 380 SHIELD™ EZ®.

***Plaintiff Jaymes***

20.  Plaintiff Danielle Jaymes is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff Jaymes is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff Jaymes possesses a valid COE issued by the Defendants' Department of Justice Bureau of Firearms. Plaintiff Jaymes is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

21.  But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiff Jaymes would, for self-defense and other lawful purposes, purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, including but not limited to a Sig 365, G43X, Glock 19 Gen5, Sig P320, and/or Nighthawk Lady Hawk, which is a constitutionally protected handgun in common use for self-defense and lawful purposes.

***Plaintiff L. Schwartz***

22.  Plaintiff Laura Schwartz ("L. Schwartz") is a natural person and a

citizen of the State of California, residing in San Diego County, California. Plaintiff L. Schwartz is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff L. Schwartz holds an active license to carry a concealed weapon ("CCW") issued by her county sheriff, after proving "good cause" and "good moral character" to her licensing authority, successfully completing a course of training on the law and firearms proficiency under California Penal Code section 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back"). Plaintiff L. Schwartz is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

23.     But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiff L. Schwartz would, for self-defense and other lawful purposes, purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, including but not limited to a Glock 19 Gen5 and/or Springfield Armory Hellcat, which are constitutionally protected handguns in common use for self-defense and lawful purposes.

***Plaintiff M. Schwartz***

24.     Plaintiff Michael Schwartz ("M. Schwartz") is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff M. Schwartz is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff M. Schwartz holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency under California Penal Code section 26165 and passing an extensive Live Scan-based background check and

placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back"). Plaintiff M. Schwartz is the Executive Director of Plaintiff San Diego County Gun Owners PAC. Plaintiff M. Schwartz is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

25.    But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiff M. Schwartz would, for self-defense and other lawful purposes, purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, including but not limited to a Glock 19 Gen5 and/or Springfield Armory Hellcat, which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

***Plaintiff Klier***

26.    Plaintiff John Klier is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff Klier is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff Klier is a veteran of the Navy, having been disabled and honorably discharged after serving in Iraq as a "Seabee" member of the United States Naval Construction Battalions. Plaintiff Klier is a trained firearms instructor who owns and operates Active Shooter Defense School ("ASDS"), which "employs the best instructors in the industry," with "former [Navy] SEALs, Rangers, engineers, SWAT officers, combatives instructors and current top performing competitive shooters on staff to ensure students master each technique being taught." ASDS's "mission is to provide the most up to date tactical weapons training available to the public, law enforcement and military."[3] Plaintiff Klier is a member and supporter of Plaintiffs FPC, SDCGO,

---

[3] *See* "Meet our Team" on ASDS's website, online at https://asdschool.com/asds-instructors.

1   CCRKBA, and SAF.

2      27.   But for Handgun Ban and Defendants' active enforcement thereof,

3   Plaintiff Klier would, for self-defense and other lawful purposes, purchase new from

4   a licensed retailer a constitutionally protected handgun not currently on or eligible

5   under Handgun Ban to be added to Defendants' Handgun Roster, including but not

6   limited to a Glock 19 Gen5, which is a constitutionally protected handgun in

7   common use for self-defense and other lawful purposes.

8   ***Plaintiff Smith***

9      28.   Plaintiff Justin Smith is a natural person and a citizen of the State of

10  California, residing in San Diego County, California. Plaintiff Justin Smith is not

11  disqualified from exercising Second Amendment rights nor prohibited under state or

12  federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff

13  Smith is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

14     29.   But for the Handgun Ban and Defendants' active enforcement thereof,

15  Plaintiff Smith would, for self-defense and other lawful purposes, purchase new

16  from a licensed retailer a constitutionally protected handgun not currently on or

17  eligible under the Handgun Ban to be added to Defendants' Handgun Roster,

18  including but not limited to a CZ P10, Walther Q5 SF, and/or Glock 19 Gen4 and/or

19  Gen5, which are constitutionally protected handguns in common use for self-defense

20  and other lawful purposes.

21  ***Plaintiff Phillips***

22     30.   Plaintiff John Phillips is a natural person and a citizen of the State of

23  California, residing in San Diego County, California. Plaintiff Phillips is not

24  disqualified from exercising Second Amendment rights nor prohibited under state or

25  federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff

26  Phillips possesses a current COE issued by the Defendants' Department of Justice

27  Bureau of Firearms. Plaintiff Phillips is the President of Plaintiff PWG, a proprietor

28  of the business, and the individual licensee associated with the dealership and range

facility, including by and through Defendants and their Bureau of Firearms. Plaintiff Phillips holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency under Penal Code section 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back"). Plaintiff Phillips is a trained firearms instructor. Plaintiff Phillips is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

31.     But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiff Phillips would, for self-defense and other lawful purposes, purchase new from a licensed retailer a constitutionally protected handgun not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, including but not limited to a Sig Sauer P365, Sig Sauer P320 M17, Glock 17 Gen5 MOS, Fabrique National Herstal 509, and/or Fabrique National Herstal  FNX-9, which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

**Plaintiff C. Prince**

32.     Plaintiff Cheryl Prince ("C. Prince") is a natural person and a citizen of the State of California, residing in San Diego County, California. Plaintiff C. Prince is not disqualified from exercising Second Amendment rights nor prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff C. Prince holds an active license to carry a concealed weapon ("CCW") issued by her county sheriff, after proving "good cause" and "good moral character" to her licensing authority, successfully completing a course of training on the law and firearms proficiency under Penal Code section 26165, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").

