DocuSign Envelope ID: 92AA9D34-ABC3-405C-BC24-7BBF109B3EF7
Case 3:20-cv-02190-DMS-DEB   Document 71-5   Filed 12/22/22   PageID.1124   Page 1 of 6

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com

Bradley A. Benbrook
Stephen M. Duvernay
Benbrook Law Group, PC
701 University Avenue, Suite 106
Sacramento, CA 95825
P: 916-447-4900
E: brad@benbrooklawgroup.com

Michael P. Sousa
Law Offices of Michael P. Sousa, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
P: 858-453-6122
E: msousa@msousalaw.com

William A. Sack
Firearms Policy Coalition
426 Campbell Avenue
Havertown, PA 19083
P: 916-596-3492
E: Wsack@fpclaw.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lana Rae Renna; Danielle Jaymes; Laura Schwartz; Michael Schwartz; Robert Macomber; Clint Freeman; John Klier; Justin Smith; John Phillips; Cheryl Prince; Darin Prince; Ryan Peterson; PWGG, L.P.; North County Shooting Center, Inc.; Gunfighter Tactical, LLC; Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens Committee for the Right to Keep and Bear Arms; and Second Amendment Foundation,<br><br>     Plaintiffs,<br><br>  v.<br><br>Robert Bonta, Attorney General of California; and Luis Lopez, Director of the California Department of Justice Bureau of Firearms,<br><br>     Defendants. | Case No.: 20-cv-2190-DMS-DEB<br><br>**DECLARATION OF JOHN PHILLIPS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: TBD<br>Time: TBD<br>Courtroom 13A (13th Floor)<br>Hon. Dana M. Sabraw |

I, John Phillips, declare:

1. I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2. I am the President and Founder of PWGG L.P., doing business as Poway Weapons & Gear and PWG Range ("PWGG"), a firearms dealership in Poway, California. PWGG is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership. PWGG operates one of the largest indoor gun ranges in the country. We serve over 200,000 people a year in our retail store, over 80,000 on our ranges, and over 8,000 students receive training and education related to firearms safety and utilization. PWGG also serves federal, state, and local law enforcement agencies and military personnel.

3. Through my work in the firearms business, I have become very familiar with the California handgun roster's ban on hundreds of models of handguns in common use throughout the rest of the nation.

4. I have obtained this knowledge in multiple ways.

5. For example, I am a member of a nationwide buying group called Nations Best Sporting ("NBS"), which consists of more than 450 retail members from all 50 states; NBS members order more than $1 billion in firearms annually. I regularly attend the two large shows that NBS organizes each year. All major firearms manufacturers participate in these shows by displaying their products and talking to members about them. I make over 80% of my inventory orders for PWGG at these shows.

6. I also serve on the retail advisory board for Smith & Wesson Brands, Inc. The retail advisory board consists of diverse dealers from across the county representing the various geographic locations of their range or retail stores. The advisory board is use by Smith & Wesson to better understand the market needs, challenges and future purchasing trends from the retail level. The board meets four

times a year, twice in person and twice via video conference. Through my service on this board, I have become intimately familiar with the fact that California's roster allows the sale of only one Smith & Wesson semiautomatic handgun in California. I am further aware that since 2014, Smith & Wesson has created approximately 650 new semi-automatic handgun SKUs that were ineligible to be added to the Roster due to the lack of feature(s) required by California state law. These SKUs cover a total of 31 unique models of semi-automatic handguns.

7. I routinely meet with manufacturer representatives of all major firearms manufacturers who visit PWGG to sell their products. We regularly discuss the limitations imposed by California's roster on the availability of handguns in California compared to the rest of the nation. In addition, I have access to retailers' online sales portals, which allows me to view the handguns that are offered for sale outside of California.

8. I regularly review publications describing handguns available and commonly used throughout the nation. Included among these are industry magazines such as Shot Business and Shooting Retailer, each of which lists firearms available and in common use throughout the nation. I also receive and read a magazine called Concealed Carry (published by the U.S. Concealed Carry Association, which provides insurance, education, and training on concealed-carry and armed self-defense) that includes advertising from all major manufacturers.

9. I am aware that California law now imposes a microstamping requirement (in addition to the chamber load indicator ("CLI") and magazine disconnect mechanism ("MDM") requirements) in order for a new handgun model to be added to the Roster. But there are no commercially available semiautomatic handguns manufactured in the United States that have all three requirements (the microstamping technology, CLI, and MDM). As a result, literally no new *models* of handguns have been added to the Roster since 2013. And since any change to a handgun design requires a new approval to be added to the roster, the few additions

to the roster in recent years have consisted of slight (mostly cosmetic) changes to models of handguns that have already been approved.

