BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lana Rae Renna; Danielle Jaymes; Laura Schwartz; Michael Schwartz; John Klier; Justin Smith; John Phillips; Cheryl Prince; Darin Prince; Ryan Peterson; PWGG, L.P.; North County Shooting Center, Inc.; Gunfighter Tactical, LLC; Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens Committee for the Right to Keep and Bear Arms; Second Amendment Foundation; and National Rifle Association of America,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, Attorney General of California; and ALLISON MENDOZA, Director of the California Department of Justice Bureau of Firearms,<br><br>Defendants. | Case No.: 20-cv-2190-DMS-DEB<br><br>**[PROPOSED] SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Lana Rae Renna; Danielle Jaymes; Laura Schwartz; Michael Schwartz; John Klier; Justin Smith; John Phillips; Cheryl Prince; Darin Prince; Ryan Peterson; PWGG, L.P.; North County Shooting Center, Inc.; Gunfighter Tactical, LLC; Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens Committee for the Right to Keep and Bear Arms; Second Amendment Foundation; and National Rifle Association of America (collectively "Plaintiffs"), file this supplemental complaint, pursuant to Federal Rule of Civil Procedure 15(d), to challenge the constitutionality of California Penal Code § 27595(a).

Plaintiffs complain of Defendants Attorney General of California Rob Bonta and California Department of Justice Bureau of Firearms Director Allison Mendoza (collectively "Defendants"), and allege as follows:

**INTRODUCTION**

1.    Plaintiffs incorporate by reference all allegations in their Fourth Amended Complaint for Declaratory and Injunctive Relief and incorporate those allegations as if fully set forth in this supplemental complaint.

2.    The Second Amendment to the United States Constitution protects law-abiding citizens' right to possess—and, as an incident, to acquire—firearms that are in common use for lawful purposes, including handguns. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 32 (2022); *Wolford v. Lopez*, 609 U.S. ----, 2026 WL 1825723, *4, *9 (2026).

3.    On October 31, 2022, Plaintiffs filed their Third Amended Complaint alleging that California's Unsafe Handgun Act ("UHA") violates the Second Amendment because it bans the sale of handguns that are in common use for self-defense and other lawful purposes. *See* ECF 67 ¶ 59.

4.    This Court held that several provisions of the UHA likely violate the Second Amendment. *See Renna v. Bonta*, 667 F. Supp. 3d 1048, 1060 (S.D. Cal. 2023), *appeal pending*, No. 23-55367 (9th Cir.). The Court concluded that those provisions banned many new models of semiautomatic handguns that are in common

use. *Id*. at 1063. And it specifically found that certain Glock handgun models are in common use. *See id*. (discussing the Glock 43 and Glock 17 Gen 5).

5.    On March 27, 2026, Plaintiffs filed the operative, Fourth Amended Complaint, which added the National Rifle Association of America as a plaintiff. *See* ECF 99 ("FAC").

6.    As of July 1, 2026, California *expanded* its handgun ban to encompass *additional* models of Glock and Glock-style handguns. *See* Cal. Penal Code § 27595(a). These models, too, are in common use. Indeed, they are among the most popular firearms in the nation. Yet if § 27595 is enforced, Californians will have no practical way to acquire them.

7.    So even if Plaintiffs were successful in their existing challenge to the UHA set forth in the FAC, § 27595 would separately prohibit their ability to purchase off-Roster Glock handguns (such as all Gen 4, Gen 5, and "V" series models). Moreover, the few models of Glock handguns that were available on the Roster are now banned by § 27595(a). The net result is that California has imposed a total ban on the retail sale of all Glock models currently in production.

8.    Plaintiffs lodge this supplemental complaint under Federal Rule of Civil Procedure 15(d) to challenge § 27595, which is flagrantly unconstitutional and, like the rest of the laws at issue in this suit, prohibits peaceable Californians from acquiring ordinary handguns.

9.    *Heller* held that handguns cannot be banned because "the handgun [is] the quintessential self-defense weapon" and "the most popular weapon chosen by Americans for self-defense in the home." 554 U.S. at 629. This Court has therefore recognized in this case that California cannot ban handguns in common use. *See Renna*, 667 F. Supp. 3d at 1060–68.

10.    California's decision to reach beyond the UHA's handgun ban to prohibit additional, commonly used handgun models is no more constitutional than its decision

to enact that UHA's ban in the first place. Plaintiffs respectfully request that this Court declare as much and enjoin § 27595's enforcement.

## PARTIES

11.   Plaintiffs are described in paragraphs 17 through 55 of the FAC. Plaintiffs incorporate each and every one of those paragraphs here.

