ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General
SABRINA T. MCGRAW
Deputy Attorney General
State Bar No. 334120
 455 Golden Gate Ave. 11th Fl.,
 San Francisco, CA  94102-7004
 Telephone:  (415) 268-4326
 Fax:  (415) 703-1234
 E-mail:  Sabrina.McGraw@doj.ca.gov
*Attorneys for Defendants
Attorney General Rob Bonta and Director
Allison Mendoza, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LANA RAE RENNA, et al.,**<br><br>                              Plaintiffs,<br><br>            **v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of California; and LUIS LOPEZ, in his official capacity as Director of the Department of Justice Bureau of Firearms,**<br><br>                              Defendants. | 3:20-cv-02190-DMS-DEB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL COMPLAINT**<br><br>Date:            August 7, 2026<br>Time:           1:30 PM<br>Dept:           Courtroom 13A<br>Judge:          The Honorable Dana M. Sabraw<br>Trial Date:    Not Set<br>Action Filed: November 10, 2020 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................1

      I.     *Renna* and the UHA ...................................................................1

      II.    The Passage of Assembly Bill 1127 In 2025 ..........................2

      III.   The *Jaymes* Suit Challenging AB 1127 ................................4

      IV.   Plaintiffs' Requests to Amend and Supplement the *Renna* Complaint During the Pending Ninth Circuit Appeal ...........................5

LEGAL STANDARD ............................................................................................6

ARGUMENT..........................................................................................................7

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*C.F. Young v. Trump*
   506 F. Supp. 3d 921 (N.D. Cal. 2020)...................................................................8

*Foman v. Davis*
   371 U.S. 178 (1962) ................................................................................6, 7, 10, 11

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*
   980 F. Supp. 2d 1160 (E.D. Cal. 2013)................................................................8

*Jaymes v. Bonta*
   No. 3:25-cv-02711-GPC-DEB (S.D. Cal. filed Oct. 13, 2025) ..................*passim*

*Keith v. Volpe*
   858 F.3d 467 (9th Cir. 1988)...........................................................................8, 9

*Manriquez v. City of Phoenix*
   654 F. App'x. 350 (9th Cir. 2016)......................................................................10

*Martin v. Naval Crim. Investigative Serv. (NCIS)*
   No. 10CV1879WQH MDD, 2012 WL 1570840 (S.D. Cal. May 3,
   2012).....................................................................................................................6

*Morongo Band of Mission Indians v. Rose*
   893 F.2d 1074 (9th Cir. 1990)...........................................................................9

*Peterson v. California*
   No. 1:10-CV-01132-SMS, 2011 WL 3875622 (E.D. Cal. Sept. 1,
   2011)...................................................................................................................10

*Planned Parenthood of S. Arizona v. Neely*
   130 F.3d 400 (9th Cir. 1997)...............................................................7, 8, 9, 10

*Renna v. Bonta*
   No. 23-55367 (9th Cir.)............................................................................*passim*

*Sywula v. Teleport Mobility, Inc.*
   652 F. Supp. 3d 1195 (S.D. Cal. 2023)..............................................................6

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Worley v. Bristol*
   No. 2:25-CV-00083-YY, 2026 WL 2013945 (D. Or. Apr. 29, 2026) ............... 10

**STATUTES**

California Penal Code

   § 16380 ......................................................................................................1
   § 16885 ...................................................................................................3, 4
   § 16900 ......................................................................................................1
   § 16380 ......................................................................................................1
   § 17015 ......................................................................................................3
   § 27595 ...............................................................................................*passim*
   § 31910 ...................................................................................................1, 2
   § 32000(a).................................................................................................1, 2
   § 32015(a).....................................................................................................1
   § 32110 ......................................................................................................2

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Second Amendment........................................................................... 1, 4, 9

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 15(a) ...................................................................................................6
   Rule 15(d).................................................................................................6, 9

Local Rule
   Rule 40.1(g) ................................................................................................7

