Benbrook Law Group, PC
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lana Rae Renna; Danielle Jaymes; Laura Schwartz; Michael Schwartz; Robert Macomber; Clint Freeman; John Klier; John Phillips; Cheryl Prince; Darin Prince; PWGG, L.P.; North County Shooting Center, Inc.; Gunfighter Tactical, LLC; Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens Committee for the Right to Keep and Bear Arms; Second Amendment Foundation; and National Rifle Association of America,<br><br>                    Plaintiffs,<br><br>          v.<br><br>Robert Bonta, Attorney General of California; and Allison Mendoza, Director of the California Department of Justice Bureau of Firearms,<br><br>                    Defendants. | Case No.: 20-cv-2190-DMS-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Fed. R. Civ. P. 15(d)**<br><br>Date: September 4, 2026<br>Time: 1:30 p.m.<br>Courtroom 13A (13th Floor)<br>Hon. Dana M. Sabraw |

# TABLE OF CONTENTS

Introduction ................................................................................................. 1

Background .................................................................................................. 2

    A.    Statutory And Regulatory Background ................................................ 2

    B.    Relevant Procedural History .................................................... 5

Argument ..................................................................................................... 7

    A.    Plaintiffs Will Prevail On The Merits Because California's Glock Ban Violates The Second Amendment ....................................................... 7

        1.    Plain Text: § 27595 Implicates The Second Amendment, Since Glock Pistols Are "Arms" ......................................................... 8

        2.    California Cannot Show That The Glock Ban Is Consistent With The Nation's Historical Tradition Of Firearms Regulation ..... 10

    B.    The Remaining Preliminary Injunction Factors Favor Plaintiffs ....... 13

    C.    The Court Should Waive Bond Or Require Only Nominal Security. 14

Conclusion ................................................................................................. 14

Certificate of Service ................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Bev. Ass'n v. City & Cnty. of San Francisco*,
916 F.3d 749 (9th Cir. 2019)...................................................................................13

*B&L Prods., Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024).....................................................................................9

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023).............................................................................7, 13

*Boland v. Bonta*,
662 F. Supp. 3d 1077 (C.D. Cal. 2023).......................................................................1

*Chamber of Com. of the U.S. v. Bonta*,
62 F.4th 473 (9th Cir. 2023).......................................................................................7

*City of South Pasadena v. Slater*,
56 F.Supp.2d 1106 (C.D. Cal. 1999).........................................................................14

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..........................................................................9, 10, 11, 13

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014)..................................................................................13

*Gazzola v. Hochul*,
88 F.4th 186 (2d Cir. 2023).........................................................................................9

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ...............................................................................11

*McDonald v. City of Chicago, Ill.*,
561 U.S. 742 (2010) ...........................................................................................7, 11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .............................................................................................passim

*Ortega v. Grisham*,
148 F.4th 1134 (10th Cir. 2025)..................................................................................9

*Reese v. ATF*,
127 F.4th 583 (5th Cir. 2025)......................................................................................9

*Renna v. Bonta*,
667 F. Supp. 3d 1048 (S.D. Cal. 2023) .............................................................passim

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013)..................................................................................13

*Save Our Sonoran, Inc. v. Flowers*,
408 F.3d 1113 (9th Cir. 2005)..................................................................................14

*United States v. Hemani*,
146 S. Ct. 1677 (2026) .........................................................................................8, 10

*United States v. Knipp*,
138 F.4th 429 (6th Cir. 2025)......................................................................................9

*United States v. Rahimi*,
602 U.S. 680 (2024)...................................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................................................................7

*Wolford v. Lopez,*
  146 S. Ct. 2032 (2026) ...............................................................................passim

*Zepeda v. U.S. I.N.S.,*
  753 F.2d 719 (9th Cir. 1983) ................................................................................13

**Statutes**

18 U.S.C. § 3571 ...........................................................................................................5

18 U.S.C. § 922(o) ........................................................................................................5

