**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LANA RAE RENNA, et al.,

Plaintiffs,

v.

ROBERT BONTA, et al.,

Defendants.

Case No.: 20-cv-02190-DMS-DEB

**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT [ECF No. 101]; DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [ECF No. 107]; AND DENYING DEFENDANTS' EX PARTE APPLICATION TO HOLD MOTION FOR PRELIMINARY INJUNCTION IN ABEYANCE [ECF No. 108]**

Before the Court is Plaintiffs' motion for leave to file a supplemental complaint, (Mot., ECF No. 101-1.) This matter is fully briefed, (*see* Opp'n, ECF No. 103; Reply, ECF No. 105), and suitable for decision without oral argument, (ECF No. 109). Plaintiffs also move for preliminary injunction based on the claim alleged in their supplemental complaint (ECF No. 107), and Defendants filed an ex parte application to hold the motion for preliminary injunction in abeyance or, alternatively, for an extension of time to file their opposition brief pending determination of Plaintiffs' motion to file a supplemental complaint, (ECF No. 108). After Defendants filed their Application, the parties submitted a joint motion to continue Defendants' deadline to file an opposition to Plaintiffs' motion

for preliminary injunction, (ECF No. 110), which the Court granted, (ECF No. 111). Defendants' Application is therefore denied as moot.

For the reasons set forth below, the Court denies Plaintiffs' motion to file a supplemental complaint. Because Plaintiffs' motion for preliminary injunction is based on the supplemental complaint, it too is denied.

## I. BACKGROUND

The background of this case has been previously summarized and need not be repeated here. (*See* Order on Plaintiffs' Motion for Preliminary Injunction, filed April 3, 2023 ("PI Order"); ECF No. 81.) On November 10, 2020, Plaintiffs filed the present action challenging California's Unsafe Handgun Act ("UHA") under the Second and Fourteenth Amendments. (*Id.* at 3, 8.) The UHA regulates the commercial sale of handguns by, among other things, requiring the California Department of Justice ("CDOJ") to maintain a "roster" listing "all of the handguns that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state[.]" Cal. Penal Code § 32015(a). Under the UHA, all handguns are considered "unsafe" and may not be listed on the roster and commercially sold if they lack certain safety features[1] and do not meet firing and drop-safety testing requirements. *Id.* § 32010 (specifying testing and safety feature requirements). Plaintiffs argued that, but for the UHA, they would have available for purchase on the retail market hundreds of modern, state-of-the-art handguns that the State declines to list on the roster because they fail to comply with the requirements

---

[1] Plaintiffs' challenge to the UHA focused on three safety feature requirements, including the chamber load indicator ("CLI") and magazine disconnect mechanism ("MDM"). Cal. Penal Code § 31910(b)(4)-(5). A CLI is a "device that plainly indicates that a cartridge is in the firing chamber." *Id.* § 16380. An MDM is "a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol." *Id.* § 16900. The third challenged feature related to "microstamping" capability. "Microstamping" is a set of "microscopic arrays of characters" that are imprinted onto the cartridge case of each fired round which can be used to "identify the make, model, and serial number of the pistol" used at a crime scene. *Id.* § 31910(b)(6)(A).

of the UHA. (PI Order, at 7.) Plaintiffs further argued that each layer of regulation under the UHA—safety feature and testing requirements, roster fees, and roster removal provisions—operates in tandem to accomplish a sales ban and hastens the dramatic shrinkage of handguns available for purchase in California. (*Id.* at 11.) Thus, Plaintiffs sought to enjoin the entirety of the UHA's roster requirements codified in Cal. Penal Code §§ 31910, 32000(a), and 32015(a), (b)(2).

The Court granted Plaintiffs' motion to enjoin enforcement of the safety feature requirements imposed by the UHA as violative of Plaintiffs' Second Amendment rights, and denied the motion in all other respects. (*See* ECF No. 81.) The Court also stayed the injunction pending appeal. (*Id.* at 30.) Defendants appealed the preliminary injunction Order to the Ninth Circuit on April 14, 2023, where the appeal remains pending. (ECF Nos. 86–87.)

In October 2025, California's Legislature signed into law Assembly Bill ("AB") 1127, which implemented California Penal Code section 27595(a) and related definitions. (Opp'n 2.) Section 27595(a), which took effect on July 1, 2026, purports to ban licensed firearm dealers from selling and transferring Glock and Glock-style handguns with "cruciform trigger bars" which can be modified aftermarket to convert the shooting mechanism of those handguns from semi-automatic mode (requiring pull of trigger with each fired round) to fully automatic (machine gun) mode.