1  Plaintiff C. Prince is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA,

2  and SAF.

3      33.    But for the Handgun Ban and Defendants' active enforcement thereof,

4  Plaintiff C. Prince would, for self-defense and other lawful purposes, purchase new

5  from a licensed retailer a constitutionally protected handgun not currently on or

6  eligible under the Handgun Ban to be added to Defendants' Handgun Roster,

7  including but not limited to a Sig Sauer P365, which is a constitutionally protected

8  handgun in common use for self-defense and other lawful purposes.

9  ***Plaintiff D. Prince***

10     34.    Plaintiff Darin Prince ("D. Prince") is a natural person and a citizen of

11 the State of California, residing in San Diego County, California. Plaintiff D. Prince

12 is not disqualified from exercising Second Amendment rights nor prohibited under

13 state or federal law from possessing, receiving, owning, or purchasing a firearm.

14 Plaintiff D. Prince possesses a current COE issued by the Defendants' Department

15 of Justice Bureau of Firearms. Plaintiff D. Prince is an owner and manager of

16 Plaintiff NCSC, the proprietor of the business, and the individual licensee associated

17 with the dealership, including by and through the Defendants and their Bureau of

18 Firearms. Plaintiff D. Prince holds an active license to carry a CCW issued by his

19 county sheriff under Penal Code section 26150*, et seq*., after proving "good cause"

20 and "good moral character" to that licensing authority, successfully completing a

21 course of training on the law and firearms proficiency under section 26165, passing

22 an extensive Live Scan-based Department of Justice background check, and

23 placement into the "Rap Back" system for monitoring law enforcement contact,

24 arrests, and criminal convictions. Plaintiff D. Prince is a member of Plaintiffs FPC,

25 SDCGO, CCRKBA, and SAF.

26     35.    But for the Handgun Ban and Defendants' active enforcement thereof,

27 Plaintiff D. Prince would, for self-defense and other lawful purposes, purchase new

28 from a licensed retailer a constitutionally protected handgun not currently on or

1    eligible under the Handgun Ban to be added to Defendants' Handgun Roster,

2    including but not limited to a Sig Sauer P320 AXG Scorpion, which is a

3    constitutionally protected handgun in common use for self-defense and other lawful

4    purposes.

5    ***Plaintiff Peterson***

6        36.    Plaintiff Ryan Peterson is a natural person and a citizen of the State of

7    California, residing in San Diego County, California. Plaintiff Peterson is not

8    disqualified from exercising Second Amendment rights nor prohibited under state or

9    federal law from possessing, receiving, owning, or purchasing a firearm. Plaintiff

10   Peterson possesses a current COE issued by the Defendants' Department of Justice

11   Bureau of Firearms. Plaintiff Peterson is the proprietor of and an individual licensee

12   associated with Plaintiff Gunfighter Tactical. Plaintiff Peterson is a DOJ Certified

13   Instructor. Plaintiff Peterson is a member and supporter of Plaintiffs FPC, SDCGO,

14   CCRKBA, and SAF.

15       37.    Ironically, Plaintiff Peterson, who owns and operates a gun store

16   (Plaintiff Gunfighter Tactical), is highly trained in the safe handling of firearms, is a

17   DOJ Certified Instructor, sells handguns not on the Defendants' Roster to those who

18   can lawfully purchase them (which excludes Individual Plaintiffs), and keeps for

19   lawful purposes including self-defense a Fabrique Nationale 509 Tactical handgun

20   while physically inside Gunfighter Tactical. However, he cannot lawfully transfer

21   that same firearm to himself—or to any other law-abiding citizen not exempt from

22   the Handgun Ban —even for self-defense in the home.

23       38.    But for the Handgun Ban and Defendants' active enforcement thereof,

24   Plaintiff Peterson would, for self-defense and other lawful purposes, purchase new

25   from a licensed retailer a constitutionally protected handgun not currently on or

26   eligible under the Handgun Ban to be added to Defendants' Handgun Roster,

27   including but not limited to a Fabrique National Herstal 509 Tactical, Sig Sauer P220

28   Legion (10mm), Staccato 2011, Glock 19 Gen5, Glock 17 Gen5 MOS, and Wilson

Combat Elite CQB 1911 (9mm), which are constitutionally protected handguns in common use for self-defense and other lawful purposes.