10. Overall, there has been a dramatic shrinkage of guns listed on the roster since 2013. To the best of my recollection, there were nearly 1,300 makes, models, and permutations of approved handguns on the Roster, but the list has steadily declined over the past decade. The total number of approved handguns now stands at just over 800.

11. While gun manufacturers innovate and release newer firearm models with improved features that are freely purchased throughout the country, Californians are left to choose from a shrinking list of aging handgun models that may not be suitable for their self-defense needs.

12. Glock products provide an example of the perverse impact of the roster. No Glock semiautomatic handguns after Glock's "Generation 3" line are available because they are not on the roster. (Generation 3 was first introduced to the market in the late 1990s.) Glock has already released and moved on from its very popular "Generation 4" series of semiautomatic handguns (first released in 2010), and is now producing a series of very popular "Generation 5" semiautomatic handguns, none of which are available in California. This means, among other things, that as Glock makes safety and other technical improvements with its new lines, Californians are unable to benefit from those improvements. The Gen5 handguns are much safer than the Gen3. The Gen5 is also much more reliable and has better ergonomics than the Gen3. The Glock G43 is one of the top-selling firearms designed for concealed carry that is in common use throughout the country, but it is banned from the Roster. I have been told by Glock representatives that the only reason it keeps making the Generation 3 weapons is that they are the only Glock weapons that Californians can purchase.

13. I am further aware that the Sig Sauer 320 is the most popular carry gun in the nation, but it is not available to Californians because it is not on the Roster. The Sig 32 and Sig 365 are better than any concealed carry weapon on Defendants' Roster.

They both have much newer technology and better ergonomics than any concealed carry weapon on the Roster. The newer technology includes additional safety features that help the functionality of both firearms. Likewise, the Springfield Armory Hellcat—one of the most popular semiautomatic firearms in the country for concealed carry—is not available in California.

14. There is nothing currently on Defendants' Roster like the Fabrique National Herstal 509 and FNX-9. These are home protection and concealed carry firearms. There is no gun on Defendants' Roster that is comparable in size and functionality to the FN 509 and FNX-9. These guns have better ergonomics than the guns on the Roster. This is a unique and high-end firearm. The FN 5.7 is the only FN pistol available on the Roster and it is not a common caliber of gun.

15. The Roster's requirements have also prohibited newer models of semiautomatic handguns that have ambidextrous configurations, which make them more suitable for left-handed customers. The Roster's restrictions pose particular constraints for females, who are the fastest-growing demographic of new gun purchasers, but are unable to purchase new models designed primarily for females.

16. But for California's handgun ban and Defendants' active enforcement thereof, I would purchase for self-defense and other lawful purposes a Sig 365, Sig 320 M17, Glock 17 Gen 5 MOS, FN 509, and/or FNX-9, all of which are handguns in common use for self-defense and lawful purposes and widely sold and possessed outside of California.

17. Because the handguns that I seek to purchase for lawful purposes are currently excluded from Defendants' Roster of purportedly "safe" handguns, California's Handgun Ban bars me from purchasing and taking possession of such handguns from a licensed retailer, who are likewise prohibited from selling them to me on pain of criminal sanction. I have no other lawful method of purchasing these handguns in California.

18.     Aside from the particular guns that I would like to purchase but cannot, I am aware that the roster bans many hundreds, and likely thousands, of other models of handguns in common use throughout the United States, as discussed above.

19.     Further, as the proprietor of Plaintiff PWGG, but for California's Handgun Ban and Defendants' active enforcement thereof, I would make commercially available all handguns in common use for self-defense and other lawful purposes that are widely sold and possessed outside of California, which are currently excluded from Defendants' handgun roster, and sell and transfer them to law-abiding customers.

20.     Prospective customers regularly visit PWGG and seek weapons to fit their particularized needs—as a result of physical disabilities and other limitations, including strength, size, and build—for weapons that are not available in California due to the roster.

21.     I hold an active license to carry a CCW issued by my county sheriff under Penal Code § 26150, *et seq.*, after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency under § 26165, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions. I also possess a current COE issued by the Defendants' Department of Justice Bureau of Firearms. I am also a trained firearms instructor.

I declare under penalty of perjury under the laws of the United States America and State of California that the foregoing is true and correct. Executed December 22, 2022.

*DocuSigned by:*
*John Phillips*
783A8B938CD1479...
JOHN PHILLIPS