12.   **Danielle Jaymes (FAC ¶¶ 20–21)**. Plaintiff Jaymes intends, on or after July 1, 2026, to purchase a Glock 19C in San Diego County from Plaintiff PWGG, L.P. As discussed below, § 27595 bans the sale of Glock 19Cs.

13.   **PWGG, L.P. (FAC ¶¶ 39–42)**. Plaintiff PWG has sold thousands of Glock and Glock-style handguns to law-abiding customers since opening in 2011. As discussed below, § 27595 bans the sale of these handguns. But for its reasonable fear of prosecution under § 27595, Plaintiff PWG would continue selling these handguns on or after July 1, 2026.

14.   **Firearms Policy Coalition (FAC ¶ 51)**. FPC brings this action on behalf of its members, including members residing in this district, who intend to exercise their Second Amendment rights to purchase Glock and Glock-style handguns on or after July 1, 2026.

15.   **Second Amendment Foundation (FAC ¶ 54)**. SAF brings this action on behalf of its members, including members residing in this district, who intend to exercise their Second Amendment rights to purchase Glock and Glock-style handguns on or after July 1, 2026.

16.   **National Rifle Association of America (FAC ¶ 55)**. NRA brings this action on behalf of its members, including those residing in this district, who intend and desire to exercise their Second Amendment rights to purchase Glock and Glock-style handguns on or after July 1, 2026.

17.   **Defendant Rob Bonta (FAC ¶ 56)**. Defendant Bonta is the Attorney General of the State of California and is sued here in his official capacity. The Attorney General is the "chief law officer of the State" of California and has a duty

"to see that the laws of the state are uniformly and adequately enforced." Cal. Const. art. V § 13. The Attorney General is also the head of the California DOJ, which enforces state laws related to the sale, transfer, possession, and ownership of firearms. The Attorney General and DOJ maintain an office in San Diego, California.

18. **Defendant Allison Mendoza (FAC ¶ 57)**. Defendant Mendoza is the Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Mendoza reports to Attorney General Bonta, and she is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations, and policies regarding firearm and ammunition sales, possession, and transfers. Defendant Mendoza is sued in her official capacity.

## JURISDICTION, VENUE, AND FORUM

19. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under 42 U.S.C. § 1983. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1343 because Plaintiffs' supplemental claim seeks redress for the deprivation, under color of state law, of rights secured by the Second Amendment. *See id*. § 1343(a)(3) (district courts shall have original jurisdiction over any action to "redress the deprivation, under color of any State law, … of any right, privilege or immunity secured by the Constitution of the United States").

20. Venue is proper in this Court because California Penal Code § 27595 will restrict the Individual Plaintiffs from buying, and Plaintiff PWG from selling, covered firearms in this district. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").

21. Plaintiffs may lodge the claim below in a supplemental complaint under Federal Rule of Civil Procedure 15(d). That rule permits new claims to be brought in a supplemental complaint so long as those claims have "some relation to the claim[s]

set forth in the original pleading." *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) (cleaned up). Plaintiffs' original claims challenged California's ban on many handgun models pursuant to the UHA's "Roster Ban." *See Renna*, 667 F. Supp. 3d at 1060 (noting Plaintiffs challenged a handgun "sales ban" (cleaned up)). Plaintiffs' supplemental claim challenges California's dramatic expansion of the list of banned handgun models—namely older Glock and Glock-style models—that had previously appeared on the UHA's list of approved models. Plaintiffs' supplemental claims are therefore related to their original claims. If Plaintiffs succeed on their constitutional challenge to the UHA, § 27595 would pose a separate bar to their ability to purchase Glock handguns. This supplemental complaint is therefore appropriate to aid Plaintiffs in seeking complete relief in this suit.

22.    Plaintiffs' supplemental complaint comports with the purpose of Rule 15(d), which is to promote "the efficient administration of justice" by avoiding "the cost, delay and waste of separate actions." *Keith*, 858 F.2d at 474 (cleaned up); *see also* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1506 (3d ed.) (noting "the desirability of reducing multiplicity of litigation by permitting as many of the claims between the parties as possible to be settled in one action"). Because Plaintiffs' supplemental claim is related to their original claims, adjudicating all these claims in a single action will reduce duplicative litigation, thus promoting "the economical and speedy disposition of the controversy" between Plaintiffs and California. *Keith*, 858 F.2d at 474.