**OTHER AUTHORITIES**

Assembly Bill
   No. 1127 .............................................................................................*passim*

Opp. to Motion to File Supplemental Complaint (3:20-cv-02190-DMS-DEB)

## TABLE OF AUTHORITIES
### (continued)

**Page**

Greg Moran, *Revised San Diego court rule addresses quirk that some said allowed 'judge shopping' in gun cases*, S.D. Tribune (updated May 16, 2023), https://www.sandiegouniontribune.com/2023/05/15/revised-san-diego-court-rule-addresses-quirk-that-some-said-allowed-judge-shopping-in-gun-cases/ ................................................................8

Libor Jany, Richard Winton, & Kevin Rector, *Sacramento massacre shows rising dangers of handguns converted into automatic weapons*, L.A. Times (Apr. 7, 2022), https://www.latimes.com/california/story/2022-04-07/la-me-sacramento-shooting-automatic-weapons ...........................................3

Senate Bill No. 452 ....................................................................................2

U.S. ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV, Director's Foreword (last updated Apr. 6, 2026) https://perma.cc/C6SW-U5ZT.........................................................2, 3

U.S. ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV, Part V, Privately Made Firearms Updates and New Analysis, https://perma.cc/9UNQ-DGTU ......................................................3

**INTRODUCTION**

Plaintiffs filed this suit in 2020 as a Second Amendment challenge to California's Unsafe Handgun Act ("UHA").  Now, more than five years later and while a preliminary injunction appeal in this case is pending in the Ninth Circuit, Plaintiffs seek to add an entirely new and distinct Second Amendment challenge to California Penal Code section 27595(a) ("AB 1127"), a different firearm regulation enacted in 2025 that is not part of the UHA.  Such expansion of this case is inappropriate here where a subset of these Plaintiffs *already brought* a separate lawsuit on this same issue that they then voluntarily dismissed, it is based on a new claim, Plaintiffs waited over eight months before requesting to add the claim, and supplementation or amendment may impact the pending Ninth Circuit appeal.  For these reasons, Plaintiffs' Motion for Leave to File a Supplemental Complaint should be denied.

**BACKGROUND**

**I.    *RENNA* AND THE UHA**

On November 10, 2020, Plaintiffs filed the present action challenging the constitutionality of certain provisions of the UHA.  Dkt. No. 1.  The UHA generally prohibits the manufacture or retail sale of any "unsafe handgun" in California, making a violation punishable by imprisonment in a county jail for not more than one year.  Cal. Penal Code § 32000(a).  Under the UHA, the California Department of Justice must maintain a Roster of Certified Handguns ("Handgun Roster") that have been tested by a certified independent laboratory and meet other safety requirements.  For newly added semiautomatic pistol models, these requirements include having two safety devices—a chamber load indicator and a magazine disconnect mechanism—both of which help to prevent the accidental firing of the pistol.  *Id.* §§ 31910, 32015(a); *see also id.* § 16380 (defining chamber load indicator); *id.* § 16900 (defining magazine disconnect mechanism).  Handgun models (*i.e.*, pistols and revolvers) that do not appear on the Handgun Roster cannot

1

be sold at retail by California firearms dealers, but they can be possessed and acquired through private-party transactions if done so through a licensed dealer. *Id.* §§ 32000(a), 32110.  The currently operative Fourth Amended Complaint challenges the constitutionality of the "purchase prohibitions" of the UHA, which the complaint does not define.  Dkt. No. 99-1 ¶¶ 107, 114, 133–36, 138, 140.

In December 2022, Plaintiffs filed a motion for a preliminary injunction, which this Court granted in part and denied in part in a March 2023 Order.  Dkt. Nos. 71, 80–81.  The order enjoined the chamber load indicator and magazine disconnect mechanism requirements, but this Court stayed the injunction pending appeal.  Dkt. No. 80 (Order); Dkt. No. 81 (Amended Order).[1]  Defendants appealed the preliminary injunction order on April 20, 2023.  *Renna v. Bonta*, No. 23-55367 (9th Cir.), Dkt. No. 1.  The appeal has been fully briefed and argued, and the parties currently await the Ninth Circuit's decision.