18 U.S.C. § 924(a)(2) ....................................................................................................5

26 U.S.C. § 5845(b) .......................................................................................................5

26 U.S.C. § 5861 ...........................................................................................................5

26 U.S.C. § 5871 ...........................................................................................................5

Cal. Penal Code § 16880(b) ...........................................................................................5

Cal. Penal Code § 16885(a) ...........................................................................................3

Cal. Penal Code § 16885(b) ...........................................................................................3

Cal. Penal Code § 17015 ...............................................................................................5

Cal. Penal Code § 27595(a) ....................................................................................1, 3

Cal. Penal Code § 27595(b)(1)–(3) ...............................................................................4

Cal. Penal Code § 27595(c)(3), (c)(8), (c)(9) ...............................................................3

Cal. Penal Code § 32015(a) ...........................................................................................2

Cal. Penal Code § 32625(a) ...........................................................................................5

**Other Authorities**

*Annual Firearms Manufacturing and Export Report* at 15, ATF (2024), available at
  https://www.atf.gov/resource-center/data-statistics ................................................12

ATF, *Firearms Commerce in the United States*, at 3 (2024), available
  at: https://perma.cc/P689-LX24 .............................................................................12

Cal. Sen. Comm. Public Safety, AB 1127, *Firearms: converter pistols*, at 8 (June 19,
  2025), available at: https://perma.cc/6MVM-CY22 .................................................5

Chang, *Glock Generation Differences: Gen 3, Gen 4, Gen 5 [Guide]*, PEW
  TACTICAL (July 6, 2024), https://perma.cc/UGC7-MDJR .....................................2

Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13,
  2025), https://perma.cc/84HV-PTTZ .....................................................................12

*Firearm Production in the United States, NSSF*, at 2 (2023), https://perma.cc/P6A8-
  DZK2.........................................................................................................................11

*Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE.............................................12

Glock, *Glock Brand*, https://perma.cc/2UWY-EARR...............................................12

*How Glock became America's gun*, CBS NEWS (Sep. 15,
  2013), https://perma.cc/J5E8-42UA........................................................................11

Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created
  the Dominant Design for Handguns* (May 22, 2025) ...............................................4

Metesh, *Top Selling New Guns of 2024*, GUNS & AMMO (Jan. 14, 2025),
  https://perma.cc/8A5Z-5VQN..................................................................................12

**Regulations**

*Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022) .................................................................................. 12

**Constitutional Provisions**

U.S. CONST. amend. II ................................................................................................ 7

**INTRODUCTION**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. The right of a peaceable individual to possesses—and, as an incident, to acquire—a firearm falls squarely within that constitutional guarantee. *See Wolford v. Lopez*, 146 S. Ct. 2032, 2043–44 (2026) (explaining that the plain-text inquiry asks whether the challenged law applies to "the people," concerns "Arms," and restricts the "keep[ing]" or "bear[ing]" of arms). Once that threshold is satisfied, the government bears the burden of demonstrating that any restriction upon that right "is consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *see also Wolford*, 146 S. Ct. 2032 at 2044–45. Plaintiffs' operative Fourth Amended Complaint alleges that California's UHA violated the Second Amendment by banning the sale of handguns that are in common use for self-defense and other lawful purposes. This Court held that several provisions of the UHA likely violate the Second Amendment. *See Renna v. Bonta*, 667 F. Supp. 3d 1048, 1060 (S.D. Cal. 2023). The Court concluded that those provisions banned many new models of semiautomatic handguns that are in common use. *Id*. at 1063. And it specifically found that certain Glock handgun models are in common use. *See id*. (discussing the Glock 43 and Glock 17 Gen 5); *see also Boland v. Bonta*, 662 F. Supp. 3d 1077 (C.D. Cal. 2023) (similarly holding that the UHA's requirements likely violate the Second Amendment).