Three days after AB 1127 was signed into law, a large subset of the Plaintiffs here filed suit in this District challenging the constitutionality of the bill under the Second Amendment in a case entitled *Jaymes v. Bonta*, No. 25-cv-02711 (S.D. Cal. filed Oct. 13, 2025). The *Jaymes* case was randomly assigned to Judge Gonzalo Curiel, (Opp'n 4), and thereafter the plaintiffs in *Jaymes* filed a Notice of Related Case under this District's Local Rules, contending that case is related to the present case and should be transferred to the undersigned judge. (*Id.*) Defendants opposed the Notice of Related case, arguing the present case involves a challenge to the UHA and not the separate ban on Glock handguns with cruciform trigger bars, which does not involve the UHA. (*See* Opp'n 1 ("Plaintiffs

seek to add an entirely new and distinct Second Amendment challenge to [] section 27595(a)[,] a different firearm regulation enacted in 2025 that is not part of the UHA.").) The district court in *Jaymes* (Judge Curiel) never acted on the request to transfer the case, which meant the case stayed with Judge Curiel, pursuant to the Local Rules. (*Id.*) Nearly six months later, on April 10, 2026, the *Jaymes* plaintiffs voluntarily dismissed their case. (*Id.* at 5.)

Plaintiffs now move for leave under Federal Rule of Civil Procedure 15(d) to file and serve a supplemental complaint in the present case, which adds the identical claim previously alleged in the *Jaymes* case: a challenge to section 27595's "cruciform-trigger-bar ban" under the Second Amendment. The Court turns to this issue.

## II. LEGAL STANDARDS

The main difference between Federal Rules of Civil Procedure 15(d) (leave to supplement pleading) and 15(a) (leave to amend pleading) is simply the timing of events. The facts alleged must have occurred after the original filing for Rule 15(d) to apply; if they happened before, Rule 15(a) applies. "Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cathy v. Palma*, No. 322CV01565, 2023 WL 3213857, at *2 (S.D. Cal. May 2, 2023) (citation omitted). "While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." *Id.* (citing *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988)). "Unlike an amended pleading, a supplemental pleading does not replace the original," but instead "simply adds new allegations to be considered in conjunction with the original." *Na'Im v. Sophie's Arms Fine Residences*, No. 13CV2515, 2014 WL 12479583, at *1 (S.D. Cal. May 27, 2014).

In deciding whether to grant leave to supplement an original pleading under Rule 15(d), "[t]he court's primary focus is on judicial efficiency." *Cathy*, 2023 WL 3213857, at *2 (citation omitted). Rule 15(d) allows for broad and flexible supplemental pleading, as it permits litigants to correct mistakes or add matters that are sufficiently related to the

original action without the added cost and expense of dismissal and subsequent suits over the same set of issues. Hence, "[t]he use of supplemental pleadings is favored when it enables a court to award complete relief in one action 'to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted.'" *Cathy*, 2023 WL 3213857, at *2 (citing *Keith*, 858 F.2d at 473). "Under the Rule, allowance or denial of leave to file a supplemental pleading is addressed to the sound discretion of the District Court." *Id.* at *1 (citing *Keith*, 858 F.2d at 475). At bottom, the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. Proc. 15(d). Courts consider the following *Foman* factors when determining whether to grant leave to supplement a pleading under Rule 15(d): "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Cathy*, 2023 WL 3213857, at *2 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lyon v. ICE*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) ("The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under [Rule] 15(a).").

## III. DISCUSSION

Plaintiffs contend that because the Fourth Amended Complaint in the present case and the proposed supplemental complaint "both argue that California's legislative bans on the sale of commonly used handguns violate the Second Amendment," permitting "a supplemental complaint serves Rule 15(d)'s core purpose of judicial efficiency." (Mot. 4.) Plaintiffs further argue "[t]his Court is already familiar with the Second Amendment standard governing Plaintiffs' claims and the evidence concerning the UHA's roster mechanics, which includes common-use evidence for Glock and Glock-style handguns," and thus, handling the supplemental claim in this action "avoids duplicating the record, avoids the risk of inconsistent rulings on overlapping common-use questions, and spares both the parties and the Court the cost of a parallel suit raising intertwined legal issues." (*Id.*)

While Plaintiffs recognize Rule 15(d)'s "core purpose of judicial efficiency[,]" (Mot. 4), the procedural steps taken here by Plaintiffs have resulted in inefficiency. The process Plaintiffs initiated—filing the *Jaymes* case, dismissing it, and seeking to add the same claim here—has resulted in two cases, not one, and side-steps the District's Related Case Local Rules. *See* Civ. L.R. 40.1(g). Defendants correctly note that the same claim—constitutionality of section 27595(a)—was squarely before Judge Curiel ten months ago in *Jaymes*, and that claim has nothing to do with the UHA. Defendants argue Plaintiffs' maneuvering is an "end-run" on Local Rule 40.1, which provides that a party may file a Notice of Related Case and seek to transfer a later filed case (assigned to a different judge) to an earlier filed related case if the party believes the cases are related and that "assignment to a single district judge is or is not likely to effect a saving of judicial effort and other economies.". *Id.* 40.1.f. If a party objects to the Notice of Related Case, as Defendants did here, then "the judges assigned to the cases identified by counsel as related will decide if the cases are related within seven (7) days after the response is due." *See id.* 40.1.g. Absent "complete agreement by the judges assigned to the cases identified as related, no low number transfer will occur." *Id.* Because no low number transfer occurred in *Jaymes*, there was not "complete agreement by the judges" that the cases were sufficiently related to warrant transfer. Several months later, the plaintiffs in *Jaymes* voluntarily dismissed that case and now seek identical relief in the present case. This is not good use of court or litigant resources.