**Retailer Plaintiffs**

*Plaintiff PWG*

39.    Plaintiff PWGG, L.P. ("PWG"), a California limited partnership doing business as "Poway Weapons & Gear" and "PWG Range," is a licensed firearms retailer, shooting range, and training facility in the City of Poway, within San Diego County, California. Plaintiff PWG is a member and supporter of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

40.    Plaintiffs Phillips and PWG are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

41.    Many customers and prospective customers of Plaintiffs Phillips and PWG are interested in, have, and continue to seek to purchase for self-defense and other lawful purposes constitutionally protected handguns not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster.

42.    But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiffs Phillips and PWG would make available for sale to their adult customers all of the constitutionally protected new handguns on the market that are available outside of California but not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, and sell and transfer them to their adult customers who are not disqualified from exercising Second Amendment rights.

*Plaintiff NCSC*

43.    Plaintiff North County Shooting Center, Inc. ("NCSC"), a California corporation, is a licensed firearms retailer, shooting range, and training facility in the City of San Marcos, within San Diego County, California. Plaintiff NCSC is a federally and state-licensed firearms retailer in San Marcos, California. Plaintiff

NCSC is a member of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

44.     Plaintiffs D. Prince and NCSC are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

45.     Many customers and prospective customers of Plaintiffs D. Prince and NCSC are interested in, have, and continue to seek to purchase for self-defense and other lawful purposes constitutionally protected handguns not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster.

46.     But for the Handgun Ban and Defendants' active enforcement thereof, Plaintiffs D. Prince and NCSC would make available for sale to their adult customers all of the constitutionally protected new handguns on the market that are available outside of California but not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, and sell and transfer them to their adult customers who are not disqualified from exercising Second Amendment rights.

***Plaintiff Gunfighter Tactical***

47.     Plaintiff Gunfighter Tactical, LLC ("Gunfighter Tactical"), a California limited liability corporation doing business as "Gunfighter Tactical," is a licensed firearms retailer in the City of San Diego within San Diego County, California. Plaintiff Gunfighter Tactical is a member of Plaintiffs FPC, SDCGO, CCRKBA, and SAF.

48.     Plaintiffs Peterson and Gunfighter Tactical are a firearms dealer in Defendants' Department of Justice Centralized List of Firearms Dealers, and are federally licensed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Federal Firearms Licensee ("FFL").

49.     Many customers and prospective customers of Plaintiffs Peterson and Gunfighter Tactical are interested in, have, and continue to seek to purchase for self-defense and other lawful purposes constitutionally protected handguns not currently

1   on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster.

2        50.    But for the Handgun Ban and Defendants' active enforcement thereof,

3   Plaintiffs Peterson and Gunfighter Tactical would make available for sale to their

4   adult customers all of the constitutionally protected new handguns on the market that

5   are available outside of California but not currently on or eligible under the Handgun

6   Ban to be added to Defendants' Handgun Roster, and sell and transfer them to their

7   adult customers who are not disqualified from exercising Second Amendment rights.

8   **Institutional Plaintiffs**

9   *Plaintiff FPC*

10        51.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit

11   organization incorporated under the laws of Delaware with a place of business in

12   Clark County, Nevada. The purposes of FPC include defending and promoting the

13   People's rights, especially First and Second Amendment rights, advancing

14   individual liberty, and restoring freedom. FPC serves its members and the public

15   through legislative advocacy, grassroots advocacy, litigation and legal efforts,

16   research, education, outreach, and other programs. FPC has members in the State of

17   California, including Individual Plaintiffs who desire to purchase new

18   constitutionally protected arms for self-defense or other lawful purposes which are

19   not currently on or eligible under the Handgun Ban to be added to Defendants'

20   Handgun Roster, and Retailer Plaintiffs who desire to sell the same to their eligible

21   law-abiding customers. These members would each undertake the desired and

22   protected activity but for the criminal liability that they face under the laws,

23   regulations, policies, practices, and customs being challenged in this action. The

24   interests that FPC seeks to protect in this lawsuit are germane to the organization's

25   purposes.

26   *Plaintiff SDCGO*

27        52.    Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a local

28   political organization whose purpose is to protect and advance the Second

Amendment rights of residents of San Diego County, California, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. SDCGO's members include Individual Plaintiffs who desire to purchase new constitutionally protected arms for self-defense or other lawful purposes which are not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster, and Retailer Plaintiffs who desire to sell the same to their eligible law-abiding customers. These members would each undertake the desired and protected activity but for the criminal liability that they face under the laws, regulations, policies, practices, and customs being challenged in this action. The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes.

***Plaintiff CCRKBA***

53.     Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("CCRKBA") is a nonprofit organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. CCRKBA is dedicated to promoting the benefits of the right to bear arms. CCRKBA has members and supporters nationwide, including thousands of members in California and in the County of San Diego, California. CCRKBA's members include Individual Plaintiffs who desire to purchase new constitutionally protected arms for self-defense or other lawful purposes which are not currently on or eligible under the Handgun Ban to be added to Defendants' Handgun Roster and Retailer Plaintiffs who desire to sell the same to their eligible law-abiding customers. These members would each undertake the desired and protected activity but for the criminal liability that they face under the laws, regulations, policies, practices, and customs being challenged in this action. The interests that CCRKBA seeks to protect in this lawsuit are germane to the

1   organization's purposes.