## GENERAL ALLEGATIONS

23.    Plaintiffs brought this action to challenge California's Unsafe Handgun Act. The UHA "prohibit[s] the manufacture and retail sale in California of a large segment of modern handguns that are otherwise in common use throughout the United States for self-defense and other lawful purposes." *See Renna v. Bonta*, 667 F. Supp. 3d 1048, 1054 (S.D. Cal. 2023). It does so by prohibiting retail sales of all handgun

models except those models included on a "roster" maintained by the California Department of Justice. *See* Cal. Penal Code § 32015(a).

24.   The roster excludes many of the most popular new handguns in the Nation. Older versions of those firearms, however, are often "grandfathered" in and remain legal for sale. *See Renna*, 667 F. Supp. 3d at 1056 (describing 2007 and 2013 amendments). Relevant here, the roster excludes fourth- and fifth-generation Glock handguns. But it includes earlier, third-generation Glock handguns, which are handgun models that Glock began producing between 1998 and 2010. *See* Justin Chang, *Glock Generation Differences: Gen 3, Gen 4, Gen 5 [Guide]*, PEW TACTICAL (July 6, 2024), https://perma.cc/UGC7-MDJR. The Roster includes other cruciform trigger bar handguns as well, including several of the Shadow Systems 920 line.

25.   On April 3, 2023, this Court preliminarily enjoined several provisions of the UHA. It found that those provisions are likely unconstitutional because they ban new models of semiautomatic handguns that are in common use, including fourth- and fifth-generation Glocks. *See Renna*, 667 F. Supp. 3d at 1060, 1063.

26.   On October 10, 2025, California enacted Assembly Bill 1127, which provides that, effective July 1, 2026, licensed firearms dealers "shall not sell, offer for sale, exchange, give, transfer, or deliver any semiautomatic machinegun-convertible pistol." Cal. Penal Code § 27595(a). Penal Code § 16885(a) defines a "semiautomatic machine-gun convertible pistol" as:

> [A]ny semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools … into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism.

Cal. Penal Code § 16885(a).

27.   To the best of Plaintiffs' knowledge, that definition encompasses all Glock semiautomatic handguns and any similar handguns built using a cruciform trigger bar ("Glock-style handguns"). Before AB 1127, certain Glock models could

be sold in California because they were grandfathered onto California's handgun roster. While § 27595(a) contains a few exemptions not relevant to this challenge,[1] for ordinary, peaceable Californians, the law effectively closes the door on traditional commercial sales of these firearms. These models are now banned. AB 1127 is therefore a Glock ban. Violations may be punished by fine and the suspension or revocation of the offending dealer's license. *See id*. § 27595(b)(1)–(3).

28.    All factory stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025. The cruciform trigger bar is integral to Glock's design. Among other things, it ensures that a Glock pistol will not discharge accidentally if dropped.

29.    The cruciform trigger bar was present in Glock's patented design by 1982. *See* Frank Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025). It has thus been a feature of Glock pistols since they were first sold in the U.S. in 1986.

30.    When Glock's Gen 3 patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, the Ruger RXM, and many Shadow Systems handguns. Factory stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

31.    Because factory stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy AB 1127's definition of "machine gun convertible pistol" if they are deemed to be "readily convert[ible]" into a machine gun as described in

---

[1] Specifically, § 27595 exempts from coverage "private party to private party transaction[s] conducted through a licensed firearms dealer," subd. (c)(3), sales to law enforcement officers or transfers for a few discrete purposes, subd. (c)(9), and permits transfers "to any forensic laboratory or forensic laboratory employee, while on duty and acting within the scope and course of employment," subd.(c)(8). AB 1127 further excludes "hammer-fired semiautomatic pistol[s]" as well as "striker-fired semiautomatic pistol[s] lacking a cruciform trigger bar." Cal. Penal Code § 16885(b).

§ 16885(a). There is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily convert[ible]."

32.    Because the paradigmatic handguns that meet California's definition of a "semiautomatic machine-gun convertible pistol" were patented and initially manufactured by Glock, Plaintiffs will refer, at times, to the banned firearms as Glocks or Glock-style handguns. For the avoidance of doubt, Plaintiffs challenge the restriction as to *all* semiautomatic pistols with cruciform trigger bars that are banned by California under § 27595(a).

33.    A pistol converter is a device that can be attached to a pistol which enables the pistol to fire automatically, meaning it will fire more than one round by a single function of the trigger. *See* Cal. Penal Code § 17015. Put differently, a pistol converter is a device that transforms a semiautomatic pistol into a machinegun.

34.    AB 1127's author argued that this ban is necessary because Glocks' design allows them to be modified to fire automatically using pistol converters. *See* Cal. Sen. Comm. Public Safety, AB 1127, *Firearms: converter pistols*, at 8 (June 19, 2025), available at: https://perma.cc/6MVM-CY22; *see also* Cal. Penal Code § 17015. But under California law, pistol converters are already banned because they are defined as machineguns. *See* Cal. Penal Code § 16880(b); *id.* § 32625(a). That prohibition is not at issue in this case.