## II.   THE PASSAGE OF ASSEMBLY BILL 1127 IN 2025

In October 2025, Assembly Bill 1127, the bill implementing California Penal Code § 27595(a) and the related definitions, was signed into law.  AB 1127 was a reasonable legislative response to the growing spread of, and increasing accessibility to, what California law calls a "pistol converter," and what the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (U.S. ATF) calls "machinegun conversion devices" or "MCDs."  *See* U.S. ATF, *National Firearms Commerce and Trafficking Assessment: NFCTA Updates, New Analysis, and Policy Recommendations*, Vol. IV, Director's Foreword at 1 (last updated Apr. 6, 2026)

---

[1] This Court also preliminarily enjoined (and then stayed the injunction) provisions of the UHA requiring the California Department of Justice to remove handgun models Handgun Roster under certain conditions and a microstamping requirement formerly at Penal Code section 31910, subdivision (b)(6).  However, Senate Bill 452 subsequently removed the microstamping requirement from section 31910 and imposed a substantially different—and delayed—microstamping requirement, codified in Penal Code sections 27531 through 27534.2. S.B. 452, 2023–2024 Reg. Sess. (Cal. 2023).

2

https://perma.cc/C6SW-U5ZT.  As the U.S. ATF explains, machinegun conversion devices "are small, easily concealed devices that transform a semi-automatic firearm into an illegal machinegun in seconds."  *Id.*  These devices, which can be 3-D printed, are "designed for use on certain semiautomatic pistols," and are "easily integrated" into such pistols to "illegally convert them to fire automatically."  *Id.* at Part V, Privately Made Firearms Updates and New Analysis at 1, https://perma.cc/9UNQ-DGTU.  According to the U.S. ATF, the number of MCDs, or pistol converters, recovered in crimes skyrocketed 784% between 2019 (658) and 2023 (5,816), and California was in the top ten states where these devices were recovered.  *Id.* at 7–8.  These devices have been used to convert pistols into machineguns that were used during mass shootings in Sacramento in 2022 and in Fresno in 2019, just to name a couple.  *See* Libor Jany, Richard Winton, & Kevin Rector, *Sacramento massacre shows rising dangers of handguns converted into automatic weapons*, L.A. Times (Apr. 7, 2022), https://www.latimes.com/california/story/2022-04-07/la-me-sacramento-shooting-automatic-weapons.

Beginning on July 1, 2026, AB 1127 generally restricts licensed firearms dealers from selling pistol models that meet the definition of "semiautomatic machinegun-convertible pistols."  Cal. Penal Code § 27595(a); *see also id.* § 16885.  Such pistol models are defined as:

> any semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools, as defined in Section 4082 of Title 11 of the California Code of Regulations, into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism.

*Id.* § 16885(a); *see also id.* § 17015 (defining "pistol converter").

3

AB 1127 does not prohibit the *possession* of semiautomatic machinegun-convertible pistols. *See id.* § 27595(a). Additionally, AB 1127 permits firearms dealers to sell out any remaining inventory of machinegun-convertible pistols delivered to the dealer before January 1, 2026, and permits private individuals to transfer and acquire such pistols through private-party transactions so long as the transaction is conducted through a licensed firearms dealer. *Id.* § 27595(c)(1), (3). AB 1127's sales prohibition also does not apply to transfers relating to repairs or returning a covered pistol after it has been stored at a dealer for safekeeping. *Id.* §§ 27595(c)(4), (6).

AB 1127 operates independently of the UHA and Handgun Roster, meaning that if a pistol model falls within AB 1127's definition of a machinegun-convertible pistol at California Penal Code section 16885, it cannot be sold at retail even if listed on the Handgun Roster.