In the wake of this Court's holding, California enacted Assembly Bill 1127, which expands California's handgun ban to (1) encompass *additional* models of Glock and Glock-style handguns that were exempted from the UHA (certain models of Gen3 Glock handguns were grandfathered-in and thus appear on the Roster) and (2) creates a separate ban on Glock handguns already proscribed by the UHA. *See* Cal. Penal Code § 27595(a). All of these models are "Arms" and thus are constitutionally protected. Further, they are in common use. Indeed, they are among the most popular

firearms in the nation. Yet if § 27595 is enforced, Californians will have no practical way to acquire them.

California's decision to create a new and separate ban in § 27595 to prohibit additional, commonly possessed handgun models is no more constitutional than the UHA ban already enjoined by this Court. Section 27595's cruciform-trigger-bar ban is flagrantly unconstitutional and, like the rest of the laws challenged in this suit, seeks to narrow the selection of ordinary handguns available to peaceable Californians. Plaintiffs respectfully request that the Court enter a preliminary injunction enjoining § 27595's enforcement and allow the injunction to take effect to maintain the status quo ante pending the ultimate resolution of the case on the merits.

## BACKGROUND

### A.    Statutory And Regulatory Background.

Plaintiffs brought this action to challenge California's Unsafe Handgun Act. The UHA "prohibit[s] the manufacture and retail sale in California of a large segment of modern handguns that are otherwise in common use throughout the United States for self-defense and other lawful purposes." *See Renna*, 667 F. Supp. 3d at 1054, *appeal pending*, No. 23-55367 (9th Cir.). It does so by prohibiting retail sales of all handgun models except those models included on a "roster" maintained by the California Department of Justice. *See* Cal. Penal Code § 32015(a).

The roster excludes many of the most popular new handguns in the Nation. Older versions of those firearms, however, are often "grandfathered" in and remain legal for sale. *See Renna*, 667 F. Supp. 3d at 1056 (describing 2007 and 2013 amendments). Relevant here, the roster excludes fourth- and fifth-generation Glock handguns. But it includes earlier, third-generation Glock handguns, which are handgun models that Glock began producing between 1998 and 2010. *See* Chang, *Glock Generation Differences: Gen 3, Gen 4, Gen 5 [Guide]*, PEW TACTICAL (July 6, 2024), https://perma.cc/UGC7-MDJR. The Roster includes other cruciform trigger bar handguns as well, including several of the Shadow Systems 920 line.

On April 3, 2023, this Court preliminarily enjoined several provisions of the UHA. It found that those provisions are likely unconstitutional because they ban new models of semiautomatic handguns that are in common use, including fourth- and fifth-generation Glocks. *See Renna*, 667 F. Supp. 3d at 1060. The Court concluded that those provisions banned many new models of semiautomatic handguns that are in common use. *Id*. at 1063. And it specifically found that certain Glock handgun models are in common use. *See id*. (discussing the Glock 43 and Glock 17 Gen 5).

On October 10, 2025, California enacted Assembly Bill 1127, which provides that, effective July 1, 2026, licensed firearms dealers "shall not sell, offer for sale, exchange, give, transfer, or deliver any semiautomatic machinegun-convertible pistol." Cal. Penal Code § 27595(a). Penal Code § 16885(a) defines a "semiautomatic machine-gun convertible pistol" as:

> [A]ny semiautomatic pistol with a cruciform trigger bar that can be readily converted by hand or with common household tools … into a machinegun by the installation or attachment of a pistol converter as a replacement for the slide's backplate without any additional engineering, machining, or modification of the pistol's trigger mechanism.

Cal. Penal Code § 16885(a).