Plaintiffs in *Jaymes* could have pursued the relief they now seek—preliminary injunction against the State's enforcement of section 27595—ten months ago when that case was filed. "The use of supplemental pleadings is favored when it enables a court to award complete relief in one action 'to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted.'" *Cathy*, 2023 WL 3213857, at *2 (citation omitted). The opposite has occurred here. The use of supplemental pleadings has resulted in the involvement of two judges in two separate actions and necessitated Defendants'

response in both actions. Thus, the core purpose of promoting judicial efficiency through supplemental pleading is absent. This factor is largely dispositive under the circumstances.

Plaintiffs also argue a supplemental claim need only bear "some relation to the claims set forth in the original pleading[,]" (Reply 1 (citing *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988)), and that standard is satisfied. Specifically, Plaintiffs argue "§ 27595's Glock Ban meets [the "some relation"] standard" because "it presents fundamentally the same Second Amendment question as Plaintiffs' challenge to the UHA—can the State ban categories of handguns in common use?" (*Id.*) This argument extends the "some relation" standard to near limitless application as every future California ban on handguns in common use could be directed to the undersigned judge during the pendency of this action, which could be pending for quite some time. As Plaintiffs point out, the Ninth Circuit is presently reviewing this Court's preliminary injunction of the UHA and has taken the matter under submission for "an astounding *40 months*, and now there is actually a good reason for it to be held some time longer: The Supreme Court has granted certiorari in *Viramontes v. Cook County,* No. 25-238 and *Grant v. Higgins*, No. 25-566, to answer the question whether bans on a category of common arms (*i.e.*., semiautomatic rifles, including AR-15s) violate the Second Amendment, and that decision will no doubt inform how the Ninth Circuit should resolve the UHA's arms ban." (Reply 5 (emphasis in original).) Plaintiffs are correct that this case may remain pending for years. During that time, the State Legislature may well pass more bans on the commercial sale of handguns in common use; after all, the Legislature did so in this case, did so with the "cruciform-trigger-bar ban[;]" and may do so again when other handguns are brought to market. If the latter were to occur, under Plaintiffs' reading of "some relation[,]" they could challenge all such legislation through supplemental pleading in the present case. While Rule 15(d) is broad and flexible in allowing supplemental pleadings where judicial efficiencies exist (which is not the case here), the Rule is not as expansive as Plaintiffs would like it to be. To be sufficiently related, the new claim would have to involve the UHA and a ban on commercial sales of handguns that lack safety features, testing, or other requirements

imposed by the UHA. Otherwise, if the sole requirement to relating a case to the present action is State action "ban[ning] handguns in common use[,]" (Mot. 5), then the undersigned judge effectively would be the default for all such California handgun ban cases. The Court declines to interpret Rule 15(d) so expansively.

Plaintiffs also argue Defendants are not prejudiced by defending the constitutionality of section 27595(a) in this action: "The question whether California can ban handguns in common use underlies both the constitutionality of the UHA and of § 27595's cruciform-trigger-bar ban. Whether in this case or in a separate proceeding, California will be forced to defend § 27595 against Second Amendment scrutiny." (*Id.*) However, the prejudice to Defendants is not in having to defend section 27595, but in having to address procedural irregularities in the present action (*i.e.*, Plaintiffs' attempt to introduce a questionably "related" new claim) and dealing with a motion for preliminary injunction that was filed before the supplemental complaint was approved by the Court.

Plaintiffs also contend there is no delay, as the statute took effect on the day the motion for leave to file the supplemental pleading was filed. (*Id.* at 5.) But any delay ought to be measured from the filing of *Jaymes* ten months ago. Plaintiffs could have sought Rule 15(d) relief in the present case at that time, instead of filing a separate action in *Jaymes*. Notably, however, had Plaintiffs sought such relief it would have been denied—perhaps on futility grounds—because the new claim as discussed above is not sufficiently related to the UHA challenge in the present case.

The *Foman* factors tip decidedly in favor of Defendants and against permitting Plaintiffs' supplemental pleading.[2] Rule 15(d) provides that the court "may, on just terms, permit a party to serve a supplemental pleading[.]" The circumstances here do not warrant allowing such a pleading.

---

[2] The last *Foman* factor—repeated failure of previous amendments—is not applicable under the present circumstances. The Court therefore declines to address that factor.

## IV. CONCLUSION

For these reasons, the Court **DENIES** Plaintiffs' motion for leave to file a supplemental pleading; **DENIES** Plaintiffs' motion for preliminary injunction as moot; and **DENIES** Defendants' Application as moot.

**SO ORDERED.**

Dated: August 24, 2026

Hon. Dana M. Sabraw
United States District Judge