2   *Plaintiff SAF*

3   54.    Plaintiff Second Amendment Foundation ("SAF") is a nonprofit

4   educational foundation incorporated under the laws of Washington with its principal

5   place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness

6   of the Second Amendment through education, research, publishing, and legal action

7   programs focused on the Constitutional right to possess firearms, and the

8   consequences of gun control. SAF has over 650,000 members and supporters

9   nationwide, including thousands of members in California and in the County of San

10  Diego, California. SAF's members include Individual Plaintiffs who desire to

11  purchase new constitutionally protected arms for self-defense or other lawful

12  purposes which are not currently on or eligible under the Handgun Ban to be added

13  to Defendants' Handgun Roster, and Retailer Plaintiffs who desire to sell the same

14  to their eligible law-abiding customers. These members would each undertake the

15  desired and protected activity but for the criminal liability that they face under the

16  laws, regulations, policies, practices, and customs being challenged in this action.

17  The interests that SAF seeks to protect in this lawsuit are germane to the

18  organization's purposes.

19  **Defendants**

20  *Defendant Bonta*

21  55.    Defendant Robert Bonta is the Attorney General of the State of

22  California, and is sued herein in his official capacity. Under Article 5, § 13 of the

23  California Constitution, Attorney General Bonta is the "chief law officer of the

24  State," with a duty "to see that the laws of the state are uniformly and adequately

25  enforced." Defendant Bonta is the head of the California Department of Justice

26  ("DOJ"). Defendant Bonta's DOJ and its Bureau of Firearms regulate and enforce

27  state law related to the sales, transfer, possession and ownership of firearms. The

28  Attorney General and DOJ maintain an office in San Diego, California.

*Defendant Graham*

56.     Defendant Blake Graham is the Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Graham reports to Attorney General Bonta, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations, and policies regarding firearm and ammunition sales, possession, and transfers. Defendant Graham is sued in his official capacity.

## JURISDICTION AND VENUE

57.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges, or immunities secured by the United States Constitution.

58.     Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought. Further, the venue rules of this State specifically would permit this action to be filed in San Diego, since the Attorney General and California Department of Justice maintain an office within this District; Cal. Code of Civ. Pro. § 401(1).

## STATEMENT OF FACTS

## I.      California's Ban on Handguns

59.     The Handgun Ban and Defendants' regulations, policies, and practices enforcing the same, individually and collectively prevent Plaintiffs, and all similarly situated members of Institutional Plaintiffs, who are not prohibited from possessing or acquiring firearms, from purchasing handguns that are categorically in common use for self-defense and other lawful purposes, and thus violate the Second and Fourteenth Amendments to the United States Constitution.

**A.     The General Regulatory Scheme**

60.     In California, individuals are required to purchase and transfer firearms

1   and ammunition through state and federally licensed dealers, like Retailer Plaintiffs,

2   in face-to-face transactions, or face serious criminal penalties.

3        61.    Because of an onerous regulatory scheme, which is designed to deny,

4   chill, suppress, and/or burden the exercise of fundamental, individual rights, people

5   in California cannot exercise their Second Amendment right to keep and bear arms

6   without going in person to retailers that must comply with the State's regulatory

7   scheme on pain of criminal liability—a misdemeanor at a minimum, Pen. Code, §

8   19.4 (providing that, unless otherwise specified, a violation of a criminal statute

9   constitutes a misdemeanor)—as well as loss of the necessary licenses to engage in

10  any lawful firearm-related business.

11       62.    "Where neither party to [a] [firearm] transaction holds a dealer's license

12  issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction

13  shall complete the sale, loan, or transfer of that firearm through a licensed firearms

14  dealer pursuant to Chapter 5 (commencing with Section 28050)." Pen. Code §

15  27545.

16       63.    A license to transact in firearms "is subject to forfeiture for a breach of

17  any of the prohibitions and requirements of [Article 2, Penal Code §§ 26800 –

18  26915]" (with some exceptions that do not apply in the instant matter). Pen. Code §

19  26800.

20       64.    Penal Code § 28220(a) states: "Upon submission of firearm purchaser

21  information, the Department of Justice shall examine its records, as well as those

22  records that it is authorized to request from the State Department of State Hospitals

23  pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine

24  if the purchaser is a person described in subdivision (a) of Section 27535, or is

25  prohibited by state or federal law from possessing, receiving, owning, or purchasing

26

27

28

a firearm."[4]

65.     Defendants' Department of Justice participates in the National Instant Criminal Background Check System (NICS). Pen. Code § 28220(a).