35.    These devices are also banned under federal law, which defines "machinegun" to include pistol converters. *See* 26 U.S.C. § 5845(b). With exceptions not relevant here, federal law prohibits the possession, manufacture, transfer, or receipt of a machinegun. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5861. A violation of these provisions is a felony punishable by up to ten years' imprisonment and a fine of up to $250,000. *See* 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871; 18 U.S.C. § 3571.

36.    The supplemental claim here is about whether California may ban semiautomatic handguns with a cruciform trigger bar, such as Glock and Glock-style handguns. It cannot.

SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

-8-

# SUPPLEMENTAL CLAIM FOR RELIEF

# VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS

## (42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908))

37.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 36.

38.    The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. This fundamental right is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).

39.    Textually, the right to "keep and bear" firearms includes the right to acquire them. *See B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024) ("[U]nless the right to *acquire* firearms receives some Second Amendment protection, the right to keep and bear firearms would be meaningless.").

40.    As *Heller* has made clear, the *only* historical justification that could justify banning the possession of a firearm is that the arm is both "dangerous and unusual." 554 U.S. at 627 (quotation marks omitted). Arms that are "in common use" are, by definition, neither. *Id*. (quotation marks omitted). Thus, in *Heller*, the Supreme Court held that the Second Amendment "protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627); *accord Wolford*, 2026 WL 1825723, at *3, *9.

41.    A law that bans the sale of—and correspondingly prevents citizens from acquiring—a weapon in common use violates the Second Amendment.

42.    Semiautomatic handguns with cruciform trigger bars are not different from *any* other type of semiautomatic handgun in a constitutionally relevant way.

43.    The Supreme Court has already held that handguns are in common use and cannot be banned. *See Heller*, 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition

of their use is invalid."). Semiautomatic handguns, including those with a cruciform trigger bar, therefore, cannot be banned.

44.    Even considered as their own group (which, under *Heller*, they should not be), the banned handguns are constitutionally protected. They are also unquestionably in common use for lawful purposes. In fact, they are among the most popular handguns in the Nation. *See, e.g.*, *How Glock became America's gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA. Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns. According to one source, three Glock handgun models made the top-25 for new guns sold in 2024, placing fourth, seventh, and twenty-second. *See* Logan Metesh, *Top Selling New Guns of 2024*, GUNS & AMMO (Jan. 14, 2025), https://perma.cc/8A5Z-5VQN. ATF has observed that Glocks are "popular for civilian use." *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022).

45.    Government data confirm the popularity of these types of handguns. For example, in 2024, Glock manufactured 419,510 handguns in the United States. *See Annual Firearms Manufacturing and Export Report* at 15, ATF (2024), available at https://www.atf.gov/resource-center/data-statistics. Of those, just 54,932 were exported. *Id*. at 201. It follows that, in 2024 alone, Glock manufactured 364,578 handguns for sale in the United States.

46.    That is to say nothing of imports. In 2021, 5,263,341 handguns were imported into the United States. *See* ATF, Firearms Commerce in the United States, at 3 (2024), available at: https://perma.cc/P689-LX24. Of those, 1,688,941 were imported from Austria, *id*. at 5, where many Glocks are manufactured, *see* Glock, *Glock Brand*, https://perma.cc/2UWY-EARR (last visited September 19, 2025). It is therefore likely that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

47. Glock and Glock-style pistols are generally lawful to sell, acquire, and possess throughout the United States.[2]

48. Penal Code § 27595(a) bans the sale of constitutionally protected handguns and violates the Second Amendment.

49. Defendants' enforcement of § 27595(a) therefore deprives Plaintiffs of rights secured by the Constitution.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

1. Declare that Penal Code § 27595(a)'s ban on semiautomatic handguns is unconstitutional under the Second Amendment, both facially and as-applied;

2. Enjoin enforcement of Penal Code § 27595(a)'s ban on semiautomatic handguns with a cruciform trigger bar;

3. Award Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

4. Award Plaintiffs other legal and equitable relief as is just and appropriate.

Dated: July 1, 2026     BENBROOK LAW GROUP, PC

By /s/ Bradley A. Benbrook
   BRADLEY A. BENBROOK
   Attorneys for Plaintiffs

---

[2] Since AB 1127's passage, a handful of States (Connecticut, Maryland, Massachusetts, and New York) have taken regulatory or legislative action to mimic California's restriction.