**III. THE *JAYMES* SUIT CHALLENGING AB 1127**

Three days after AB 1127 was signed into law on October 10, 2025, a large subset of the *Renna* Plaintiffs (the National Rifle Association ("NRA"), Firearms Policy Coalition, Second Amendment Foundation, Danielle Jaymes, John Phillips, and California firearms dealer PWGG, L.P.) filed suit challenging the constitutionality of AB 1127 under the Second Amendment. Complaint, *Jaymes v. Bonta*, No. 3:25-cv-02711-GPC-DEB (S.D. Cal. filed Oct. 13, 2025), 2025 WL 2932904, Dkt. No. 1. On the same day, plaintiffs in *Jaymes* filed a Notice of Related Case to *Renna*. Notice of Related Case, *Jaymes*, No. 3:25-cv-02711-GPC-DEB (S.D. Cal. filed Oct. 13, 2025), Dkt. No. 2. Defendants opposed the Notice of Related case, and the Court never ruled on it, meaning the *Jaymes* case remained with the Honorable Judge Curiel in the United States District Court in the Southern District of the California and assigned Magistrate Judge Butcher. *See generally Jaymes*, No. 3:25-cv-02711-GPC-DEB, Dkt. No. 29 (Judge Curiel ruling on Joint Motion to Stay); *see also id.*, Dkt. Nos. 24, 25 (status conference held and

4

scheduling order issued by Magistrate Judge Butcher).  The *Jaymes* plaintiffs subsequently dismissed the case six months later, on April 10, 2026.  Order Granting Joint Motion to Dismiss, *Jaymes*, No. 3:25-cv-02711-GPC-DEB (S.D. Cal. Apr. 13, 2026), Dkt. No. 31.

## IV.   PLAINTIFFS' REQUESTS TO AMEND AND SUPPLEMENT THE *RENNA* COMPLAINT DURING THE PENDING NINTH CIRCUIT APPEAL

On March 27, 2026, Plaintiffs filed an unopposed Motion for Leave to File Amended Complaint with this Court.  Dkt. No. 99.  That amendment sought to add the NRA as a plaintiff.  *Id.* at 1.  It also stated that the change was not meant to disrupt the pending appeal in any way:

> For the avoidance of doubt, Plaintiffs note that they do not wish to disturb the pending appeal, nor do they seek for the NRA to become a party to the pending appeal. Moreover, Plaintiffs will not use the amended complaint as a basis to make any request to the Ninth Circuit or to supplement their submission in the pending appeal. And, to ensure that this motion does not disrupt the appeal, Plaintiffs respectfully request that this Court refrain from issuing an indicative ruling under Federal Rule of Civil Procedure 62.1.

*Id.* at 1–2.  On April 1, 2026, the Court granted the Unopposed Motion, noting that the amended complaint was "not intended to disturb, supplement, or otherwise disrupt the pending appeal in the Ninth Circuit."  Dkt. No. 100.

On July 1, 2026, Plaintiffs—which now include the NRA—filed this motion seeking to supplement the operative Complaint to add a brand-new claim challenging the constitutionality of California Penal Code § 27595(a), AB 1127's provision regulating the retail sale of semiautomatic machinegun-convertible pistols.  Dkt. No. 101.  In contrast to the previous request to amend, this Motion for Leave to Serve a Supplemental Complaint makes no mention of the pending appeal or the possible effects that Plaintiffs' new allegations might have on it.  Moreover, the proposed additions attempt to conflate the UHA and AB 1127 allegations together such that the appeal could potentially be disturbed.  *See, e.g.*, Dkt. No.

Opp. to Motion to File Supplemental Complaint (3:20-cv-02190-DMS-DEB)

101-2 ¶ 1 (incorporating all allegations from the operative complaint); *id.* ¶ 6 (describing Penal Code § 27595 as "California *expand[ing]* its handgun ban to encompass *additional* models of Glock and Glock-style handguns"); *id.* ¶ 10 ("California's decision to reach beyond the UHA's handgun ban to prohibit additional, commonly used handgun models is no more constitutional than its decision to enact that UHA's ban in the first place.").