To the best of Plaintiffs' knowledge, that definition encompasses all Glock semiautomatic handguns and any similar handguns built using a cruciform trigger bar ("Glock-style handguns"). Before AB 1127, certain Glock models could be sold in California because they were grandfathered onto California's handgun roster. While § 27595(a) contains a few exemptions not relevant to this challenge,[1] for ordinary, peaceable Californians, the law effectively closes the door on traditional commercial sales of these firearms. These models are now banned. AB 1127 is therefore a total

---

[1] Specifically, § 27595 exempts from coverage "private party to private party transaction[s] conducted through a licensed firearms dealer," subd. (c)(3), sales to law enforcement officers or transfers for a few discrete purposes, subd. (c)(9), and permits transfers "to any forensic laboratory or forensic laboratory employee, while on duty and acting within the scope and course of employment," subd.(c)(8). AB 1127 further excludes "hammer-fired semiautomatic pistol[s]" as well as "striker-fired semiautomatic pistol[s] lacking a cruciform trigger bar." Cal. Penal Code § 16885(b).

Glock ban. Violations may be punished by fine and the suspension or revocation of the offending dealer's license. *See id*. § 27595(b)(1)–(3).

All factory stock models of Glock pistols have a cruciform trigger bar. This includes Glock's "Gen 6" and "V series" pistols, which were introduced into the U.S. market in late 2025. The cruciform trigger bar is integral to Glock's design. Among other things, it ensures that a Glock pistol will not discharge accidentally if dropped.

The cruciform trigger bar was present in Glock's patented design by 1982. *See* Koppenhagen et al., *The Genesis of the Glock Pistol: How Gaston Glock Created the Dominant Design for Handguns* (May 22, 2025). It has thus been a feature of Glock pistols since they were first sold in the U.S. in 1986.

When Glock's Gen 3 patent expired in 2020, many companies began producing handguns based on its exceedingly popular design. These pistols are often referred to as Glock-style pistols. Common models include the Palmetto State Armory Dagger, the Ruger RXM, and many Shadow Systems handguns. Factory stock versions of these Glock-style pistols are also designed with a cruciform trigger bar.

Because factory stock Glock and Glock-style pistols have a cruciform trigger bar, they satisfy AB 1127's definition of "machine gun convertible pistol" if they are deemed to be "readily convert[ible]" into a machine gun as described in § 16885(a). There is a substantial likelihood that virtually all Glock and Glock-style pistols will be deemed to qualify as "readily convert[ible]."

Because the paradigmatic handguns that meet California's definition of a "semiautomatic machine-gun convertible pistol" were patented and initially manufactured by Glock, Plaintiffs will refer, at times, to the banned firearms as Glocks or Glock-style handguns. For the avoidance of doubt, Plaintiffs challenge the restriction as to *all* semiautomatic pistols with cruciform trigger bars that are banned by California under § 27595(a).

A pistol converter is a device that can be attached to a pistol which enables the pistol to fire automatically, meaning it will fire more than one round by a single

function of the trigger. *See* Cal. Penal Code § 17015. Put differently, a pistol converter is a device that transforms a semiautomatic pistol into a machinegun.

AB 1127's author argued that this ban is necessary because Glocks' design allows them to be modified to fire automatically using pistol converters. *See* Cal. Sen. Comm. Public Safety, AB 1127, *Firearms: converter pistols*, at 8 (June 19, 2025), available at: https://perma.cc/6MVM-CY22; *see also* Cal. Penal Code § 17015. But under California law, pistol converters are already banned because they are defined as machineguns. *See* Cal. Penal Code § 16880(b); *id.* § 32625(a). That prohibition is not at issue here.

These devices are also banned under federal law, which defines "machinegun" to include pistol converters. *See* 26 U.S.C. § 5845(b). With exceptions not relevant here, federal law prohibits the possession, manufacture, transfer, or receipt of a machinegun. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5861. A violation of these provisions is a felony punishable by up to ten years' imprisonment and a fine of up to $250,000. *See* 18 U.S.C. § 924(a)(2); 26 U.S.C. § 5871; 18 U.S.C. § 3571.

**B.    Relevant Procedural History.**

On October 31, 2022, Plaintiffs filed their Third Amended Complaint alleging that the UHA violates the Second Amendment because it bans the sale of handguns that are in common use for self-defense and other lawful purposes. *See* ECF 67.