66.     A "Certificate of Eligibility" ("COE") "means a certificate which states that the Department has checked its records and the records available to the Department in the National Instant Criminal Background Check System and determined that the applicant is not prohibited from acquiring or possessing firearms pursuant to Penal Code sections 18205, 29800, 29805, 29815 through 29825, and 29900, or Welfare and Institutions Code sections 8100 and 8103, or Title 18, sections 921 and 922 of the United States Code, or Title 27, Part 478.32 of the Code of Federal Regulations at the time the check was performed and which ensures that a person who handles, sells, delivers, or has under his or her custody or control any ammunition, is eligible to do so pursuant to Penal Code section 30347." 11 CCR § 4031(d). *See also* Pen. Code § 26710 and 11 CCR § 4030, *et seq.*

67.     "The initial COE application process includes a firearms eligibility criminal background check and issuance of a certificate, which is valid for one year. Thereafter, the COE must be renewed annually. A COE can be revoked, at any time, if the COE holder becomes prohibited from owning/possessing firearms and ammunition." *See* Defendants' website at https://oag.ca.gov/firearms/cert-eligibility.

68.     On information and belief, a COE issued by Defendants' Department of Justice Bureau of Firearms places the certificate holder in their "Rap Back" file, which would notify them immediately should the certificate holder be arrested or otherwise prohibited from purchasing or possessing firearms.

_____

[4]     The DOJ's multi-step, acronym-heavy background check process for firearms is detailed in *Silvester v. Harris*, 41 F.Supp.3d 927, 947–952 (E.D. Cal. 2014).

**B.     The Handgun Ban and "Roster"**

69.     Defendants' California Department of Justice compiles, publishes, and maintains "a roster listing all of the handguns that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this part." Pen Code § 32015.

70.     Additional information on the Handgun Roster can be found in Defendants' regulations at California Code of Regulations, title 11, section 4070.

71.     On information and belief, Defendants' Roster of Certified Handguns available for sale to law-abiding citizens not exempt from the Handgun Purchase Ban is a small fraction of the total number of handgun makes and models commercially available throughout the vast majority of the United States, all of which are constitutionally protected arms in common use for lawful purposes.

72.     On information and belief, at the end of 2013, there were 1,273 makes and models of approved handguns, including 883 semiautomatics, on Defendants' Roster. Since then, the Defendants' Roster has continued to shrink because of the Defendants' enforcement of the Handgun Purchase Ban.

73.     As of October 24, 2022, there were only "815 handguns found"—*total*, of all makes, models, and permutations—on Defendants' Roster.

74.     Inevitably hastening the rate of shrinkage, effective January 1, 2021, the State amended California's Handgun Ban under Assembly Bill No. 2847 (2019 – 2020 Reg. Sess.) ("AB 2847"), which now expressly requires that, for every single new firearm added to the Roster, Defendants' Department of Justice must *remove* three firearms added before July 1, 2022, that are not compliant with its current requirements.[5] Pen. Code. § 31910(b)(7).

---

[5] *See* Alexei Koseff, "Bullet-tracing bill by [California Assembly-member] David Chiu aims to force issue on gunmakers," San Francisco Chronicle (March 16,

75.     Moreover, of the handguns "certified" for Roster inclusion, on information and belief, "about one-third of the Roster's total listings are comprised of makes and models that do not offer consumers substantive and material choices in the physical attributes, function, or performance of a handgun relative to another listing (*i.e.*, a base model)," because many of the approved handguns are merely the same handgun make and model as another approved model with cosmetic difference(s). *See*, *e.g.*, *California's Handgun Roster: How big is it, really?*, online at https://www.firearmspolicy.org/california-handgun-roster (showing the results of a detailed analysis of the Roster as of January 30, 2019).

76.     The Handgun Ban, as it stands today, not only forces and requires the Handgun Roster to virtually shrink into oblivion, but, on information and belief, even minor changes to manufacturing processes, materials, and suppliers will cause a previously certified handgun to be removed from the Handgun Roster by Defendants under the State's laws and Defendants' policies and enforcement practices.

77.     Worse, certified handgun models are removed from the Roster by Defendants if the manufacturer does not pay an annual fee to maintain the model on the Roster. Penal Code § 32015(b)(2). On information and belief, due to the Handgun Ban, just as hundreds of handgun makes and models have already been removed from Defendants' Roster, more handgun makes and models will "drop off" the Roster as manufacturers choose to update their products—as well as their materials, processes, and supply chains—to make them more competitive in the broader civilian market throughout the United States and/or refusing to continue to pay

_____

2020), at https://www.sfchronicle.com/politics/article/Assemblyman-Chiu-pushes-firearms-industry-to-15132278.php.

*See also* Alexei Koseff, "[California Governor] Newsom signs bill that compels gunmakers to adopt bullet-tracing technology," San Francisco Chronicle (Sept. 29, 2020), at https://www.sfchronicle.com/politics/article/Newsom-signs-bill-that-compels-gunmakers-to-adopt-15607657.php.

California's extortive annual renewal fees, making them ineligible to renew on the Roster, further reducing the availability of constitutionally protected arms that individual adults not disqualified from exercising Second Amendment rights have a fundamental right to acquire and possess.

78.   Indeed, Defendants' list of "De-Certified Handguns" shows hundreds of handgun models have been removed from the Roster since December of 2001, including 33 this year alone, https://oag.ca.gov/firearms/de-certified-handguns (last visited October 24, 2022), whereas just one handgun model has been "recently added" this month according to Defendants' list of "Recently Added Handgun Models," https://oag.ca.gov/firearms/certified-handguns/recently-added (last visited October 24, 2022).