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") Rule 15(d) permits a court "on just terms" to allow service of a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  For amending pleadings with allegations that existed at the time the complaint was filed, FRCP 15(a)(2) provides that courts should "freely give leave when justice so requires."

Courts have placed reasonable limits on when supplementation or amendment is appropriate.  "The standard for granting leave to file a supplemental complaint under Rule 15(d) is the same as the standard for granting leave to file an amended complaint under Rule 15(a)." *Martin v. Naval Crim. Investigative Serv., (NCIS)*, No. 10CV1879WQH MDD, 2012 WL 1570840, at *3 (S.D. Cal. May 3, 2012). Both kinds of motion can be denied where there is "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1213 (S.D. Cal. 2023) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962), and applying the factors to motion to supplement).

Courts also consider whether "permitting the plaintiffs to supplement their complaint" would "serve to promote judicial efficiency, the goal of Rule 15(d)" and whether there are "'technical obstacles' to plaintiffs bringing a new, separate

6

action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

**ARGUMENT**

Plaintiffs' Motion for Leave to Serve a Supplemental Complaint should be denied because (1) the motion appears driven by bad-faith motives insofar as it attempts to evade the Southern District's local rules on relating cases; (2) the request seeks to introduce a brand-new claim regarding the constitutionality of a distinct California statute that is not part of the UHA that would not promote judicial efficiency; (3) Plaintiffs acted with undue delay in making the request; and (4) Defendants will be prejudiced.

*First*, supplemental pleadings can be denied if there is "bad faith or dilatory motive on the part of the movant." *Foman*, 371 U.S. at 182.  Here, it appears that Plaintiffs are using this request as an end-run around their Notice of Related Cases in *Jaymes* not being granted.  *See* Notice of Related Case, *Jaymes*, No. 3:25-cv-02711-GPC-DEB, Dkt. No. 2.  Under Local Rule 40.1(g), if a party objects to the Notice of Related Cases, as the Defendants did in *Jaymes*, then "judges assigned to the cases identified by counsel as related will decide if the cases are related within seven (7) days after the response is due."  If there is not "complete agreement by the judges assigned to the cases identified as related, no low number transfer will occur."  *Id.*  After Defendants objected to the Notice of Related Case, Objection, *Jaymes*, No. 3:25-cv-02711-GPC-DEB (S.D. Cal. Oct. 21, 2025), Dkt. No. 5, no such transfer occurred, meaning that the Notice of Related Cases was denied.  Plaintiffs then voluntarily dismissed their suit in April 2026, shortly after this Court granted Plaintiffs' unopposed motion to file an amended complaint that added the NRA as a plaintiff.  Order Granting Joint Motion to Dismiss, *Jaymes*, No. 3:25-cv-02711-GPC-DEB (S.D. Cal. Apr. 13, 2026), Dkt. No. 31.

Plaintiffs' request to now insert the same allegations and claim from *Jaymes* into this case appears to be an attempt to circumvent the *Jaymes* court's decision

7

not to relate the cases, as well as the Southern District's local rules on notices of related cases.  CivLR 40.1(f), (g).  "Courts have been particularly critical of proposed amendments that appear to 'game' the system." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013); *c.f. Young v. Trump*, 506 F. Supp. 3d 921, 934 (N.D. Cal. 2020) (denying movant's motion to transfer in part because request appeared motivated by forum shopping, where the proposed transferee court had ruled in movant's favor in another case).  Plaintiffs' motion should likewise be denied so that their efforts to evade the local rules regarding relating cases are not rewarded.[2]