On April 3, 2023, this Court issued a preliminary injunction ruling holding that several provisions of the UHA likely violate the Second Amendment. *See Renna*, 667 F. Supp. 3d at 1060.

On March 27, 2026, Plaintiffs filed the operative, Fourth Amended Complaint, which added the National Rifle Association of America as a plaintiff. *See* ECF 99.

On July 1, 2026, Plaintiffs filed a motion for leave to file a supplemental complaint to add a claim challenging the constitutionality of § 27595(a). That motion is set for hearing August 7, 2026. *See* ECF 101.

The Individual Plaintiffs are law-abiding adult citizens of the United States who reside in California and who are eligible under federal and California law to possess, acquire, purchase, and receive firearms, including handguns. But for § 27595, these Plaintiffs would acquire Glock and Glock-style semiautomatic pistols in the future for lawful purposes, including self-defense. The Glock ban prevents them from doing so. Jaymes Decl., ¶¶ 2–3; M. Schwartz Decl., ¶¶ 2–3; Klier Decl., ¶¶ 2–3; J. Phillips Decl., ¶ 7; C. Prince Decl., ¶¶ 2–3; D. Prince Decl., ¶ 5.

Plaintiffs also include firearms dealers who brought this action on behalf of their customers and would-be customers who are similarly situated to Individual Plaintiffs, who are themselves customers of these dealers. *See Craig v. Boren*, 429 U.S. 190, 192–97 (1976). As relevant to this motion, Plaintiffs PWG and North County Shooting Center ("NCSC") are licensed firearms retailers in San Diego County. In the ordinary course of its business, PWG and NCSC sell, offer for sale, receive, transfer, and maintain inventory of semiautomatic handguns (including Glock pistols and other Glock-style pistols that are commonly possessed and used by law-abiding citizens for lawful purposes), including self-defense in the home. These retailers have sold thousands of Glock and Glock-style handguns to law-abiding customers since. In response to § 27595, PWG and NCSC were forced to stop selling or transferring Glock and Glock-style handguns. But for their reasonable fear of prosecution under § 27595, Plaintiffs PWG and NCSC would continue selling those handguns, which represented a substantial category of popular, constitutionally protected handguns. PWG and NCSC face a credible threat of enforcement, including criminal penalties and adverse licensing consequences, if they continue to sell, offer for sale, receive, or transfer covered pistols after the ban becomes operative. PWG and NCSC are members of the Institutional Plaintiff organization. Phillips Decl., ¶¶ 2–6 & 8; Prince Decl., ¶¶ 2–4 & 6.

Several organizations have also joined this case as Plaintiffs (including Firearms Policy Coalition, Inc.; San Diego County Gun Owners PAC; Citizens

Committee for the Right to Keep and Bear Arms; Second Amendment Foundation; and National Rifle Association of America (collectively, the "Institutional Plaintiffs")). The Institutional Plaintiffs have members who would buy and/or sell handguns banned by § 27595, but for § 27595 and Defendants' enforcement thereof. The Individual Plaintiffs and Dealer Plaintiffs are members of the Institutional Plaintiff organizations. Jaymes Decl., ¶ 4; M. Schwartz Decl., ¶ 4; Klier Decl., ¶ 4; Phillips Decl., ¶ 7; C. Prince Decl., ¶ 4; D. Prince Decl, ¶ 5; *see also* ECF 71-3, Combs Decl., ¶ 10 (FPC); ECF 71-4, Gottlieb Decl., ¶¶ 3–4 (CCRKBA and SAF); ECF 71-7, M. Schwartz Decl., ¶ 4 (SDCGO).

## ARGUMENT

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); and *Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 481 (9th Cir. 2023)).

**A.      Plaintiffs Will Prevail On The Merits Because California's Glock Ban Violates The Second Amendment.**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. This fundamental right is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010).