79.   Handguns that have passed California's tests and were certified by Defendants do not become "unsafe"—much less lose their constitutional protection—simply because a manufacturer does not pay an annual fee.

80.   Handguns that do not have one or all of the "safety" devices as required under the Handgun Ban are neither "dangerous" nor "unusual" and are instead in common use for lawful purposes throughout the United States.

81.   Handguns that do not have chamber load indicators are neither "dangerous" nor "unusual" and are instead in common use for lawful purposes throughout the United States.

82.   Handguns that do not have magazine disconnect mechanisms are neither "dangerous" nor "unusual" and are instead in common use for lawful purposes throughout the United States.

83.   Handguns that do not have "microstamping" technology are neither "dangerous" nor "unusual" and are instead in common use for lawful purposes throughout the United States.

84.   Any of the attributes, systems, and "safety" devices required under the Handgun Ban can fail or be altered or removed by a handgun's possessor, and the

absence of one or all of them does not strip the protection for otherwise constitutionally protected arms.

85.    The attributes, systems, and "safety" devices required under California's Handgun Ban are not sufficient to guarantee a handgun's safe use.

86.    The attributes, systems, and "safety" devices required under the Handgun Ban cannot replace safe and responsible gun handling.

87.    Microstamping technology is not a safety device.

88.    Microstamping technology has not been shown to viably support any law enforcement purpose.

89.    On information and belief, as of November 8, 2020, there were no commercially available semiautomatic handguns manufactured in the United States that have the microstamping technology required under the Handgun Ban.

90.    On information and belief, as of January 4, 2021, there are no commercially available semiautomatic handguns manufactured in the United States that have the microstamping technology required under the Handgun Ban.

91.    On information and belief, as of November 8, 2020, there were no commercially available semiautomatic handguns manufactured in the United States that met all of the requirements under the Handgun Ban.

92.    On information and belief, as of January 4, 2021, there were no commercially available semiautomatic handguns manufactured in the United States that meet all of the requirements under the Handgun Ban.

93.    On information and belief, as of October 24, 2022, there are still no commercially available semiautomatic handguns manufactured in the United States that meet all of the requirements under the Purchase Ban.

94.    California law requires that handgun purchasers successfully complete a test, pay a fee, and acquire a valid FSC before they purchase and take possession

1    of any firearm, including handguns. Penal Code § 31610, *et seq.*[6]

2       95.    Defendants' publicly available Firearms Safety Certificate ("FSC")

3    Study Guide, a document published by the Office of the Attorney General and

4    California Department of Justice Bureau of Firearms, Defendants' Spanish-language

5    version of the FSC Study Guide, and Defendants' FSC "MANUAL for California

6    Firearms Dealers and DOJ Certified Instructors" are available on Defendants'

7    website at https://oag.ca.gov/firearms/fsc.

8       96.    In their publicly available FSC Study Guide, Defendants state, in red

9    type: "REMEMBER: Ignorance and carelessness can result in firearm accidents.

10   Basic gun safety rules must be applied ALL OF THE TIME." (Color and

11   capitalization in original.)

12      97.    In the first section of Chapter 1 of Defendants' FSC Study Guide

13   (captioned "THE SIX BASIC GUN SAFETY RULES"), the Guide states: "There

14   are six basic gun safety rules for gun owners to understand and practice at all times:

15   1. Treat all guns as if they are loaded. 2. Keep the gun pointed in the safest possible

16   direction. 3. Keep your finger off the trigger until you are ready to shoot. 4. Know

17   your target, its surroundings, and beyond. 5. Know how to properly operate your

18   gun. 6. Store your gun safely and securely to prevent unauthorized use. Guns and

19   ammunition should be stored separately." (Line breaks removed.)

20      98.    Under common rules of firearm safety, and within the knowledge

21   required for the State's FSC and safe handling demonstration, is the fundamental

22   rule that all firearms must always be treated as though they are loaded.

23      99.    It is irresponsible and unsafe to rely on "safety" devices required under

24   the Handgun Ban.

25      100.   Additionally, Defendants' require firearm purchasers, the retailer, and

26   _____

27   [6]  *See also* 11 CCR § 4250, *et seq.*, and Defendants' website at

28   https://oag.ca.gov/firearms/fscfaqs.

the DOJ Certified Instructor licensed and permitted to proctor the test, to conduct, successfully pass, and certify in a "Safe Handling Demonstration Affidavit" (online at https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/hscaff.pdf) signed under penalty of perjury, that the purchaser or transferee "performed the safe handling demonstration as required in Penal Code sections 26850, 26853, 26856, 26859, or 26860, as applicable, with the firearm (or one of the same make and model) referenced" on the Dealer's Record of Sale (DROS) number associated with the purchase or transfer.

**COUNT ONE**
**42 U.S.C. § 1983**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV**

101.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

102.   There is an actual and present controversy between the parties.

103.   The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. Plaintiffs, and all similarly situated members of Institutional Plaintiffs, who are all eligible to exercise their Second Amendment rights, wish to keep and bear constitutionally protected arms for self-defense and other lawful purposes.