*Second*, Plaintiffs' attempt to shoehorn their *Jaymes* claim into this action does not "promote judicial efficiency" and there are no "technical obstacles" to Plaintiffs bringing a separate action.  *Neely*, 130 F.3d at 402.  In *Neely*, the Ninth Circuit affirmed a denial of a motion to supplement a complaint.  *Id.*  "[B]oth the original suit and the supplemental complaint sought to challenge Arizona's parental consent law" related to abortions.  *Id.*  However, the supplemental complaint challenged *a different statute* than the one that had been challenged in the original suit, so the Ninth Circuit ruled that the supplemental complaint "involved a new and distinct action that should have been the subject of a separate suit."  *Id.* (supplemental pleadings "cannot be used to introduce a 'separate, distinct and new cause of action'").  The Ninth Circuit held supplementation would not "promote judicial efficiency" and that there were no "technical obstacles" to a separate action.  *Id.*[3]

---

[2] Some have suggested this specific local rule was implemented precisely to avoid forum shopping by plaintiffs challenging California firearm laws. *See, e.g.*, Greg Moran, *Revised San Diego court rule addresses quirk that some said allowed 'judge shopping' in gun cases*, S.D. Tribune (updated May 16, 2023), https://www.sandiegouniontribune.com/2023/05/15/revised-san-diego-court-rule-addresses-quirk-that-some-said-allowed-judge-shopping-in-gun-cases/.

[3] Plaintiffs rely on *Keith v. Volpe* for the proposition that new claims can be added so long as they bear "some relation to the claims set form in the original pleading."  858 F.3d 467, 474 (9th Cir. 1988); Dkt. No. 101-1 at 2.  However, *Keith*
(continued…)

Opp. to Motion to File Supplemental Complaint (3:20-cv-02190-DMS-DEB)

The present motion is similar to the motion to supplement in *Neely*; Plaintiffs are improperly seeking to add a different statute to its existing case merely because Plaintiffs want to challenge both statutes based on the Second Amendment.  But there are many pending Second Amendment cases challenging the constitutionality of various California firearm laws; plaintiffs in these cases should not be permitted to tack on challenges to new, distinct statutes merely on the theory that they all raise Second Amendment concerns.  This case currently concerns the constitutionality of two UHA safety feature requirements for new semiautomatic pistol models to be sold at retail in the State.  Plaintiffs admit this: "Plaintiffs brought this action to challenge California's Unsafe Handgun Act."  Dkt. No. 101-2 ¶ 23.  Yet, Plaintiffs' proposed supplement concerns a different statutory provision that is not part of the UHA and was enacted to accomplish a different public-safety objective: preventing the proliferation of machineguns, a particularly dangerous and illegal class of weapons.  *See* Penal Code § 27595(a).  If Plaintiffs are permitted to supplement the complaint, resolution of this action would therefore involve consideration of different legislative records, different facts, and potentially some different questions of law than those posed by the current complaint.  Therefore, supplementation is inappropriate here.  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Contrary to Plaintiffs' claim, this supplemental complaint would not "serve[] Rule 15(d)'s core purpose of judicial efficiency."  Dkt. No. 101-1 at 4; *see also Neely*, 103 F.2d at 402.  Plaintiffs argue that supplementing the *Renna* complaint would avoid the filing of a separate lawsuit.  But that is completely backwards; a subset of these Plaintiffs *already filed* the separate *Jaymes* lawsuit regarding AB 1127,

was decided before *Neely* and *Neely* distinguished its case from *Keith* in part because *Keith* involved supplemental pleadings that were "alleged to be specific attempts by the defendants to contravene the courts' earlier rulings."  *Neely*, 130 F.3d at 403.  Neither *Neely* nor this case involves supplemental pleadings concerning attempts to avoid rulings within the same case.

9

forcing Defendants to undertake six months of case preparation and litigation, only for Plaintiffs to voluntarily dismiss the action.  Supplementation to this case versus filing another separate action would involve virtually the same amount of work given the differences in the allegations.  Supplementation also creates the potential to disturb the long-pending Ninth Circuit appeal and potentially unnecessarily prolong this action following the eventual appellate ruling.  Finally, there are not "technical obstacles" to the filing of a separate action, as Plaintiffs proved in filing *Jaymes*, and which was dismissed without prejudice.  *Neely*, 103 F.2d at 402; Order Granting Joint Motion to Dismiss, *Jaymes*, No. 3:25-cv-02711-GPC-DEB, Dkt. No. 31.