To determine whether a firearm regulation is constitutional under *Bruen*, the analysis begins with whether the Second Amendment's plain text covers an individual's conduct; if so, the Constitution presumptively protects that conduct. *See Bruen*, 597 U.S. at 22–24. If that requirement is satisfied, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical

tradition of firearm regulation." *Id.* at 24. In other words, it is California's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (cleaned up); *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain [the State's] statute. That is respondents' burden.").

When considering a government's proffered historical analogues, courts must first look at "the number of jurisdictions in which they were adopted" and "the extent to which they were well-accepted." *Wolford*, 146 S. Ct. at 2044. And because the Second Amendment analysis "seek[s] the general understanding of that codified right," it follows that "[a]n outlier legal rule adopted in a few locales is not enough." *Id.* at 2050. A historical analogue must be "widespread, well-known, and widely accepted," *id.* at 2053, but even then, it must also be sufficiently tailored to the modern conduct the government seeks to regulate: The analogue must be "relevantly similar" to a modern law based on "how" and "why" they restrict Second Amendment protected conduct. *Id.* at 2044; *see Bruen*, 597 U.S. at 29. "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld. Conversely, the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *United States v. Hemani*, 146 S. Ct. 1677, 1686 (2026). *Hemani* provides a case in point. The Court found that "the government's analogy fails" because "the historical laws on which it relies targeted different kinds of people, did so for different reasons, and operated in different ways." *Id.* at 1694.

California cannot meet its burden here.

### 1. Plain Text: § 27595 Implicates The Second Amendment, Since Glock Pistols Are "Arms."

The threshold inquiry, per *Bruen*, is whether § 27595 restricts conduct covered by the Second Amendment's plain text. *Wolford* laid out three sub-parts: the regulation must 1) apply to "the people," 2) concern "Arms," and 3) restrict either the

"keep[ing]" or the "bear[ing]" of arms. 146 S. Ct. at 2043–44. Here, the only questions relate to the second and third subparts.

The Second Amendment's plain text covers "all instruments that constitute bearable arms, *even those that were not in existence at the time of the founding*." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008) (emphasis added). Summarizing its findings from founding-era sources, *Heller* explained that "the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.'" *Id.* at 582. Glock and Glock-style pistols certainly constitute weapons. The Supreme Court in *Wolford* emphasized that "'Arms' … refers to implements used for offense or defense[.]" 146 S. Ct. at 2041. Again, Glock and Glock-style pistols fit squarely into this definition.

Third, § 27595 restricts the "keep[ing]" or "bear[ing]" of arms. The Supreme Court has explained that "keeping" means "possessing" and "bearing" means "carrying." *Wolford*, 146 S. Ct. at 2043–44 (citing *Bruen*, 597 U.S. at 32–33). If citizens cannot lawfully purchase a type of firearm, their right to "keep" such arms is necessarily infringed. On that score, the Ninth Circuit has held that, textually, the right to "keep and bear" firearms includes the right to acquire them. *See B&L Productions, Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024) ("[U]nless the right to *acquire* firearms receives some Second Amendment protection, the right to keep and bear firearms would be meaningless."); *see also Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025) ("[T]he right to 'keep and bear arms' surely implies the right to purchase them." (citation omitted)); *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025) (explaining that "[c]ommon sense dictates that the right to bear arms requires a right to acquire arms"); *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023); *United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025). As this Court put it when considering the UHA, "Plaintiffs' ability to commercially purchase off-roster semiautomatic handguns falls within the plain text of the Second Amendment and is presumptively protected." *Renna*, 667 F. Supp. 3d at 1061. So too with California's Glock Ban.

As a result, the Second Amendment "presumptively protects" Plaintiffs' right to acquire arms banned by § 27595. *Bruen*, 597 U.S. at 24. Stated another way, California's Glock ban is "presumptively unconstitutional." *Wolford*, 146 S. Ct. at 2044.

### 2. California Cannot Show That The Glock Ban Is Consistent With The Nation's Historical Tradition Of Firearms Regulation.