104.   The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

105.   The Second Amendment is fully applicable to the States through the

Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring).

106.   Because of the Defendants' enforcement of the laws, regulations, policies, practices, and customs underlying the purchase prohibitions of the Handgun Ban, Plaintiffs, and all similarly situated members of Institutional Plaintiffs, cannot purchase new constitutionally protected arms without suffering criminal liability.

107.   Nothing in the "Nation's historical tradition of firearm regulation" supports the heavy-handed purchase restrictions here. *Bruen*, 142 S. Ct. at 2130.

108.   Individuals in California have a right to keep and bear arms, including but not limited to, buying, selling, transferring, self-manufacturing or assembling, transporting, carrying, and practicing safety and proficiency with, firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

109.   This fundamental, individual right to keep and bear firearms includes the right to acquire modern handguns in common use for lawful purposes—indeed, arms that are lawfully sold and possessed throughout the United States—such as those the Handgun Ban prevents common law-abiding citizens from purchasing at a licensed retailer.

110.   The text of the Second Amendment, which guarantees "the right of the people to keep and bear Arms," implicitly includes the right to so acquire firearms. Further, the "right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms." *See Andrews v. State*, 50 Tenn. 165, 178 (1871); *accord Teixeira v. County of Alameda*, 873 F.3d 670, 678 (2017).

111.   Further, without constitutional protections for the acquisition as well as the manufacturing of firearms, the "right of the people to keep and bear Arms" would be in jeopardy. *See Ezell*, 651 F.3d at 704 (clarifying that "[t]he right to possess

1  firearms for protection implies a corresponding right to acquire and maintain

2  proficiency in their use; the core right wouldn't mean much without the training and

3  practice that make it effective."); *Ill. Ass'n of Firearms Retailers v. City of Chicago*,

4  961 F. Supp. 2d 928, 930, 938 (N.D. Ill. 2014) (holding that "the right to keep and

5  bear arms for self-defense under the Second Amendment . . . must also include the

6  right to acquire a firearm . . .").

7       112.   Contrary to the regulations like those in Penal Code sections 31900, *et*

8  *seq*. and 32000, *et seq*., underlying the Handgun Ban and related Handgun Roster,

9  no founding era precedent exists for declaring "unsafe" and prohibiting the

10 commercial sale of firearms otherwise widely available and in common use for

11 lawful purposes among ordinary law-abiding citizens; such regulations only exist in

12 a handful of jurisdictions and all of them are of recent origin—the *earliest* was

13 Maryland's, enacted in 1988. Md. Code Ann., Pub. Safety § 5-405.

14      113.   The purchase prohibitions of the Handgun Ban prevent law-abiding

15 citizens, like and including Plaintiffs, and all similarly situated members of

16 Institutional Plaintiffs, from acquiring and thus possessing for lawful purposes

17 "instruments that constitute bearable arms" protected under the Second Amendment.

18      114.   These unprecedented regulations are plainly inconsistent with the

19 "Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130.

20 Accordingly, these restrictions on the purchase and acquisition of firearms fall

21 directly within—and are proscribed by—the Second Amendment's "unqualified

22 command." *Bruen*, 142 S. Ct. at 2130 (quoting *Konigsberg*, 366 U.S. at 50, n.10).

23      115.   The Handgun Ban's prohibition on the purchase of constitutionally

24 protected arms and maintenance of the Roster for purposes of enforcing this

25 proscription in the absence of the necessary historical precedent fails full stop under

26 *Bruen*, rendering them unconstitutional both facially and as applied in this case.

27      116.   "The very enumeration of the [Second Amendment] right takes out of

28 the hands of government . . . the power to decide on a case-by-case basis whether

the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

117.   The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. 742, 780, and it cannot "be singled out for special—and especially unfavorable—treatment." *Id.* at 778–79.

118.   *Bruen*, 142 S. Ct. 2111, made this clear by expressly rejecting all interest balancing and the Ninth Circuit's prior "two-step" approach in the context of Second Amendment claims.

119.   "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S. Ct. at 2127. Rather, "*Heller* … demands a test rooted in the Second Amendment's text, as informed by history. *Id.*

120.   Thus, *Bruen* makes clear that the Ninth Circuit's former two-step approach and interest-balancing applied in *Peña v. Lindley*, 898 F.3d 969 (9th Cir. 2018), which previously upheld a prior version of some of the laws challenged herein, are inapplicable and improper in Second Amendment cases.

121.   *Bruen* did not create a new test but instead applied the very test the Court established in *Heller* in 2008. "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.*, at 2131.

122.   "*Heller*'s methodology centered on constitutional text and history. Whether it came to defining the character of the right (individual or militia dependent), suggesting the outer limits of the right, or assessing the constitutionality of a particular regulation, *Heller* relied on text and history. It did not invoke any means-end test such as strict or intermediate scrutiny." *Id.*, at 2128-29.