*Third*, Plaintiffs acted with undue delay in seeking to supplement the complaint.  *See Foman*, 371 U.S. at 182.  Plaintiffs filed this motion the very day that AB 1127's sales prohibition became operative—over eight months after its enactment.  As evidenced from a large subset of the Plaintiffs filing in *Jaymes* three days after AB 1127 was signed into law, Plaintiffs were aware of the allegations that form the basis of their arguments related to the constitutionality of AB 1127 back in October 2025.  These months of delay, for which Plaintiffs offer no explanation, show that this request to supplement is unduly delayed.  *Peterson v. California*, No. 1:10-CV-01132-SMS, 2011 WL 3875622, at *3 (E.D. Cal. Sept. 1, 2011) ("A moving party's inability to acceptably explain its delay may also indicate that the delay was undue").  "[W]hen a plaintiff moves to supplement a complaint long after he or she filed the initial complaint, he or she must adequately explain why the court's denying the motion to supplement would be unjust." *Id.* at *5 (E.D. Cal. Sept. 1, 2011) (citing *Glatt v. Chicago Park District,* 87 F.3d 190, 193 (7th Cir.1996)); *see also Worley v. Bristol*, No. 2:25-CV-00083-YY, 2026 WL 2013945, at *1 (D. Or. Apr. 29, 2026) (finding undue delay for supplementation because plaintiff waited five months after he had knowledge of the basis for the supplement); *Manriquez v. City of Phoenix*, 654 F. App'x. 350, 351 (9th Cir. 2016) (holding plaintiffs "failed to exercise

reasonable diligence" by waiting three months after they had knowledge of the basis of the amendment).

*Finally*, Defendants may suffer undue prejudice from this supplementation or alternative request for amendment. *See Foman*, 371 U.S. at 182. Defendants' appeal of the preliminary injunction is still pending before the Ninth Circuit and the attempt to add a claim that builds on the allegations and theories currently the subject of that appeal may disrupt such proceedings. *See, e.g.*, Dkt. No. 101-2 ¶ 1, 6, 10. Plaintiffs' motion attempts to link the UHA and AB 1127, inaccurately describing AB 1127 as a so-called "expansion of California's ban on common semiautomatic handguns." Dkt. No. 101-1 at 4. With this purported connection, Plaintiffs may try to improperly interrupt the pending appeal either to avoid a ruling on the appeal as currently submitted or to improperly insert their AB 1127 change into the pending appellate proceedings. Any such attempt would likely cause needless expenditure of judicial and party resources, and could delay the Ninth Circuit's decision on issues that have been fully briefed and argued for years. Unlike in their request to amend to add the NRA, Dkt. No. 99, Plaintiffs make no assurances here that the supplementation would leave the appeal undisturbed. Likewise, Plaintiffs' related request in the alternative for leave to amend unduly prejudices Defendants, who agreed to Plaintiffs' last request for amendment with the understanding that Plaintiffs did "not wish to disturb the pending appeal" and had promised they would not use that amendment to disrupt the appeal. Dkt. No. 99 at 1. Now, Plaintiffs' new motion to supplement, or amend, threatens to do just that.

///
///
///
///
///
///

11

**CONCLUSION**

For the foregoing reasons, Defendants request the Court deny Plaintiffs' Motion for Leave to Serve a Supplemental Complaint.

Dated: July 24, 2026                    Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General


*/s/ Sabrina T. McGraw*
SABRINA T. MCGRAW
Deputy Attorney General
*Attorneys for Defendants*
*Attorney General Rob Bonta and*
*Director Allison Mendoza, in their*
*official capacities*

12