Under *Bruen*, the burden now shifts to California. It must show that § 27595 is "consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 34. "[W]hen the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Bruen*, 597 U.S. at 24). And it must do so by offering persuasive legal history. *See Bruen*, 597 U.S. at 25; *id.* at 25 n.6 (courts "decide a case based on the historical record compiled by the parties"); *Hemani*, 146 S. Ct. at 1687 (similar).

But as *Heller* has made clear, the *only* historical justification that could justify banning the possession of a firearm is that the arm is both "dangerous and unusual." 554 U.S. at 627 (quotation marks omitted). Arms that are "in common use" are, by definition, neither. *Id*. (quotation marks omitted). Thus, in *Heller*, the Supreme Court held that the Second Amendment "protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627).

A law that bans the sale of—and correspondingly prevents citizens from acquiring—a weapon in common use violates the Second Amendment. Semiautomatic handguns with cruciform trigger bars are not different from *any* other type of semiautomatic handgun in a constitutionally relevant way.

The Supreme Court has already held that handguns are in common use and cannot be banned. *See Heller*, 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition

of their use is invalid."). Semiautomatic handguns, including those with a cruciform trigger bar, therefore, cannot be banned.

"[T]he vast majority of [handguns] … are semi-automatic." *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *see 2021 Firearms Retailer: Survey Report*, NSSF, at 9 (2021), https://perma.cc/N59Q-6UJJ (over 80% of handguns sold in the United States in 2020 were semiautomatic pistols); *Firearm Production in the United States, NSSF*, at 2 (2023), https://perma.cc/P6A8-DZK2 (over 80% of handguns produced in the United States between 1991 and 2021 were semiautomatic pistols). Indeed, four times the Supreme Court has reviewed government attempts to restrict handguns. And four times, it has struck down the challenged law. *Heller*, 554 U.S. 570; *McDonald*, 561 U.S. 742 (Chicago's handgun ban); *Bruen*, 597 U.S. 1 (New York's public-carry handgun licensing regime); *Wolford*, 146 S. Ct. 2032 (Hawaii's concealed-carry handgun restriction). In the first three decisions, the Court described handguns as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629; *see McDonald*, 561 U.S. at 767–68; *Bruen*, 597 U.S. at 21–22 (both quoting *Heller*). *Wolford*, also quoting *Heller*, described handguns as "overwhelmingly chosen by American society" for self-defense. 146 S. Ct. at 2041 (quoting *Heller*, 554 U.S. at 628) (internal quotations omitted). The Supreme Court has been more than clear: handguns fall within the scope of the Second Amendment protections.

There is no Glock exception to the Second Amendment. Even considered as their own group (which, under *Heller*, they should not be), the banned handguns are constitutionally protected. They are also unquestionably in common use for lawful purposes. In fact, they are among the most popular handguns in the Nation. *See, e.g.*, *How Glock became America's gun*, CBS NEWS (Sep. 15, 2013), https://perma.cc/J5E8-42UA. Analysts estimate that, as of 2020, Glock held nearly 65% of the U.S. market for handguns. According to one source, three Glock handgun models made the top-25 for new guns sold in 2024, placing fourth, seventh,

and twenty-second. *See* Metesh, *Top Selling New Guns of 2024*, GUNS & AMMO (Jan. 14, 2025), https://perma.cc/8A5Z-5VQN. ATF has observed that Glocks are "popular for civilian use." *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022).[2]

Government data confirm the popularity of these types of handguns. For example, in 2024, Glock manufactured 419,510 handguns in the United States. *See Annual Firearms Manufacturing and Export Report* at 15, ATF (2024), available at https://www.atf.gov/resource-center/data-statistics. Of those, just 54,932 were exported. *Id.* at 201. It follows that, in 2024 alone, Glock manufactured 364,578 handguns for sale in the United States.