123.   The plain text of the Second Amendment covers the conduct the

1   Plaintiffs, and all similarly situated members of Institutional Plaintiffs, wish to

2   engage in ("keep and bear arms") and the arms they wish to keep and bear. "[T]he

3   Second Amendment extends, prima facie, to all instruments that constitute bearable

4   arms," *Bruen*, 142 S. Ct., at 2132 (quoting *Heller*, 554 U. S., at 582).

5       124.   Since the conduct is covered by the Second Amendment's plain text,

6   "the Constitution presumptively protects that conduct. To justify its regulation, the

7   government . . . must demonstrate that the regulation is consistent with this Nation's

8   tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

9       125.   *Heller* has already established the relevant contours of the tradition:

10  Bearable arms that are presumptively protected by the Second Amendment cannot

11  be banned unless they are both dangerous *and* unusual.

12      126.   The Second Amendment's "reference to 'arms' does not apply 'only

13  [to] those arms in existence in the 18th century.' " *Bruen*, 142 S. Ct., at 2132 (quoting

14  *Heller*, 554 U. S., at 582). "Just as the First Amendment protects modern forms of

15  communications, and the Fourth Amendment applies to modern forms of search, the

16  Second Amendment extends, prima facie, to all instruments that constitute bearable

17  arms, even those that were not in existence at the time of the founding." *Id*. (citations

18  omitted).

19      127.   And "[w]hatever the likelihood that handguns were considered

20  dangerous and unusual during the colonial period, they are indisputably in common

21  use for self-defense today. They are, in fact, the quintessential self-defense weapon."

22  *Bruen*, 142 S. Ct. 2111, at 2143 (quoting *Heller*, 554 U. S., at 629, 128 S. Ct. 2783,

23  171 L. Ed. 2d 637) (cleaned up).

24      128.   "Thus, even though the Second Amendment's definition of 'arms' is

25  fixed according to its historical understanding, that general definition covers modern

26  instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U.

27  S. 411, 411-412, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016) (*per curiam*) (stun guns)."

28  *Id*.

129.   Millions of handguns prohibited for sale to the State's law-abiding citizens are commonly possessed and used for self-defense and other lawful purposes in the vast majority of states, securing their protection from such regulation.

130.   In the approximately 400-year history of the colonies and later the United States, no regulations at all like the Handgun Ban appeared until recently in only a few states. That is hardly a historical tradition of such regulations.

131.   To reiterate, the Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms *shall not* be infringed."

132.   Defendants are individually and collectively responsible for the formulation, issuance, implementation, and/or enforcement of the laws, regulations, policies, practices, and customs underlying the purchase prohibitions of the Handgun Ban.

133.   Defendants have enforced and will continue to enforce the purchase prohibitions under the Handgun Ban against Individual Plaintiffs, Retailer Plaintiffs and their customers, and similarly situated Institutional Plaintiffs' members.

134.   Defendants' enforcement of the purchase prohibitions under the Handgun Ban has prevented and continues to prevent Individual Plaintiffs, Retailer Plaintiffs' customers, and similarly situated Institutional Plaintiffs' members from purchasing new constitutionally protected handguns in violation of their rights protected under the Second and Fourteenth Amendments to the United States Constitution.

135.   Individual Plaintiffs, Retailer Plaintiffs and their customers, and similarly situated Institutional Plaintiffs' members reasonably fear that Defendants will enforce the purchase prohibitions under the Handgun Ban, including associated criminal laws and civil penalties, against them should they violate the same.

136.   42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

137.   Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the State of California not disqualified from exercising their fundamental, individual right to keep and bear arms, including Individual Plaintiffs, Retailer Plaintiffs' customers, and similarly situated Institutional Plaintiffs' members, through Defendants' enforcement and implementation of the purchase prohibitions under the Handgun Ban, which has denied, and will continue to infringe upon and prevent by criminal sanction, the exercise of the fundamental right to keep and bear arms unless and until redressed through the relief Plaintiffs seek herein.

138.   For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

139.   Because Defendants' enforcement of the purchase prohibitions under the Handgun Ban violates Plaintiffs' rights under the Second and Fourteenth Amendments to the United States Constitution, Plaintiffs are entitled to declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.   A declaratory judgment that Defendants' enforcement of the laws, regulations, policies, practices, and customs underlying the purchase prohibitions of the Handgun Ban prevent Individual Plaintiffs, Retailer Plaintiffs' customers, and similarly situated Institutional Plaintiffs' members who are not disqualified from exercising Second Amendment rights from purchasing new constitutionally protected arms, in violation of their right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution;

2.　　　An injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all persons who have notice of the injunction, from enforcing the purchase prohibitions of the Handgun Ban;

3.　　　Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

4.　　　That this Court retain jurisdiction after judgment for the purposes of resolving any future fee disputes between the parties and issuing further appropriate injunctive relief if the Court's declaratory judgment(s) is/are violated; and,

5.　　　All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Respectfully submitted this 31st day of October 2022.

/s/*Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
Tel.: 910-713-8804
Email: law.rmd@gmail.com
Attorney for Plaintiffs