That is to say nothing of imports. In 2021, 5,263,341 handguns were imported into the United States. *See* ATF, *Firearms Commerce in the United States*, at 3 (2024), available at: https://perma.cc/P689-LX24. Of those, 1,688,941 were imported from Austria, *id.* at 5, where many Glocks are manufactured, *see* Glock, *Glock Brand*, https://perma.cc/2UWY-EARR (last visited September 19, 2025). It is therefore likely that, in 2021 alone, Glock imported hundreds of thousands of handguns for sale in the United States.

Glock and Glock-style pistols are generally lawful to sell, acquire, and possess throughout the United States.[3] Given the overwhelming evidence that Glock pistols are in common use, California cannot demonstrate its ban is consistent with the Nation's historical tradition of firearm regulation.

Section 27595 violates the constitutional right to keep and bear arms.

---

[2] Glock pistols also are widely used by law enforcement officers in the United States. *See* Clouse, *Is Glock Still the King of Semi-auto Pistols?*, LIBERTY SAFE (June 13, 2025), https://perma.cc/84HV-PTTZ ("[B]etween 40% and 65% of US law enforcement agencies … provide or specify Glock pistols for their officers."); *Glock History*, GLOCK, https://perma.cc/CLZ5-9ATE ("Over 65% of federal, state and local agencies in the United States have been issued GLOCK pistols."). Police officers on the beat carry firearms for defensive use, just like other citizens.

[3] Since AB 1127's passage, a handful of States (Connecticut, Maryland, Massachusetts, and New York) have taken regulatory or legislative action to mimic California's restriction.

**B.     The Remaining Preliminary Injunction Factors Favor Plaintiffs.**

As the Ninth Circuit explained in the Second Amendment context: "[I]n cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm, … and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction." *Baird*, 81 F.4th at 1040. There is no reason to depart from that conclusion here.

As this Court has observed, "[i]t is well-established that loss of 'the enjoyment of Second Amendment rights constitutes irreparable injury.'" *Renna*, 667 F. Supp. 3d at 1071 (citation omitted). Here, the Plaintiffs cannot purchase Glock pistols and hence exercise their Second Amendment rights. Each day the prohibition remains in effect, Plaintiffs are denied the ability to acquire the firearm they identified for self-defense: "the core lawful purpose" of the Second Amendment. *Heller*, 554 U.S. at 630. Plaintiffs are irreparably harmed.

When the government is a party, the balance-of-equities and public-interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiffs' likelihood of succeeding on their Second Amendment claim "tips the merged third and fourth factors decisively in [their] favor." *Baird*, 81 F.4th at 1042. This is because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Bev. Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (citation omitted).

Conversely, the government "cannot suffer harm from an injunction that merely ends an unlawful practice … ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (the State "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations").

In short, the *Winter* factors unquestionably favor granting a preliminary injunction to preserve Californians' Second Amendment protected rights.

**C.**   **The Court Should Waive Bond Or Require Only Nominal Security.**

Because the State will not suffer monetary hardship and this matter involves a constitutional violation and the public interest, the Court should either waive Rule 65(c)'s bond requirement or impose only a nominal bond. *Renna*, 667 F. Supp. 3d at 1071 (waiving bond); *see Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest litigation"); *City of South Pasadena v. Slater*, 56 F.Supp.2d 1106, 1148 (C.D. Cal. 1999) ("[c]ourts routinely impose no bond or minimal bond in public interest … cases").

**CONCLUSION**

For the reasons set forth above, the Court should enter a preliminary injunction enjoining the enforcement of Penal Code § 27595(a)'s ban on semiautomatic handguns with a cruciform trigger bar and allow the injunction to take effect to maintain the status quo ante pending the ultimate resolution of the case on the merits.

Dated: August 4, 2026                                    Respectfully submitted,


                                                          /s/ Bradley A. Benbrook
                                                          Bradley A. Benbrook
                                                          Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Bradley A. Benbrook
Bradley A. Benbrook